## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---------------------------------------------

Edward D. Washington
7124 Strathmore Street
Falls Church, VA  22042

       Plaintiff, pro se

Elaine L. Chao
      Secretary of Labor
U.S. Department of Labor
200 Constitution Avenue, N.W.
Washington, D.C.  20210

      Defendant.

          *
          *

RECEIVED

AUG 1 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Civil Action No.:  06-2149 (CKK)

*Let it be filed*
*Judge C Kollar-Kotelly*
*8/19/07*

## FIRST AMENDED COMPLAINT

### A.  INTRODUCTION

1.    Pursuant to Fed. R. Civ. P. 15, and Local Rules 7(h) and 56.1, the Plaintiff amends Civil

Action Number 06-2149 to seek monetary damages from Secretary Chao and the Department for

illegal actions taken by personnel within the Department when they knowingly took

discriminatory actions that adversely impacted his nonselection for Vacancy Announcement

Number ETA 04-047PN.

```
┌─────────────────┐
│   Appendix      │
│                 │
│      A          │
└─────────────────┘
```

## B. JURISDICTION AND VENUE

2.    This action is filed pursuant to δ717 of Title VII of the Civil Rights Act of 1964. This Court has jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. δ 1331.

3.    Venue is governed by 42 U.S.C. 2000E-5(F)(3). Venue in this Court is appropriate because it is the District of Columbia in which the unlawful employment practice occurred and in which the employment records relevant to such practice are maintained and administered.

## C. EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.    Plaintiff timely filed with the Equal Employment Opportunity Commission (EEOC) a charge of discrimination against Defendant. Plaintiff received a notice of the right to sue from the EEOC on September 22, 2006, within 90 days of the filing of the initial complaint.

## D. FACTUAL ALLEGATIONS

5.    Defendant intentionally violated "Covered Relationships" statues by allowing or permitting a subordinate to serve as a member of the evaluation panel. This subordinate is the first-line supervisor of the Selectee, and the Selecting Official supervises both employees. [1]

6.    Defendant violated Office of Personnel Management statues and procedures by omitting evaluation factors from Vacancy Announcement ETA-04-047PN. [2]

7.    Defendant gave preferential treatment by scoring the Selectee, a contract specialist trainee with one year of on-the-job training, at 100 maximum points versus the Plaintiff's four years of actual contract specialist experience, 24 years of honorable military service, and 10 years as a business owner. 3

8.    Defendant knowingly failed to comply with veterans' preference requirement by not applying the 5-point preference to the Plaintiff's overall score. 4

9.    Defendant and the Equal Employment Opportunity Commission (EEOC) did not comply with its own regulations by not conducting a thorough, unbiased investigation. 5

10.    Defendant and the EEOC did not acknowledge the Plaintiff's request to consolidate claims of discrimination and veterans preference points under Title 38 U.S.C. 6

## E.  ARGUMENT

11.    Plaintiff requested, before issuance of the Final Agency Decision (FAD), that the Defendant obtain sworn statements from members of the evaluation panel.  Note 3 in the FAD denied this request.  In doing so, the Director of the Civil Rights Center (CRC) failed to follow her own instructions in the Letter of Investigative Authorization, and EEOC Management Directive 110, Chapter 6.

12.   This same action is in direct contravention of the Federal Rules of Evidence, Rules 104(b), 401, 404(b), and 901(b)(6).

13.   The Selecting Official is a GS-15 Supervisory Contract Specialist whose actions demonstrated a reckless disregard of the ethical statutes, and federal hiring procedures.  In his sworn statement he states:  "A significant amount of the contracting work performed under this announcement is A&E and Construction type contracting," even though this criteria were not published in the Vacancy Announcement.

## APPENDIX - A

| Item | Document |
|------|----------|
| 1 | Supervisory Appraisal Statement of the Selectee |
| | Mid Term Review for Selectee |
| 2 | OPM Qualification Standards for General Schedule Positions |
| | Sworn Written Statement of Selecting Official |
| 3 | Plaintiff's Letter dated October 5, 2005 to DOL's Investigator |
| 4 | Certificate of Eligibles for Vacancy Announcement ETA-04-047PN |
| 5 | Final Agency Decision (in part) |
| | EEOC Management Directive 110, Chapter 6 (extract) |
| | DOL's Letter of Investigative Authorization dated September 20, 2004 |
| 6 | Plaintiff's Appeal to EEOC dated August 14, 2006 |

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court issue judgment against the Defendant granting the Plaintiff the following relief:

1.  Award Plaintiff compensatory and consequential damages in an amount to be determined;

2.  Issue an order declaring that the acts and practices complained of herein are in violation of Plaintiff Washington's civil rights;

3.  Order back pay to Mr. Washington retroactive to the date he would have been hired plus interest;

4.  Order front pay to Mr. Washington from the date he should have been hired to the present;

5.  Order payment of related salary increases, retirement benefits and related that Mr. Washington would have received and been entitled to when he should have been hired.

6.  All costs and any legal fees incurred in the processing of the complaint at the EEOC and in pursuing in this Court to final adjudication or settlement

7.    To grant such other relief as this Court deems just.

Respectfully Submitted,

This 11th Day of August, 2007

Edward D. Washington
Plaintiff Pro-Se
7124 Strathmore Street
Falls Church, VA  22042
703-521-2100

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served on the party
listed below by U.S. Postal Service this 11th Day of August, 2007.

EDWARD D. WASHINGTON

Elaine L. Chao
Secretary of Labor
U.S. Department of Labor
200 Constitution Avenue, N.W.
Washington, D.C.  20210

JEFFREY TAYLOR, D.C. Bar #498610
United States Attorney

ALEXANDER D. SHOAIBI, D.C. Bar #423587
Assistant United States Attorney
Civil Division
555 4th Street, NW, Room 4218E
Washington, D.C.  20530
(202) 514-7236

Counsel for Defendant

Jennifer A. Sno

**Supervisory Appraisal**

Although I am currently working at a rate equal to that of a GS-9, I am not a federal employee, and therefore, do not receive an official Supervisory Performance Appraisal. In place of this, please find attached, an informal performance review conducted by Brenda Williams, Contracting Officer. Also attached is a copy of an email from Chari Magruder, my supervisor, commending my work on a recent presentation.

*Sits on panel to evaluate applicants' qualifications*

*08 03*
*02 03*
*6 months experience at this juncture*

**MID TERM REVIEW FOR JENNIFER SNOOK**

**DATE: August 13, 2003**

Your overall level of performance is this review period has been highly effective. You are managing your workload and grasping the procurement process for A/E and Construction well. You immediately correct mistakes when brought to your attention. You are establishing good working relationship with fellow team members and others. You have a positive attitude towards your work

**Civil Action 06-2149**
**Amendment 1, Appendix A-1**

Title 5 U.S.C. 2302(b)(6)

Public Laws 101-94 and 95-521

Clark Cty. Sch. Dist. v. Breeden,   532 U.S. 268, 273-74 (2001)

Tab F-4 pg. 30

Tab F-4 pg. 29

# Qualification Standards for General Schedule Positions

## GENERAL POLICIES AND INSTRUCTIONS

### Part E.6 - E.8

---

**6. Using Selective Factors**

It is critical that agencies clearly and adequately identify the requirements of a position in the vacancy announcement so that applicants understand the basis on which their application will be evaluated. In most instances, this explicit description of required general or specialized experience in the vacancy announcement will ensure that applicants possess the necessary KSA's to perform the work of a position. (See p.II-5, _E.3.(c)._)

There are some positions, however, where specific qualifications are absolutely required because a person cannot perform successfully in the position without such qualifications. These can include requirements for specific KSA's or Federal or State requirements for licensure or certification. In such instances, it may be appropriate to consider the use of selective factors. A selective factor becomes part of the minimum requirements for a position, and applicants who do not meet it are ineligible for further consideration. A selective factor can be used for positions at any grade level where its use would be appropriate.

The use of selective factors is especially helpful in situations where an agency uses an OPM list of eligibles, since individuals on the register would meet the requirements of the published qualification standard, but might not meet any additional, agency-specific requirement(s). Their use would also be helpful in those situations in which an agency has a nationwide vacancy announcement, but has a special requirement for positions in a particular location because a duty performed is not routinely associated with the occupation, e.g., a contact representative position that requires fluency in Spanish.

If an agency wishes to use a selective factor when filling a vacancy through use of a civil service list of eligibles, it must complete a request and provide justification for the examining office's consideration and approval. The request should list the selective factor(s), include the position description or other official communication describing the duties and responsibilities of the position, and describe why selective factors are necessary for successful performance.

Selective factors cannot (1) be so narrow that they preclude from consideration applicants who could perform the duties of the position, (2) require KSA's that could be learned readily during the normal period of orientation to the position, (3) be so specific as to exclude from consideration applicants without prior Federal experience, or (4) be so restrictive that they run counter to the goal of placing applicants from priority placement lists established to assist in the placement of employees affected by reductions in force.

It is essential that any selective factors used in filling a particular vacancy be included in the vacancy announcement. Agencies cannot require applicants to meet selective factors that were not established prior to advertising a position, nor can they require selective factors that were not made known to applicants.

OPM Guidelines                    - 6 -

Civil Action 06-2149
Amendment 1
Appendix A-2

**Source: Office of Personnel Management**
**Subpart A -- Employment Practices**

**300.101 Purpose**
For the purpose of this subpart, the term "employment practices" includes the development and use of examinations, qualification standards, tests, and other measurement instruments.

**300.102 Policy**
(a) Be practical in character and as far as possible relate to matters that fairly test the relative capacity and fitness of candidates for the jobs to be filled;

(b) Result in selection from among the best qualified candidates;

(c) Be developed and used without discrimination because of race, color, religion, sex, age, national origin, partisan political affiliation *or other nonmerit grounds; and*

(d) Insure to the candidate opportunity for appeal or administrative review, as appropriate.

**300.103 Basic requirements**
(a) Job analysis. Each employment practice of the Federal Government generally, and of individual agencies, **SHALL** be based on a job analysis to identify:

    (1) The basic duties and responsibilities;

    (2) The knowledges, skills, and abilities required to perform the duties and responsibilities; and

    (3) The **FACTORS THAT ARE IMPORTANT** in evaluating candidates.

(b) Relevance. (1) There **SHALL** be a rational relationship between performance in the position to be filed(.....) and the employment practice used.

(c) Equal employment opportunity. An employment practice **SHALL NOT** discriminate on the basis of race, color, partisan political affiliation, or **OTHER NONMERIT FACTOR.**

> **Civil Action 06-2149**
> **Amendment 1**
> **Appendix A-2**

See Announcement ETA-04-047PN for a complete description of the merit staffing process. Since there were no bargaining unit employees on the certification list, interviews of applicants were not required.

4. Please explain in detail why Mr. Washington was not selected for the position of Contract Specialist, Series/Grade GS-1102-09, advertised under Vacancy Announcement No. ETA-04-047PN.

Mr. Washington was not selected for the position of Contract Specialist, Series/Grade GS-1102-09, advertised under Vacancy Announcement No. ETA-04-047PN for the following reasons:

(1) Mr. Washington was not the most highly qualified applicant based on comparison of his application with the other eligible candidates. The application review panel ranked Mr. Washington number two on the list of applicants.

(2) Mr. Washington had no current experience as a contract specialist. In his application he cites the last time that he did contract specialist work was April 1994, ten year ago. The Federal Acquisition Regulation in which knowledge of is critical for this job has changed significantly since 1994. There was no indication in Mr. Washington's application of his knowledge best value, past performance, competitive range or recommendation for award, which are familiar terms used in the procurement profession. Mr. Washington has served as Managing Director of a multi-faceted company that provides limousine services, contract consulting services and food safety training. There is no description of work Mr. Washington performed as a contract specialist from 1994 to present.

(3) There is no indication in Mr. Washington's application that he has knowledge of A&E and Construction type contracting (Sealed Bidding). A significant amount of the contracting work performed under this announcement is A&E and Construction type contracting.

(4) Mr. Washington experience appears to be in the small purchase procurement area (he has a $25,000 contracting officer's warrant). The Division of Contract Services awards contracts from small purchases ($0 to $100,000) to large complex procurements over $20 million. The only indication in Mr. Washington's application that he worked on procurements over $100,000 is the statement "Procures supplies and services for small and large purchases".

(5) Under the evaluation factors, the majority of Mr. Washington's responses are more definitions of procurement terms rather than explanation of how he performed the specific tasks of the job i.e.

Acquisition planning assures that the Government meets its needs in an economic and timely manner;

Civil Action 06-2149
Amendment 1
Appendix A-2

Tab F-2 pg. 3

October 5, 2005

Mr. Roderick Faulkner
Office of the Assistant Secretary for
  Administration and Management
U.S. Department of Labor
Washington, D.C.  20210

Re: Response from Edward D. Washington via CRC Case No. 04-11-116
                                    EEOC Appeal No. 01A51489

1.  I have reviewed the investigative report and respectfully submit my comments.

2.  I do not request a final decision until DOL provides me an updated copy of the report with
my comments included.

3.  Request for Documents/Actions

    a.  Ms. Snook mentioned on her Supervisory Appraisal (Tab F4, Pg 29) that Ms. Magruder,
via an email commended her work on a recent presentation.  It was not included with the
report I received; please provide a copy of this email.

    b.  Any statements or affidavits made by Ms. Delacerna and Ms. Magruder, or any other
person whom you obtained information from to prepare this report.

    c.  If Ms. Delacerna or Ms. Magruder has not submitted any statements, I request that
they be interviewed and specifically state their rationale for including or excluding any
comments relating to the A-E experiences of all applicants, and that I be provided a copy of
their input/responses.

4.  Based on the data contained in this report, and the anonymous telephone calls I received,
I conclude and reaffirm that I am a victim of discrimination for the following reasons:

    a.  Ms. Snook is supervised by Ms. Magruder, who is one of the panel members that
evaluated applicants' applications.

    b.  Ms. Magruder is supervised by Mr. Bond, the Contracting Officer and selection
official; obvious conflicts of interest/collusion.

    c.  Ms. Magruder and Mr. Bond stated that Ms. Snook has Architect-Engineering (A-E) and
construction contract experience while I do not, or did not indicate this type of experience in
my application.  Neither of them should have evaluated any applicant based on this type of
experience but it WAS NOT stated in the vacancy announcement.

   d.  Mr. Reeves at CRC conducted the informal investigation.  At your Tab B, Pg 2 his findings were:

   (1)  Mr. Bond states that he selected Ms. Snook because she was the first applicant on the list; has the experience and qualifications, and was familiar with her abilities because he was working with her.

   (2)  Confirmed the contents of the anonymous telephone call I received:  Ms. Snook is a white female, with no previous job experience as a Contract Specialist or anything related; just one year of on-the-job training.

   e.  Mr. Bond states that Ms. Snook has one year experience as a <u>contract specialist trainee.</u>  Supporting documents in my application clearly demonstrate four years of contract experience, with completion of several contract-related courses.

5.  Detailed comments are provided as an attachment to this correspondence.

6.  This matter is beyond the 180-day period; what time frame must CRC respond to my comments?

7.  I look forward to your response, and thanks for your courteous, and professional assistance.  As I had earlier promised, a copy of my book "Why Should I Vote?" is enclosed. This is simply a courtesy copy that you did not ask for, I freely volunteered it.  If it creates a problem for you, simply discard it; no offense taken.


Sincerely,


Edward D. Washington

CF: EEOC

## Witness Questionnaire -- Mr. Keith Bond (Tab F-2)

4.  Why Mr. Washington was not selected ...

    (1)  The application review panel ranked him number two ..

    (3)  No indication of Architect-Engineering and Construction ...

### MY RESPONSE

a.  On the "Qualification Evaluation Sheet", Item 2 (H-category) one of the evaluators stated that I lack A-E experience, while others have more experience in A-E than I do.  Item 2 of this form <u>does not specifically</u> state that A-E experience is a must.

    (1)  OPM's Qualification Standards for General Schedule Positions -- identifying specialized experience cites an example that allows agencies to pinpoint specific requirements in vacancy announcements (Atch 1).

    (2)  Neither Mr. Bond nor the evaluator should rate any applicant on any criteria outside of the job announcement.

    (3)  Using "blind" criteria that even hints of the appearance of conflict-of-interest does nothing good for the individuals; in fact it harm's the agency, especially DOL since it is one of the primary enforcer's of the nation's labor laws and veterans rights.

    (4)  Ms. Snook was given the maximum rating because of her A-E on-the-job training experience by one of the evaluators.

b.  The rating awarded to Ms. Snook affirms the reason(s) for my receiving the anonymous telephone calls.

    (2)  No current experience as a contract specialist ...

### MY RESPONSE

a.  OMB Policy Letter 05-01, dated April 15, 2005 states in Item 8-b2:  Employees are not required to retake classes ...  (Atch 2).

b.  NCO Evaluation Report dated 10 Aug 92

    (1)  Rater:  GS-13, Branch Chief for Supply and Services

    (2)  Indorser:  Lieutenant Colonel, Principal Assistant Responsible for Contracting

    (3)  Part III, Item C - Daily Duties and Scope
Determines government negotiation strategies; and negotiates price, terms, and conditions.  Enhances competitive acquisition.  Negotiates contractual changes and supplemental agreements.  Documents contract audit trail.

c.  NCO Evaluation Report dated 10 Sep 85

   (1)  Rater:  Branch Chief and Contract Attorney

   (2)  Indorser:  GM-15 Contract Attorney and Principal Assistant Responsible for
Contracting

   (3)  Description of Duties
         Prepare Government Estimates, Project Descriptions, perform Technical Evaluations
and assist in the negotiation process with the contractor

d.  As the sole stockholder for Ace Diversified Services, Inc. since 1994, I have the business
experience, a lot of which I learned while serving as a contracting officer and contract
specialist.  I did not include an example because of the proprietary data.  A proposal
submitted to the Manager of Contracts and Compliance at the American Red Cross is included
at Atch 3.  Contract provisions such as a Certificate of Conformance, advance and progress
payments are standard contract terms used throughout the acquisition community.  If
verification of any data submitted with my application were required, I would have provided
it.

   (4)  Contracting Officer's Warrant ... (Tab F-4)

## MY RESPONSE

a.  Mr. Bond's statement that the warrant is limited to $25,000 is true.  However, item (b)
states: "sign and issue delivery orders without monetary limitations" grants me the authority
to obligate the United States of America for any contracts already negotiated.  GSA Schedules
and similar contract instruments allow procurements to be accomplished in an efficient
manner, and if required, insert specific clauses that pertain to the procurement.

b.  While there may be many contract specialists within an agency, to the best of my
knowledge, there are a lot fewer warranted contracting officers, regardless of the dollar
limitation specified in the contracting warrant.

c.  NCO Evaluation Report dated 10 Aug 92, (Tab F-4, Pg 10)

   Information Paper, 12 Jun 92, Contract Close-Out, (Tab F-4, Pg 21)

   Information Paper, 23 May 86, Advertising Status Report, (Tab F-4, Pg 22)

   (1)  The national advertising contract had 495 orders with negotiated prices totaling $52
million dollars.  Not only did I negotiate some of these orders, I also completed the contract
administrative function of reviewing all orders, verified payments against them within four
months; whereas the normal completion time would take 6-8 months.

   (2)  May 86 report details $4 million in negotiated projects.

d.  These items clearly document that I have experience in working on procurements
exceeding $100,000.

(5)  More definitions under the evaluation factors ...

**MY RESPONSE**

a.   The ratings under the various categories speak for themselves; especially in Part V; Overall Performance and Potential, which I was <u>rated among the best.</u>

b.   Compare my 12-month rating to the Mid Term Review (Tab F-4, Pg 30) for Ms. Snook dated August 13, 2003.  By matching the start date of 20 Feb 03 to Aug 03, this six-month period does not come close to the level of detail in my evaluation reports.

## Other Detailed Comments

1.   Tab F-5, Pg 1

Item 5 on the Qualification Evaluation Sheet lists Ms. Magruder as one of the raters, who states in item 2 (h-category) that I lack A-E experience.

2.   Tab F-2, Pg 3

Mr. Bond states there is no indication of my having A-E and construction type contracting.  A significant amount of the contracting work performed under this announcement is A-E and construction type contracting.

3.   Tab F-2, Pg 4 (Item 6 (2))

Mr. Bond states Ms. Snook's experience in A-E and construction and contracting by negotiated procurements.

4.   Tab F-2, Page 5

Mr. Bond articulates his personal knowledge about Ms. Snook's capabilities because she had worked in the Division of Contracts for the period January 2003 through March 2004.

5.   Tab F-2, Page 6 (Item 11)

Mr. Bond acknowledges that Ms. Snook is 20-25 year old white female, and had worked for one year as a <u>contract specialist trainee.</u>

**MY RESPONSE**

a.   Ms. Magruder and Mr. Bond are interested stakeholders in the evaluation and selection process.  One could only reasonably conclude that regardless of other applicants' qualifications, Ms. Snook would be selected for the position.

b.   This is blatant discrimination and correction action should be taken, and internal controls within DOL should also be modified to prevent a reoccurrence.

c.   Ms. Snook's one year experience as a trainee vs my four years as a warranted contracting officer and contract specialist, plus my documented contract course completions clearly document why I should have been rated higher than Ms. Snook.  My five-point preference earned as a 24-year Army veteran should mean something.

d.   Defense Acquisition University (DAU), Appendix B - Career Field Certification Requirements -- Atch 4

   a.   Level 1 Education

Mandatory standard of a baccalaureate degree or at least 24 semester hours in accounting, law, etc.   Atch 4-A

   b.   Ms. Snook's degree is in liberal arts and she should be commended for her outstanding grades; however, there are not any business-related courses on the transcript provided at Tab F-4, Pg 31.

   c.   I have completed 75 semester hours in business-related courses such as accounting, business law, and marketing (Tab F-4, Pg 23).

   d.   Based on the guidance of the American Council on Education, I have completed 45 semester hours in business, contracting, and personnel management (Tab F-4, Pg 24).

   e.   Federal Contracting Answer Book (Atch 5)

        The context highlights of this book are very similar to the four-week Management of Defense Acquisition Course (Basic) I completed in 1992.

   f.   The course title has changed to "Contracting Fundamentals" (CON 101), but recommended credit hours are still valid (Atch 6).

   g.   Selecting Appropriate Courses (Atch 7)

        Management Concepts, Inc. training sequence follows the guidance of the Federal Acquisition Institute.  Specialized courses such as Construction and A-E contracting should be taken after basic-level courses have been completed.  These courses are limited in scope and do not address the full realm of contracting from "cradle to grave".
/////////////////////////END OF COMMENTS--NOTHING FOLLOWS////////////////////////

UNITED S~~ ~~ES DEPARTMENT OF LABOR
CERTIFICATE OF ELIGIBLES
OPM INTERAGENCY AGREEMENT NUMBER DOL-1

Certificate No.:  ETA-04-047PN

TieBreaker    0

Announcement No.:  ETA-04-047PN

Position Title:  Contract Specialist

Series/Grade:  1102      - 9

Duty Location   Washington, DC

Date of Certificate:    4/26/2004

To Be Returned  By:    7/26/2004

When selecting from this certificate, an appointing officer MUST, with sole reference to merit and fitness, make selection for the first vacancy from the top 3 eligibles available for appointment. For the second vacancy, make the selection from the 3 top unselected eligibles available and uneliminated. Each succeeding vacancy must be filled in a like manner until all selections are made. The appointment officer MUST not Passover a preference eligible to select a non-preference eligible unless he/she submits reasons which are sufficient to warrant the Passover. Selection MUST be made without discrimination for non-merit reasons such as race, religion, sex, national origin, politics, age, marital status, physical handicap, or membership or nonmembership in a union.

| | | | | | | |
|---|---|---|---|---|---|---|
| Snook | Jennifer | | NV | 100 | no | selected |
| Washington | Edward | ——— | TP | 99 | no | nonselect |
| Moseley | Beatrice | | NV | 84 | no | nonselect |

*VET POINTS -- NOT SHOWN*

*Job offer made & accepted on 5/3/04.*
*Start date 5/17/04*

```
Civil Action 06-2149
    Amendment 1
    Appendix A-4
```

Selecting Official  _Kee Hen D. Rue_    Date  4/30/04
                         Signature

Return Certificate and all applications to:    Valerie Sails

**U.S. Department of Labor**      Office of the Assistant Secretary
for Administration and Management
Washington, D.C. 20210



MAR 1 7 2006


**Edward Washington,**
**Complainant**

**v.**

**Elaine Chao,**
**Secretary**
**U. S. Department of Labor,**
**Agency**


**Agency Case No. 04-11-116**

---
### FINAL AGENCY DECISION
---

**Statement of Claims**

The Complainant, Edward Washington, contends that the Employment and Training
Administration (ETA) discriminated against him based on his race when he was not
selected for a Contract Specialist position advertised by the Agency.


**Procedural History**

The Complainant initially contacted an EEO Counselor on June 30, 2004. (Tab B)
When the issue raised could not be resolved informally, the Complainant was advised of
his right to file a formal complaint on July 14, 2004. (Tab B2) On July 20, 2004, the
Complainant filed a formal complaint claiming the Agency discriminated against him
based on his race.[1] (Tab A) On September 20, 2004, the Agency accepted the complaint
for investigation.[2] *See attached letter.* When the Complainant failed to respond to the

---

[1]   The Record of Investigation that was reproduced and provided to the Complainant
failed to include attachments to the formal complaint. A copy of those attachments are
enclosed herein and to be inserted in the Complainant's copy of the Record of
Investigation at Tab A.

[2]   The Record of Investigation did not include a copy of the Agency's September 20,
2004 letter. A copy of that letter is attached and to be inserted in the Complainant's copy
of the Record behind the documents found at Tab E.

┌─────────────────────────┐
│  **Civil Action 06-2149**   │
│  **Amendment 1**            │
│  **Appendix A-5**           │
└─────────────────────────┘

on their race.[3] See Tab F2 at p. 3 (Selecting Official's testimony that "[a] significant amount of the contracting work performed under this announcement is A&E and Construction type contracting"). In fact, the Selecting Official identified himself as African American and stated he was not aware of the Complainant's race at the time of the selection. (Tab F2 at pp.1,5) The Selecting Official's statement as to his past hires is also noteworthy. According to his affidavit, in the past two years, the Selecting Official made four other selections for positions ranging from GS-9 to GS-14 and identified all of the selectees as African American. Id. at pp. 5-6. In sum, there is insufficient evidence to show that race was considered when the selection was made.

### Statement of Conclusion

For the reasons stated, I find that the Agency has demonstrated legitimate non-discriminatory reasons for its selection and the Complainant failed to demonstrate that those reasons were based on pretext.

### Statement of Relief

Inasmuch as the complaint is dismissed, no relief is granted.

### Statement of Notice and Rights

If you are not satisfied with this decision, your appeal rights are as follows:

You may file a notice of appeal with the Equal Employment Opportunity Commission (EEOC), at any time up to thirty (30) calendar days after your receipt of this decision. The appeal must be submitted to EEOC's Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. Any statement in support of the appeal must be submitted to the Office of Federal Operations, and to this office within thirty (30) calendar days of your filing of the notice of appeal. The regulations at 29 CFR 1614.403(a) encourage the use of EEOC Form 573 in presenting an appeal to the EEOC, and a copy of this form is enclosed.

---

[3] In his October 5, 2005 letter, the Complainant requested that the panel members be interviewed and statements obtained from them regarding their "comments relating to the A-E experiences of all applicants." (Tab 100, p. 1). This request is denied as unnecessary because the Selecting Official adequately described the Agency's legitimate non-discriminatory basis for the selection, including the significance of A-E experience for the position. Moreover, while the Selecting Official referenced the panel's rankings in his affidavit, his thorough description of the Complainant's qualifications demonstrated that he independently considered the Complainant's application and relative qualifications and did not just rely on the panel's rankings of the candidates. (Tab F2 at p.3)

5

Civil Action 06-2149
Amendment 1
Appendix A-5

If you elect not to appeal to the Commission, you may file a civil action in an appropriate U.S. District Court within ninety (90) calendar days of your receipt of this decision. If you file an appeal with the Commission, you may still file a civil action in the appropriate U.S. District Court within ninety (90) calendar days of your receipt of the Commission's final decision on your appeal. A civil action may also be filed any time after one hundred and eighty (180) days from the date of filing your appeal with the Commission, if the Commission's Office of Federal Operations has not issued a final decision.

You are also advised that if you file a civil action, you must name the appropriate Department or Agency Head as the defendant. Failure to name the head of the Department or Agency may result in the loss of any judicial redress to which you may be entitled. The head of the Department of Labor is Elaine L. Chao, Secretary of Labor.

_____        3-14-06
ANNABELLE T. LOCKHART                   DATE
Director,
Civil Rights Center

> **Civil Action 06-2149**
> **Amendment 1**
> **Appendix A-5**

2. an examiner responsible for developing material evidence,

3. an issuer of requests for information in the form of requests for the production of documents, interrogatories, and affidavits, and/or,

4. a face-to-face interviewer in on-site visits.

C. **Investigator Must Be Unbiased and Objective**

In whatever the mix of fact-finding activity selected for a particular case, the investigator must be and must maintain the appearance of being unbiased, objective, and thorough. S/he must be neutral in his/her approach to factual development. The investigator is not an advocate for any of the parties or interests and should refrain from developing allegiances to them. In addition, the following rules must be observed:

1. The person assigned to investigate shall not occupy a position in the agency that is directly or indirectly under the jurisdiction of the head of that part of the agency in which the complaint arose.

2. The investigator, if a contract investigator, shall not have been hired by or be obligated to the person(s) involved in the claims giving rise to the complaint. For example, where the contract monitor of EEO investigation contracts is alleged to have been involved in discriminatory activity, the use of the usual contract investigator would create an apparent bias because there is at best the appearance that the contract investigator could not be impartial.

3. An agency is prohibited, in some situations, from using its own immediate investigative resources, even though the investigation of discrimination complaints in the federal service is primarily an agency function and responsibility. In such cases the agency shall use alternatives, such as contract investigators or other outside sources. Such situations include, but are not limited to:

   a. Particularly sensitive cases involving high-level officials (e.g., complainant is an immediate subordinate of the head of the agency and the head of the agency is alleged to have taken discriminatory action).

   b. Potential conflict of interest (e.g., complainant is an employee in the EEO office and names the EEO director as the person taking the wrongful action).

   c. A small agency unable to carry out an unexpected EEO workload (e.g., an agency with fewer than 450 employees, has a staff of part-time or ad hoc EEO investigators, and is unable to absorb an additional investigative caseload).

D. **Investigator Must Be Thorough**    29 C.F.R. 1614.108 (b)

This means identifying and obtaining all relevant evidence from all sources regardless of how it may affect the outcome. Investigators need not expend the same amount of investigatory effort on each case, however. The proper scope of an investigation is dictated by the facts at issue. Investigators should not take a cookie-cutter, one-size-fits-all approach, as that wastes resources and delays resolution of the complaint. The investigation and the amount of effort expended should be appropriate to determine the claims raised by the complaint. An appropriate investigation is one that allows a reasonable fact finder to draw conclusions as to whether discrimination occurred.

The investigator need not concern him/herself with balancing the amount of evidence supporting the complainant as compared with the amount of evidence supporting the agency. To ensure a balanced record, it is necessary only to exhaust those sources likely to support the complainant and the respondent. An investigation conducted in this manner might reveal that there is ample evidence to support the complainant's claims and no evidence to support the agency's version of the facts, or vice versa. Nevertheless, this investigation would be thorough.

VII. **EVIDENCE**

A. **Quality of Evidence**

Evidence will be gathered from the complainant, witnesses, and other sources. In order to support findings and, ultimately, decisions, this evidence should be material to the complaint, relevant to the issue(s) raised in the complaint, and as reliable as possible.

1. **Material Evidence**

Evidence is material when it relates to one or more of the issues raised in the complaint or raised by the agency's answer to it. To determine whether evidence is material, one must look to the claims of discriminatory conduct and resultant harm contained in the complaint and the agency's answers to the claims. If the evidence relates to one or more of those claims, then it relates to the issues presented in the complaint,

 **U.S. Department of Labor**

Office of the Assistant Secretary
for Administration and Management
Washington, D.C. 20210



SEP 2 0 2004

## Letter of Investigative Authorization

This is to certify that Investigator Mr. Roderick Faulkner is authorized by the Director of the Civil Rights Center, U.S. Department of Labor (DOL), to conduct an EEO investigation in the Department of Labor regarding the complaint of Mr. Edward Washington. The Investigator is authorized to develop a complete and impartial factual record pursuant to 29 CFR 1614.108(c).

The investigator is authorized to: (1) require any employee of a Federal agency to produce such documentary and testimonial evidence as the investigator deems necessary; (2) administer oaths so that statements of witnesses shall be made under oath or affirmation; and (3) note in the official record any failure to respond fully and in a timely fashion to request for documents, records, comparative data, statistics, affidavits, or attendance of witness(es). When the complainant, or the agency against which the complaint is filed, or its employees fail without good cause shown to respond to the investigator's request(s), the investigator's note to the official record shall include a recommendation to the decisionmaker, or to the Commission on appeal, on the appropriate alternative for evaluating the failure to respond fully and in a timely manner. The alternatives specified in 29 CFR 1614.108(c) (3) include drawing an adverse inference that the requested information would have reflected unfavorably on the party refusing the information, considering matters to which the requested information pertains to be established in favor of the opposing party, or excluding other evidence provided by the party failing to produce requested information.

The investigator may also obtain written statements from any person who may have knowledge of matters at issue in the complaint. Persons providing such written statements are to be advised that such statements are being made under penalty of perjury.

*Annabelle T. Lockhart*
ANNABELLE T. LOCKHART
Director
Civil Rights Center

> Civil Action 06-2149
> Amendment 1
> Appendix A-5

Tab c-1

August 14, 2006

Mr. Carlton M. Hadden
Director of Federal Operations
U.S. Equal Employment Opportunity Commission
1801 L Street, N.W.
Washington, DC 20507

Re: Appeal No. 01A62627

Dear Mr. Hadden:

1.  I respectfully request Reconsideration of this Appeal for the following reasons:

      a.   It appears to me, in both DOL's Final Agency Decision and EEOC's Decision, both agencies relied predominately on the statement of the Selecting Official (SO) and disregarded other potential evidence.

      b.   Neither DOL nor EEOC addressed my Veterans Preference.

      c.   Neither DOL nor EEOC addressed my inquiry concerning Vacancy Announcement ETA-004-006PN.

      d.   Pretext for Discrimination

2.  My detailed comments on each item are enclosed as attachments.

3.  Thanks for reconsidering this case.  If you need additional information, contact me.


Sincerely,


Edward D. Washington

Cf:
Ms. Annabelle T. Lockhart
Director, Civil Rights Center
U.S. Department of Labor
Room N4123 FPB
200 Constitution Ave., N.W.
Washington, DC 20210

> Civil Action 06-2149
> Amendment 1
> Appendix A-6

### Attachment 1-A
### Other Potential Evidence

1.   In Note 3 of DOL's FAD, my request for members of the evaluation panel to be interviewed and sign statements regarding their comments pertaining to A-E experience was **_denied._**

   a.   By denying this request, a person could reasonably conclude and I do, that this is an adverse inference which would have reflected unfavorably on the SO's statement and provide evidence of pretext for his discriminatory actions.  See CFR 1614.108 (C) (3) (i).

   b.   By excluding statements of the evaluators, DOL and EEOC used incomplete data to make its determinations.  An appropriate factual record is one that allows a reasonable fact finder to draw conclusions as to whether discrimination occurred.  See CFR 1614.108 (b).

   c.   I knew, by name, the candidate who would be selected for the vacancy.

       (1)  In my correspondence to DOL dated 10 June 04 (Tab B-1, Pg 3) I stated that I had received an anonymous telephone call from someone who is employed at DOL.  I talked to this person on two or three different dates when _she_ called my business phone, (703) 521-2100.

       (2)  The applicant's name is Ms. Jennifer Snook.

       (3)  Note in Mr. Gregory W. Reeves Summary Report (Tab B) dated 15 Jul 04, he mentions Ms. Snook's name; more than one month after I had submitted my correspondence.

       (4)  This is also documented at Item 4-d (2) in my correspondence to DOL dated 5 Oct 05.

   d.   In a civil court action, Federal Rules of Evidence (http://www.dcd.uscourts.gov) would consider:

       (1)  Rule 104 (b)
           When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it...

       (2)  Rule 401
           "Relevant evidence" means evidence having any tendency to make existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

       (3)  Rule 404 (b)
           Evidence of other acts may be admissible, such as proof of motive, intent...

       (4)  Rule 901 (b) (6)
           By way of illustration, an example of authentication or identification includes telephone conversations...

   e.   The lady who called me stated that this was not the first time Mr. Bond had "pressured" them to select the person he wanted to hire in the 15 months or so he has served in his current position. This statement can be verified only by obtaining a deposition from the panel members.  She also indicated that she would comply with the rules while the other panel member would do as Mr. Bond desired, regardless of the applicant best qualified for the position.

> Civil Action 06-2149
> Amendment 1
> Appendix A-6

Edward D. Washington                                - 2 -
Agency No. 01A62627

**Attachment 1-A**
**Other Potential Evidence**

    f.   These are my principal reasons for requesting, again, that Ms. Marissa Delacerna and Ms. Chari Magruder provide a sworn statement/deposition that answers, at a minimum, the following questions:

    (1)  Did Mr. Bond at any time either directly or indirectly infer his preference that Ms. Snook be selected to fill the vacancy?

    (2)  Ms. Magruder supervises Ms. Snook (Tab F-4, Pgs 29 and 30). In what manner, if any did this employee-supervisor relationship affect her rating all applicants equally for the position? For example, on the Qualification Evaluation Sheet (QES), Evaluation Factor (High) No. 2 does not mention A-E experience, yet in the "Reasons" column it states that I lack A-E experience. On Ms. Snook's QES, she is rated as Very Good because she does have A-E experience.

    (3)  What rationale, criteria, or influence was used to rate any applicant on standards not listed in the Vacancy Announcement?

    (4)  The QES indicates a "Composite Rating," with hand-written reasons for the evaluation factors. On the Certificate of Eligibles (Tab F-6), numerical scores were used as the rating.

    (aa)  Why the difference in rating evaluations?

    (bb)  What method, if any, was used to provide veteran preference points, i.e., the points added before the final evaluation, after the final evaluation, or not at all?

    (cc)  Which rating procedure, under 5 CFR Part 300 did the evaluators use as a basis for their ratings?

    (dd)  Has either applicant been trained-on, briefed-on, or has knowledge of OPM guidelines to rate applicants seeking employment?

    (ee)  I have been reluctant to ask this question because I would not want the person who called me to encounter retaliation; but I must obtain facts pertaining to my case. Did either Ms. Delacerna or Ms. Magruder call my office and provide me the details on the outcome of the selection process? The lady's voice inflection appeared to me to be either Asian or Hispanic origin.

> **Civil Action 06-2149**
> **Amendment 1**
> **Appendix A-6**

### Attachment 1-B
### Veterans Preference

1.   In my letter dated 6 Apr 06 to EEOC, Item 2, I requested that this claim be consolidated with the discrimination case.

   a.   CFR 1614.302 addresses Mixed case complaints. It states that a person **may not** file both a mixed case complaint and an appeal on the same matter.

   b.   Under 5 U.S.C. @ 330 and 7702 (Merit Systems Protection Board), I have the right to redress when adverse actions affected me as a veteran.

   c.   Under 38 U.S.C. @ 4322, DOL did not comply with the provisions of the chapter.


### Attachment 1-C
### Vacancy Announcement ETA-004-006PN

1.   At DOL's Tab B-1, Page 4 (dated 10 Jun 04) Ms. Valerie Sails did not send a written response stating the status of this application for employment, while I was notified in writing, by Mr. Bond that he had selected another position to fill the vacancy.

2.   My letter to EEOC dated 20 Mar 06, Item 8 is another attempt to obtain a response.


### Attachment 1-D
### Pretext for Discriminatory Actions

1.   DOL did not comply with the Office of Government Ethics directives because of the employer-supervisor relationship among the SO, the evaluation panel, and Ms. Snook.

2.   DOL failed to faithfully consider my 30 + years of work experience, which include 10 years as a business owner, compared to Ms. Snook's one year of on-the-job training experience.

3.   DOL issued a deficient Vacancy Announcement by excluding **significant** rating factors, for which Mr. Bond writes in his Response. See Tabs 23-1 and 23-2 in my letter to EEOC dated 6 Apr 06.

4.   I am confident that depositions from the panel evaluators, and documents previously submitted will meet legal sufficiency requirements to prove actions taken by DOL were pretexts for discriminatory actions; meaning that Ms. Snook would be selected regardless of other applicants' qualifications.

```
Civil Action 06-2149
Amendment 1
Appendix A-6
```

Edward D. Washington                    - 4 -
Agency No. 01A62627

E. Washington (06-2149)
7124 Strathmore Street
Falls Church, VA  22042

> U.S. District Court for the District of Columbia
> Attention:  Nancy M. Mayer-Whittington
> Clerk of the Court
> 333 Constitution Avenue, N.W.
> Washington, DC  20001

E. Washington (06-2149)
7124 Strathmore Street
Falls Church, VA  22042

> Elaine L. Chao
> Secretary of Labor
> U.S. Department of Labor
> 200 Constitution Ave., N.W.
> Washington, D.C.  20210

E. Washington (06-2149)
7124 Strathmore Street
Falls Church, VA  22042

> Alexander D. Shoaibi
> Assistant United States Attorney
> Civil Division
> 555 Fourth Street, NW, Room 4218E
> Washington, D.C.  20530

E. Washington (06-2149)
7124 Strathmore Street
Falls Church, VA  22042

> Jeffrey R. Taylor
> United States Attorney
> 555 Fourth Street, NW, Room 4218E
> Washington, D.C.  20530