# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **EDWARD D. WASHINGTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-2149 (CKK)** |
| | ) | |
| **ELAINE L. CHAO, Secretary,** | ) | |
| **U.S. Department of Labor,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Pursuant to Rules 12(b)(1) and 12(c) of the Federal Rules of Civil Procedure, Defendant, Elaine L. Chao, Secretary, U.S. Department of Labor, respectfully submits her motion for an order dismissing this case for lack of subject matter jurisdiction and for judgment on the pleadings.  In the alternative, pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant moves the Court for summary judgment on the grounds that no genuine issue of material fact exists and Defendant is entitled to judgment as a matter of law.  The grounds for this motion are set forth in the accompanying Memorandum of Points and Authorities in Support of Motion to Dismiss or, in the Alternative, Motion For Summary Judgment. A Statement of Material Facts As To Which There Is No Genuine Issue and a proposed order are also attached.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, DC Bar #489610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____/s/_____
ALEXANDER D. SHOAIBI, Bar #423587
Assistant United States Attorney

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aka v. Washington Hospital Ctr.*, 156 F.3d 1284 (D.C. Cir. 1998). . . . . . . . . . . . . . . . 7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Barnette v. Chertoff*, 453 F.3d 513, 519 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . 19

*Bell Atlantic Corp. v. Twombly,* ---, U.S. -- 127 S. Ct. 1955 (2007). . . . . . . . . . . . . . . 3

*Bennun v. Rutgers State University*, 941 F.2d 154 (3d Cir. 1991), cert.
    denied, 502 U.S. 1066 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bradley v. Smith*, 235 F.R.D. 125 (D.D.C.2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Branson v. Price River Coal Co.*, 853 F.2d 768 (10th Cir. 1988). . . . . . . . . . . . . . . . . 20

*Carberry v. Monarch Marking Systems, Inc.*, 30 Federal  Appx. 389, 393, 2002 WL
    220634 (6th Cir. Feb. 11, 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Chang v. United States*, 338 F. Supp. 2d 20 (D.D.C.2004). . . . . . . . . . . . . . . . . . . . . . . 3

*Cones v. Shalala*, 199 F.3d 512 (D.C.Cir.2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Devera v. Adams*, No. 92-1395, 1995 WL 405674 (D.D.C. June 29, 1995). . . . . . . . . 22

*Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567 (7th Cir. 1998). . . . . . . . . . . . . . . . . 24

*Fischbach v. D.C. Department of Correction*, 86 F.3d 1180 (D.C.Cir.1996). . . . . . 22, 23

*Fogg v. Gonzales,* 492 F.3d 447 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Foster v. Arcata Associate, Inc.*, 772 F.2d 1453 (9th Cir.1985), cert. denied
    475 U.S. 1048 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Gilbert v. Babbitt*, No. 92-1124,1993 WL 468465 (D.D.C. Oct. 29, 1993). . . . . . . . . . . 9

*Goostree v. Tennessee*, 796 F.2d 854 (6th Cir.1986). . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Greene v. Swain County Partnership for Health, 342 F. Supp. 2d 442 (W.D.N.C. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Hammond v. Chao, 383 F. Supp. 2d 47 (D.D.C. 2005).. . . . . . . . . . . . . . . . . . . . . . . .  24

Harel v. Rutgers State University, 5 F. Supp. 2d 246 (D.N.J. 1998), aff'd, 191 F.3d 444 (3d Cir. 1999) (table), cert. denied, 528 U.S. 1117 (2000). . . . . . . . .  10

Harris v. University of the District of Columbia, No. 87-2631 (LFO), 1990 WL 99316 (D.D.C. July 6, 1990).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

Herbert v. National Academy Of Sciences, 974 F.2d 192 (D.C. Cir. 1992). . . . . . . . .  2, 3

Hishon v. King & Spalding, 467 U.S. 69, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Holt v. KMI-Continental, Inc., 95 F.3d 123 (2d Cir. 1996).. . . . . . . . . . . . . . . . . . . . . .  20

Hopkins v. Price Waterhouse, 737 F. Supp. 1202 (D.D.C. 1990), aff'd 920 F.2d 967 (D.C. Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Horvath v. Thompson, No. 02-2157 (D.D.C. April 23, 2004).. . . . . . . . . . . . . . . . . . . . 24

Housley v. Boeing Co., 177 F. Supp. 2d 1209 (D. Kan. 2001). . . . . . . . . . . . . . . . . . . .  21

Howze v. Adams, 689 F. Supp. 20 (D.D.C. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Jackson v. Gonzales, 496 F.3d 703 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Johnson v. Lehman, 679 F.2d 918 (D.C. Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Johnson v. University of Wisconsin at Eau Claire, 70 F.3d 469 (7th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

Kolstad v. American Dental Ass'n, 139 F.3d 958, 969 (D.C. Cir. 1998), vacated on other grounds by, 527 U.S. 526 (D.C. Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Longwood Village Restaurant, Ltd. v. Ashcroft, 157 F. Supp. 2d 61 (D.D.C.2001).. . . . .  3

McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). . . . . . . . . . . . . . . . . . . .  6, 7, 8

Metropolitan Stevedore Company v. Rambo, 521 U.S. 121 (1997). . . . . . . . . . . . . . . .  6

Moore v. Reese, 817 F. Supp. 1290 (D. Md. 1993).. . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

2

Morgan v. Federal Home Loan Mortg. Corp., 172 F. Supp. 2d 98 (D.D.C. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Morse v. ATT Information Systems, 703 F. Supp. 1072 (S.D.N.Y. 1989). . . . . . . . . . .  20

Oliver-Simon v. Nicholson, 384 F. Supp. 2d 298 (D.D.C. 2005). . . . . . . . . . . . . . . . .  21

Paulsboe v. Farnam Companies, Inc., No. 97-7003, 1997 WL 431414 (10th Cir. August 1, 1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Perkins v. Lake County Department of Utilities, 860 F. Supp. 1262 (N.D.Oh. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Pignato v. America Trans Air, Inc., 14 F.3d 342 (7th Cir.1994)). . . . . . . . . . . . . . .  22, 23

Plain v. AT & T Corp., 424 F. Supp. 2d 11 (D.D.C.2006). . . . . . . . . . . . . . . . . . . . . . .  3

Rann v. Chao, 154 F. Supp. 2d 61 (D.D.C. 2001), aff'd, 346 F.3d 192 (D.C.Cir. 2003), cert. denied, 125 S.Ct. 35 (Oct. 4, 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 3

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). . . . . . . . . . . . .  4, 7

Sarullo v. U.S. Postal Service, 352 F.3d 789 (3d Cir. 2003). . . . . . . . . . . . . . . . . . . . .  10

Schmidt v. Chao, No. 04-892, 2006 WL 1663389 (D.D.C. June 13, 2006). . . . . . . . . .  24

St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993). . . . . . . . . . . . . . . . . . . . . . . .  6, 7

Stewart v. Ashcroft, 352 F.3d 422 (D.C. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . .  19, 23

Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). . . . . . . . . .  23

Thompson v. Capitol Police Board, 120 F. Supp. 2d 78 (D.D.C. 2000). . . . . . . . . . . . .  2

Washington Post Co. v. U.S. Department of Health and Human Services, 865 F.2d 320 (D.C. Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Waterhouse v. District of Columbia, 124 F. Supp. 2d 1 (D.D.C. 2000). . . . . . . . . . . . .  20

Waterhouse v. District of Columbia, 298 F.3d 989 (D.C. Cir. 2002). . . . . . . . . . . . . . .  4

## FEDERAL STATUTES

42 U.S.C. § 2000e-2(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

42 U.S.C. §2000e-2(m). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## FEDERAL RULES

Fed.R.Civ.P. 12(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Fed. R. Civ. P. 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ.P. 12(b)(6).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 56.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed.R.Civ.P. 56(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Rule of Evidence 801. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Federal Rule of Evidence 802. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **EDWARD D. WASHINGTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-2149 (CKK)** |
| | ) | |
| **ELAINE L. CHAO, Secretary,** | ) | |
| **U.S. Department of Labor,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Through an allegation of racial discrimination, Plaintiff seeks to transform this Court into a super personnel board that will overrule the legitimate hiring decisions of Defendant. His allegations are nothing more than an attempt to force Defendant to "see things his way" and hire him as Contract Specialist at the Department of Labor's ("DOL") Employment Training Administration ("ETA"). Plaintiff presents no evidence that Defendant discriminated against him by not selecting him for the position in question, but instead offers only conjecture and his opinions.

The undisputed material facts of this case, however, demonstrate that Plaintiff's claims are without merit. Race played no role in Plaintiff's non-selection. Importantly, the selecting official, Keith Bond, did not even know Plaintiff's race. Mr. Bond fairly evaluated all applicants, and concluded that Plaintiff was not the best candidate for the job. It is not within the scope of this Court's review to second guess legitimate, non-discriminatory business decisions of

employers. Defendant's motion to dismiss or, in the alternative, motion for summary judgment should, therefore, be granted, and this matter dismissed.

## FACTUAL BACKGROUND

Defendant respectfully refers the Court to the accompanying Statement of Material Facts As to Which There is No Genuine Dispute, which has been filed pursuant to Local Civil Rule 7.1(h), for a recitation of the undisputed facts in this case.

## STANDARD OF REVIEW

### I.     Motion to Dismiss (Fed.R.Civ.P. 12(b)(1) and 12(c))

Defendant moves for dismissal under Rule 12(b)(1), as the Court lacks jurisdiction over certain of Plaintiff's claims, and moves for judgment on the pleadings under Rule 12(c). "In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor." Thompson v. Capitol Police Board, 120 F. Supp.2d 78, 81 (D.D.C. 2000) (citations omitted). "The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." Rann v. Chao, 154 F. Supp.2d 61, 64 (D.D.C. 2001), aff'd, 346 F.3d 192 (D.C. Cir. 2003), cert. denied, 125 S.Ct. 35 (Oct. 4, 2004). In addition, "[on] a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuasion to establish subject-matter jurisdiction by a preponderance of the evidence." Thompson, 120 F. Supp.2d at 81.

A court may resolve a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) in either of two ways. First, the court may determine the motion based solely on the complaint. Herbert v. National Acad. Of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence. See id.; Rann, 154 F. Supp.2d at 64.

Courts will grant judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations [in the complaint]." Longwood Vill. Rest., Ltd. v. Ashcroft, 157 F.Supp.2d 61, 66 (D.D.C.2001) (citing Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); see also Fed.R.Civ.P. 12(c). "[I]f there are allegations in the complaint which, if proved, would provide a basis for recovery[,]" the Court cannot grant judgment on the pleadings. Bradley v. Smith, 235 F.R.D. 125, 126 (D.D.C.2006) (internal quotation marks and citation omitted). "[A]ll factual doubts [must therefore be] resolved in favor of the plaintiff[ ]." Chang v. United States, 338 F.Supp.2d 20, 21 (D.D.C.2004) (citation omitted). However, factual allegations "must be enough to raise a right to relief above the speculative level," and that a plaintiff must make "a 'showing,' rather than a blanket assertion, of entitlement to relief.'" Bell Atlantic Corp. v. Twombly, --- U.S. --- , 127 S. Ct. 1955, 1964-65 (2007). The standard of review under Rule 12(c) is thus essentially the same as that for a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6); Plain v. AT & T Corp., 424 F.Supp.2d 11, 20 n. 11 (D.D.C.2006).

## II.    Motion for Summary Judgment (Federal Rule of Civil Procedure 56)

Under Federal Rule of Civil Procedure 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to

judgment as a matter of law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine, and should preclude summary judgment, if a reasonable jury could return a verdict in favor of the non-moving party.  <u>Id</u>.  In contrast, a moving party is entitled to summary judgment against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Waterhouse v. District of Columbia</u>, 298 F.3d 989, 992 (D.C. Cir. 2002) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 150 (2000); <u>see also</u> <u>Washington Post Co. v. U.S. Dep't of Health and Human Servs.</u>, 865 F.2d 320, 325 (D.C. Cir. 1989).  The nonmoving party's opposition must consist, however, of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  <u>See</u> Fed.R.Civ.P. 56(e); <u>Celotex</u>, 477 U.S. at 324.

**ARGUMENT**

## I.    PLAINTIFF'S DISCRIMINATION CLAIM FAILS BECAUSE DISCRIMINATION PLAYED NO PART IN DEFENDANT'S DECISION NOT TO HIRE PLAINTIFF.

Plaintiff *pro se* filed his First Amended Complaint effective on August 19, 2005.  (Pacer Dkt. 13 ).  While the Complaint makes general allegations of "discriminatory actions" (Am. Compl. ¶ 1), discrimination (Am. Compl.¶ 4), and "preferential treatment" (Am. Compl. ¶ 7), the four page body of the Complaint mentions nothing about race.  Indeed, the Amended Complaint

focuses largely on violations of personnel laws and procedural flaws in the adjudication of his claims at the administrative level.  See Am. Compl. ¶¶ 8, 10 (misapplication of veterans' preference); Id. at ¶ 5 (violation of covered relationship statutes); Id. at ¶ 11 (Defendant's failure to obtain sworn statements from the members of the evaluation panel at the administrative stage of the hearing) .  However, attachments to the First Amended Complaint ("Am. Compl." Pacer Dkt. 13) and to the Complaint ("Compl.", Pacer Dkt. 1) initially filed by Plaintiff indicate that Plaintiff claims discrimination based on race.  Am. Compl. Attachment, Final Agency Decision (noting that Plaintiff contended that ETA discriminated against him based on race); Compl. ¶¶ 1, 4, 36-38, 44.

At the summary judgment stage, the Court must determine whether the plaintiff has produced sufficient evidence to support a reasonable inference of discriminatory conduct.  See Foster v. Arcata Assoc., Inc., 772 F.2d 1453, 1459 (9th Cir.1985), cert. denied 475 U.S. 1048 (1986).  Plaintiff has not met this burden.  In his own deposition testimony, Plaintiff admitted that racial animus did not motivate Defendant's decision not to select him for the Contracts Specialist position.  In addition, he provided no evidence to suggest that his claim has any viability.  Thus, his claim is legally baseless and should be dismissed with prejudice per Defendant's Motion for Summary Judgment.

A.    **PLAINTIFF PROVIDES NO EVIDENCE TO SUPPORT HIS ALLEGATION OF RACE DISCRIMINATION.**

1.    **Standard for Analyzing Claims of Race Discrimination**

Title VII makes it unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).

In Fogg v. Gonzales, 492 F.3d 447 (D.C. Cir. 2007), the D.C. Circuit held, *inter alia*, that the 1991 amendments to Title VII codified two alternative ways of establishing liability for intentional discrimination: (1) a single motive theory requiring that the plaintiff establish that discrimination was the "sole" or "but for" reason for the challenged employment action; and (2) a "mixed-motive" theory requiring only that the plaintiff demonstrate that discrimination played a "motivating part" or was a "substantial factor" in the employment decision.  Id. at 451.  Under either theory, plaintiff must demonstrate discrimination by a preponderance of the evidence[1] and may rely on direct or circumstantial evidence to meet that burden.  Desert Palace, Inc. v. Costa, 539 U.S. 90, 92-102 (2003).

In the absence of direct evidence, Plaintiff may attempt to establish that he was the victim of intentional discrimination on the basis of his race by relying on circumstantial evidence analyzed using the scheme first set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792

---

[1]"Preponderance of the evidence" means such evidence as, when weighed against that opposing it, has the more convincing force that something is so.  Hopkins v. Price Waterhouse, 737 F. Supp. 1202 (D.D.C. 1990), aff'd 920 F.2d 967 (D.C. Cir. 1990);  Metropolitan Stevedore Company v. Rambo, 521 U.S. 121, 137 n.9 (1997).  "[W]hen the evidence is evenly balanced, the [party with the burden of persuasion] must lose."  Id.

(1973)[2].   Under that scheme, the plaintiff must first, by a preponderance of the evidence,
establish a prima facie case of discrimination.  See St. Mary's Honor Center v. Hicks, 509 U.S.
502, 506 (1993).  If the employee succeeds, the employer then must introduce evidence of a
legitimate, nondiscriminatory reason for its action.  See McDonnell Douglas, 411 U.S. at 802.
Once it is established that both parties have met their respective burdens of production (i.e.,
plaintiff by presenting a prima facie case and defendant by producing a non-discriminatory
reason for its actions[3]), the burden shifting scheme becomes irrelevant.  Hicks, 509 U.S. at 510.
Then, the plaintiff must establish, by a preponderance of the evidence, that "race, color, religion,
sex, or national origin was a motivating factor for any employment practice."  Desert Palace, Inc.
v. Costa, 539 U.S. 90, 101 (2003) (citing 42 U.S.C. § 2000e-2(m)).

Alternatively, a plaintiff can meet the ultimate burden by demonstrating that the
defendant's legitimate, non-discriminatory reason is a pretext and that discrimination is the "but
for" reason for the challenged employment action.  St. Mary's Honor Center, 509 U.S. at
515-518.  This a more difficult standard than the requirement under Section 2000e-2(m) to show
that discrimination was a motivating factor.   In the single motive case, in Reeves v. Sanderson
Plumbing Products, Inc., 530 U.S. 133, 148 (2000), Justice O'Connor recognized occasions
where summary judgment would be appropriate:

Certainly there will be instances where, although the plaintiff has

---

[2]Reliance on the McDonnell Douglas scheme for testing the viability of plaintiff's
circumstantial evidence is not limited to the "single-motive" theory of liability.  See Fogg v.
Gonzales, 492 F.3d 447, 451 n.*

[3]The defendant's burden is one of production, not of proof.  See Aka v. Washington Hosp.
Ctr., 156 F.3d 1284 (D.C. Cir. 1998).  Thus, the defendant's burden is satisfied if he simply
explains what he has done or produces evidence of legitimate, nondiscriminatory reasons for the
action. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993).

> established a prima facie case and set forth sufficient evidence to
> reject the defendant's explanation, no rational factfinder could
> conclude that the action was discriminatory.  For instance, an
> employer would be entitled to judgment as a matter of law if the
> record conclusively revealed some other, nondiscriminatory reason
> for the employer's decision, or if the plaintiff created only a weak
> issue of fact as to whether the employer's reason was untrue
> and there was abundant and uncontroverted independent evidence
> that no discrimination had occurred.

Under either standard, Plaintiff fails to meet his burden of coming forward with evidence to create a triable issue.  As demonstrated below, the undisputed facts illustrate that Plaintiff cannot demonstrate that discrimination was a motivating factor, much less that it was the sole motivating factor in the challenged decision.

### 2.    Plaintiff has not established a prima facie case of race discrimination.

Plaintiff has the initial burden of proving a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817.  To establish a prima facie case of racial discrimination based on a refusal to hire, plaintiff must show that (1) he belongs to a protected class and that employment decision-makers were aware of this; (2) that he applied and was qualified for an available position; (3) that he was rejected despite his qualifications; and (4) that a similarly situated individual outside his protected class filled the position or the position remained vacant and the employer continued to seek applicants.  Morgan v. Federal Home Loan Mortg. Corp., 172 F.Supp.2d 98, 108 (D.D.C. 2001) (citing Cones v. Shalala, 199 F.3d 512, 516 (D.C.Cir.2000)).

Plaintiff has not made a prima facie case of race discrimination.  Plaintiff has shown that he was a member of a protected class (African American) and that he was not selected for the job.  Compl. at ¶ 2; Exhibit 4, Deposition of Edward D. Washington, July 18, 2007 ("Plff.

Depo.") at 42:9 ("She [the anonymous caller] knew I was black"); Exhibit 5, Certificate of

Eligibles (showing Plaintiff not selected for job). He was qualified for the job because he made

the best qualified list. Certificate of Eligibles; Exhibit 8, May 3, 2004 Letter from Bond to

Plaintiff ("After reviewing the resumes of the best qualified applicants, of whom you were one . .

. ."). Jennifer Snook, a white female (not a member of the protected group), was selected for the

position instead of Plaintiff. Exhibit 6, Declaration of Keith A. Bond, executed on November 16,

2007 ("Bond Decl.")  Bond Decl. at ¶ 2.  Plaintiff has satisfied all of the elements of a prima

facie case except one: he has not shown that Defendant was aware that he was a member of a

protected class. Thus, Plaintiff has not established a prima facie case of race discrimination.

There is no evidence that the selecting official knew plaintiff's race when he did not

select him for the contract specialist position.   "TitleVII prohibits intentional racial

discrimination. It is impossible for an employer, who does not know the race of an employee, to

discriminate against that employee." Moore v. Reese, 817 F.Supp. 1290, 1298 (D. Md. 1993).

 In the instant case, Bond did not know Plaintiff's race so he could not discriminate against him.

Under an objective analysis of membership in a protected class, Plaintiff still cannot

establish that Defendant knew that he was a member of a protected class.  Courts using this

analysis

focus on factors that give off a perception of membership in a particular group such as physical

appearance, language, cultural activities, or associations.  Under this objective analysis, the key

issue is whether Plaintiff can show that the Agency had a reasonable belief that he was a member

of a protected class.  Perkins v. Lake County Department of Utilities, 860 F. Supp. 1262,

1277-78 (N.D.Oh. 1994); see also Gilbert v. Babbitt, No. 92-1124,1993 WL 468465, at *4

(D.D.C. Oct. 29, 1993) (granting summary judgment on plaintiff's claim of national origin discrimination based on declarations from decision-makers attesting to their ignorance of plaintiff's controverted protected status); Greene v. Swain County P'ship for Health, 342 F. Supp. 2d 442, 451 (W.D.N.C. 2004); Harel v. Rutgers State Univ., 5 F. Supp. 2d 246, 269 (D.N.J. 1998), aff'd, 191 F.3d 444 (3d Cir. 1999) (table), cert. denied, 528 U.S. 1117 (2000); Bennun v. Rutgers State Univ., 941 F.2d 154, 173 (3d Cir. 1991), cert. denied, 502 U.S. 1066 (1992); Sarullo v. U.S. Postal Service, 352 F.3d 789, 799 (3d Cir. 2003)(finding that Plaintiff's cause of action under Title VII to be "meritless" because there is no evidence that the official who terminated Plaintiff knew Plaintiff's "race, color, national origin, age or prior EEO activity" but rather the official simply followed a USPS policy of denying "reemployment to former employees who had been removed from their position for cause.")..

Bond stated in two affidavits that he was not aware of Plaintiff's race at the time of selection. Bond Decl. at ¶ 4 ("[A]t no time during the selection process for that position was I aware of the race of the Plaintiff."); Bond Aff. at p. 5. Bond did not become aware of Plaintiff's race until after Plaintiff had filed his administrative complaint and the EEO counselor contacted him in July 2004. Bond Decl. at ¶ 4. As part of the selection process for ETA-04-047PN, Bond reviewed each candidates's application thoroughly, including that of Plaintiff. Id. at ¶ 5. These applications contained no information or documentation that indicated the race of the applicants. Id. Although Bond knew Snook's race from his past contact with her at the agency, no one advised Bond of the race of the candidates before he selected Snook. See Id.

Plaintiff has no proof that the Bond knew the Plaintiff was African-African. He can point to no document stating his race. No interviews were conducted for the position at issue. See

10

Bond EEO Aff. at 2; Exhibit 9, Plaintiff's EEO Affidavit, April 24, 2005 (Plff. Aff. at 2) ("I was not interviewed by anyone at DOL concerning this vacancy announcement."). Plaintiff has only offered conjecture to rebut these statements.

Plaintiff believed that Defendant would know his race based on his surname of Washington.[4] Plff. Depo. at 45:13-19. However, Plaintiff stated that even if he had a name not supposedly identifiable by race, he would not have been selected over Snook. Id. at 49:2-9. Plaintiff also opined that if someone listened to the recorded message on his office telephone, they could assume that the was black. Plff. Aff. at 2 (Item 4b). Plaintiff has never alleged that Mr. Bond called that phone number and heard that message.

Plaintiff failed to establish a prima facie case of discrimination because he could not show that Defendant was aware that he was a member of a protected class. Accordingly, his claims under Title VII should be dismissed.

3.    **In the Alternative, Defendant Has A Legitimate Reason for Plaintiff's Non-Selection and There is No Evidence that Race Played Any Role in this Non-Selection.**

Even if Plaintiff has established a prima facie case under Title VII (which he has not), Defendant has a legitimate, non-discriminatory reason for its non-selection of Plaintiff for Vacancy Announcement ETA-04-047PN which Plaintiff has failed to rebut.

The job at issue in this case is Contracts Specialist, GS-1102-09, which was issued under Vacancy Announcement ETA-04-047PN on March 15, 2004. See Exhibit 1, Vacancy Announcement ETA-04-047PN; Am. Compl. ¶ 1. The position was within ETA's Office of Financial and Administrative Management (OFAM), Office of Grants and Contracts

---

[4] Of course, as demonstrated by our first President, this name does not correlate with race.

Management, Division of Contract Services.  Id.  A Contracts Specialist would be involved in federal procurement, specifically contracts let by the Department of Labor for various services. Id.  Specific duties of the position included *inter alia*:  (1) analyzing solicited and competitive proposals; (2) reviewing requisitions and determining the appropriate method and type of procurement; (3) preparing solicitation documents (i.e., Requests for Proposals, Invitations of Bids, Requests for Information, and Requests for Quotations); (4) performing detailed analysis of proposals received to determining responsiveness and responsibility of offerors; (5) drafting final contract modifications and purchase orders; and (6) assuring compliance with procurement, regulations, policies, and procedures.  Id.  The Vacancy Announcement also included five evaluation factors considered to be essential to the successful performance of the duties of the position: (1) basic knowledge of procurement procedures, law, regulations and techniques, (2) knowledge of commonly applied procurement methods and types of contracts such as fixed price or cost reimbursement contracts, formula-funded or discretionary grants, (3) knowledge of source of supply and characteristics of assigned services sufficient to identify potential suppliers, assure adequate price competition; (4) knowledge of price analysis sufficient to review contractor proposals, and to perform analysis using previous history or other data sources to assure reasonableness of prices; and (5) skill in oral and written communications to negotiate contract prices and terms with contractors.  Id.

Mr. Bond, who like Plaintiff is African-American (Exhibit 3, Bond EEO Affidavit ("Bond Aff.") at p. 2), did not consider race as a factor when he selected Snook over Plaintiff, but rather based his decision on the differences in experience between these candidates.  These differences were significant.  When Plaintiff retired from  the Army in April 1994, his primary

source of income and occupation was running a limousine service. Plff. Depo. at 36:8-14. When Plaintiff applied to be a Contract Specialist, he had not worked as a Contract Specialist for ten years. Id. at 36:15-25; 37:1-6 ("[S]o I may not work primarily as a contract specialist in a governmental capacity. Yes, sir, that's absolutely correct."); Id. 37:19-23. In contrast, Snook was a contract employee in Mr. Bond's office at the time of the selection and had been so employed since February 2003. Bond Aff. at p. 5; Exhibit 7, Snook Application at 1; Plff. Depo. at 37:7-11. Mr. Bond had personal knowledge of Ms. Snook's job performance while she worked in her office. Bond Aff. at p. 5; Plff. Depo. at 37:15-17. Her duties and responsibilities included the same duties and responsibilities as those of the position advertised as ETA-04-047PN. Snook Application at 3. During her tenure in Mr. Bond's office, Ms. Snook had taken a series of courses relating to procurement and contracting in the federal government, including an introductory course in federal contracting, Architect-Engineer Services Contracting, and Construction Contracting. Snook Application at 4. In addition, Ms. Snook had knowledge of the Federal Acquisition Regulations ("FAR"). Id. at 3 (In the "Work Experience" section of her Application, Ms. Snook mentioned that she prepared "solicitation and award documents by selecting appropriate FAR clauses to include in each type of package using web-based E-procurement programs including Pro Trac" and "Prepare contracts, purchase orders, and modifications in accordance with the FAR and agency procedures for signature by contractors and the Contracting Officer."). Ms. Snook's work included all aspects of the duties of the advertised position. Id. at 3 (Work Experience Section of Application), 9-13 (Evaluation Factors). The recent and precise nature of Ms. Snook's experience differed significantly from the less current, more general experience of Plaintiff. See Plaintiff's Resume and Evaluation

13

Factors.    Thus, the two candidates were significantly different in relevant aspects of their respective employment backgrounds.

Mr. Bond's Affidavit, taken during the EEO Investigation, demonstrates that he based his decisions on the differences in experience noted above, and that race was not a motivating factor in his selection of Snook. Bond Aff. at pp. 3-5.    Plaintiff last demonstrated his skills as a Contracts Specialist in 1994, and Federal Acquisition Laws have changed significantly since then.    Id. at p. 3.    Also, Plaintiff's description of his qualifications only demonstrated his knowledge of terminology rather than how he performed certain functions.    Id.    Bond had no personal knowledge of Plaintiff's work.    Id. at p. 5.    In contrast, Bond had personal knowledge of Snook's work, because she had worked for a year as a Contract Specialist in the Division.    Id. at p. 6.    Snook participated in a number of training courses on topics including Federal Contract Law, Federal Contract Negotiation Techniques, Architect-Engineer Services Contracting and Construction Contracting.    Id.    The applications review panel ranked the selectee as the best qualified candidate and ranked Plaintiff next best qualified.    Id. at pp. 3-4; see also Certificate of Eligibles.    Also, the Selecting Official found that Selectee described her knowledge, skills, and abilities in greater detail than Plaintiff.    Bond Aff. at p. 4.    Plaintiff did not explain whether the "contract consulting services" he presently performs are related to federal contracting.    Id. at p. 3. Bond noted that "[a] significant amount of the contracting work performed under this announcement is A & E and Construction type contracting."    Id. at 3.    He also observed that Ms. Snook had experience with A & E contracting (Bond Aff.at p. 4) while there was "no indication in Mr. Washington's application that he has knowledge of A&E and Construction type contacting (Sealed Bidding).    Id. at pp. 3,  4.

14

**4.      Plaintiff Has Failed to Establish Either that Race Was a Motivating Factor in the Non-Selection or that Defendant's Reasons for the Non-Selection are Pretext for Racial Discrimination.**

Plaintiff has failed to show either that race was a motivating factor in Defendant's non-selection of Plaintiff or that Defendant's reasons for the non-selection are pretext for racial discrimination.  Plaintiff's evidence of racial discrimination consists of his account of two (2) anonymous phone calls, his personal opinions, and extraneous allegations of violations of personnel laws.  None of these allegations and conjecture are sufficient to show that race played any part in his non-selection.

Plaintiff's allegation of racial discrimination hinges on two alleged anonymous phone calls that he received in April of 2004.  The caller allegedly informed Plaintiff that he had not been selected for the Contracts Specialist position even though he was the most qualified applicant.  These phone calls are inadmissible under Federal Rule of Evidence 802 because they are hearsay and they do not fall into any of the exceptions to the rule against hearsay.  Federal Rule of Evidence 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Plaintiff is offering these statements of the anonymous caller for their truth.  Accordingly, these statements are inadmissible under FRE 802.

Even if the phone calls were admissible, they provide no evidence that Defendant was motivated by considerations of race in its selection for the Contracts Specialist position.  According to Plaintiff, he first became aware that he had not been selected for this position when he received an anonymous phone call on Saturday morning, April 21, 2004.  Plff. Dep. 19:24-25, 20:1, 21:5-7.  Plaintiff was in his car when he was notified of this call.  Id. at 22:6-9.  A message

15

was left on an answering service that he got through Verizon.  Id. at 22:20-23.  From the message, it appeared that the caller was a woman with a Hispanic or Asian accent who was probably in her mid to upper 40s.  Plff. Depo. at 23:10-25; 24:1-17.  The caller stated that Plaintiff was the best qualified applicant for the position but that Defendant was going to give that position to a young lady who is less qualified.  Id. at 24:21-24.  At that point, Plaintiff had not received any notification from the agency or any source regarding the status of his application.  Id. at 25:14-17.  The deadline for his application had been sometime in February or March 2006.  Id. at 25:18-23.

Plaintiff did not keep a copy of that message.  Plff. Depo. at 22:13-15.  The caller id showed up as "United States Government" but Plaintiff did not write down the phone number.  Id. at 20:2-3, 25-21:1.  He made no attempt to obtain phone records to determine the source of that phone call.  Id. at 20:2-4.  He made no attempts to retrieve that message from Verizon.  Id. at 22:24-25, 23:1-9.  Plaintiff directed interrogatories to individuals whom he suspected made the phone calls, and none of these individuals acknowledged making the phone calls.  Id. at 38:24-25; 39:1-5;Exhibit 2,  Interrogatory Responses of Marissa Dela Cerna at p. 3 (Answers 3 and 4); Interrogatory Response of Chari Magruder at p. 1 (Answer 3).

Plaintiff made no attempt to contact any of Defendant's representatives to determine whether, in fact, he had not gotten the job, because he got another phone call a few days after April 26, 2004.  Plff. Depo. at 26:7-23.  The phone call was from the same number that appeared on the referenced message, and the caller had the same voice that was heard on the message.  Id. at 26:24-25; 27:1-6.  The caller stated that Jennifer Snook was going to be selected for the position.  Id. at  27:9-11.  She told Plaintiff that this selection was wrong and that he "should do

something about it." Id. at 27:12-13.  She stated that Snook was less qualified than Plaintiff, but Plaintiff cannot recall why Snook was less qualified.  Id. at 27:21-25; 28:1.  The caller also stated that Plaintiff should file a complaint with the Inspector General before the selection date, which was May 14 or 17, 2004.  Id. at 28:2-24.  The caller did not give her name.  Id. at 32:17-18.  She stated that another lady involved in the selection process wanted to go along with the selecting official Mr. Bond and see that Snook got the highest ranking of all the applicants.  Id. at 33:3-7.  Plaintiff could not remember if the caller  explained how she would have any of this information.  Id. at 33:16-22.  The caller provided no reason why the selecting official and the woman involved in the selection wanted to make sure that  Snook was the selectee.  Id. at 34:19-24.

In addition to identifying the selectee by name, the caller also identified the selectee by race.  Plff. Depo. at 39:24-25.  Plaintiff testified that the caller brought up race, although he was not sure how the topic of race came up during the conversation.  Id. at 40:11-14, 22-24.   The caller also mentioned that Plaintiff was black but Plaintiff could not remember how that came up in the conversation.  Id. at 42:7-13.   The caller did not tell Plaintiff how she knew that he was black.  Id. at 18-19.

These anonymous phone calls provide no evidence of racial discrimination.  The first call made no mention of unequal treatment based on race, but rather mentioned unequal treatment based on qualifications only.  See Plff. Depo. at 24:21-24 (Plaintiff was the best qualified applicant for the position but that Defendant was going to give that position to a young lady who is less qualified).  Plaintiff's description of the second call is non-specific regarding the context of race.  While he stated that the caller mentioned his race and the selectee's race, he does not indicate what the caller said vis a vis the role of race in his non-selection.  Like the first call, the

second call seemed to focus on the disparity between the qualifications of Plaintiff and Snook. The anonymous caller told Plaintiff that Snook was less qualified than him.  Plff. Depo. at 27:21-25; 28:1.  Although the caller said that the selection was wrong, and that Mr. Bond and another woman wanted to see Snook selected for the position, she never said either why the selection was wrong or why Mr. Bond and the woman wanted Snook to be chosen.  From Plaintiff's account of these telephone calls, it is impossible to see how race played any role in his non-selection.

Plaintiff made no mention of racial discrimination in his April 26, 2004 letter to the U.S. Department of Labor, which was written contemporaneously with the phone call.  See Exhibit 10, April 26, 2004 letter at p. 1.  In that letter, Plaintiff mentioned the call that he had received on April 26, 2004.  Id.  The caller stated that Plaintiff was rated best qualified, but that "the position will not be offered to me because another person who has previously worked as a contractor for DOL with one year of experience, will fill the position on or by 30 Apr. 04."  Id.  His requested relief stated nothing about race.  Id. at p. 2.  Plaintiff asked that "an inquiry be conducted to determine my qualifications for the announcement, and the board/review results."  Id.  In his June 10, 2004 letter to Ms. Lillian Winstead, Plaintiff also fails to mention any reference to race in his April 26, 2004 telephone conversation.  See Exhibit 11, June 10, 2004 letter from Plaintiff to Ms. Lillian Winstead at p. 1.  This letter only contained the bare assertion that "the actions pertaining to the Contract Specialist position are racially discriminatory."  Id. at page 2, ¶ 7b.

Besides these anonymous phone calls, Plaintiff offers only  his own subjective belief that his qualifications were superior to those of Snook, along with allegations of personnel law

violations to support his claim of racial discrimination. These allegations and opinions are insufficient to show that Defendant's legitimate reasons are pretext for discrimination.

Like the alleged anonymous caller, Plaintiff 's disagreement with this selection is based on his difference of opinion with Mr. Bond regarding his qualifications, not any evidence that racial animus motivated Bond's selection decision. Am. Compl. ¶ 7 ("Defendant gave preferential treatment by scoring the Selectee, a contract specialist trainee with one year of on-the-job training, at 100 maximum points versus the Plaintiff's four years of actual contract specialist experience, 24 years of honorable military experience, and 10 years as a business owner."); Plff. Depo. at 49:25; 50:1-7. (When asked why he was filing a federal complaint against Defendant if he did not have any problem with Bond selecting the person whom Bond preferred for the job, Plaintiff replied that he "was the most qualified for the job."). Plaintiff also stated that Bond selected Snook because she only had one year on the job training experience as opposed to his four years experience as a contract specialist and contracting officer and ten years experience running a business. Id. at 51:3-8. Plaintiff in effect, verified Bond's legitimate, non-discriminatory reason for selecting Snook (Bond preferred on the on the job training qualifications of Snook). See Barnette v. Chertoff, 453 F.3d 513, 519 (D.C. Cir. 2006) (quoting Stewart v. Ashcroft, 352 F.3d 422, 430 (D.C. Cir. 2003) ("This Court will not reexamine governmental promotion decisions where it appears the Government was faced with a difficult decision between two qualified candidates, particularly when there is no other evidence that race [or age] played a part in the decision.")).

Plaintiff's personal appraisal of his credentials is totally irrelevant to his discrimination claim. His own evaluation of his suitability for the position provides no evidence that race was a

19

motivating factor behind Defendant's non-selection of Plaintiff.   Likewise, Plaintiff cannot establish pretext simply based on his subjective assessment of his own performance, for "plaintiff's perception of himself, and of his work performance, is not relevant." Waterhouse v. District of Columbia, 124 F. Supp. 2d 1, 7 (D.D.C. 2000) (citation omitted).   "Plaintiff's subjective belief of qualifications is not evidence that can be used to establish that she was qualified for the job." Harris v. University of the District of Columbia, No. 87-2631 (LFO), 1990 WL 99316 at *5 (D.D.C. July 6, 1990) (citing Morse v. ATT Information Systems, 703 F. Supp. 1072, 1083 (S.D.N.Y. 1989)); see also Carberry v. Monarch Marking Systems, Inc., 30 Fed. Appx. 389, 393, 2002 WL 220634 at *3 (6th Cir. Feb. 11, 2002) ("If plaintiff had merely given his own subjective opinion that he was better qualified then Mr. Driscoll, he would not have presented a jury issue"); Holt v. KMI-Continental, Inc., 95 F.3d 123, 129 (2d Cir. 1996) (cannot show pretext merely by asserting "personal belief" as to most qualified person); Johnson v. University of Wisconsin at Eau Claire, 70 F.3d 469, 481 (7th Cir. 1995); Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988) ("It is the perception of the decision maker which is relevant [to determining pretext], not plaintiff's perception of herself.").

Plaintiff never attributes any racial motives to Bond's selection of Snook.  He simply maintains that this selection was based on favoritism See Plff. Depo at 41:19 ("[S]he's his favorite.").  Plaintiff testified that Bond selected Snook over him because he preferred Snook. Plff. Depo. at 49:16-19.  Importantly, Plaintiff stated that  even if Bond had reason to believe that Plaintiff was white, Defendant would have selected Bond over Plaintiff.  Plff. Depo. at 54:16-24. Marissa Dela Cerna, one of the two members of the rating panel, stated that Bond preferred Snook to any of the other applicants for Vacancy Announcement ETA-04-047PN because he

believed that she was one of those "excellent employees"who "are the future of DCS." Defendant's Answers to Plaintiff's Interrogatory #5 (directed to Marissa Dela Cerna), p. 4. Both Plaintiff and Dela Cerna, thus, ascribed a racially neutral reason to Bond's selection of Snook.

At worst, Bond's actions constitute race neutral favoritism. Favoritism does not violate Title VII so long as it is not based on an impermissible characteristic such as race, color, gender, national origin, etc. See Oliver-Simon v. Nicholson, 384 F.Supp.2d 298, 310 (D.D.C. 2005) (noting that "Even if there had been favoritism in Ms. Salas' selection process, courts have held that '[p]reselection ... does not violate Title VII when such preselection is based on the qualifications of the party and not on some basis prohibited by Title VII.,'" quoting Goostree v. Tennessee, 796 F.2d 854, 861 (6th Cir.1986)); Housley v. Boeing Co., 177 F.Supp.2d 1209, 1217 (D. Kan. 2001) ("Liberally construed, plaintiff's evidence demonstrates, at the very most, that Mr. Riley may have been the beneficiary of favoritism based on his personal acquaintance or good working relationship with Mr. Chadd. Favoritism based on criteria other than gender or age, however, does not violate the federal anti-discrimination laws and does not raise an inference of discrimination."); Paulsboe v. Farnam Companies, Inc., No. 97-7003, 1997 WL 431414, at * 2 (10th Cir. August 1, 1997) ("Favoritism based on criteria other than gender does not violate TitleVII, and does not raise an inference of discrimination."); Kolstad v. American Dental Ass'n, 139 F.3d 958, 969 (D.C. Cir. 1998), vacated on other grounds by, 527 U.S. 526 (D.C. Cir. 1999) ("[P]re-selection by itself is neither unusual nor illegal . . .").

In addition to trying to bring a cause of action for racially neutral favoritism under Title VII, Plaintiff also attempts to convert Title VII into a vehicle for suits based on violation of personnel laws. He alleges that Defendants failed to properly apply veterans preference points

21

(Am. Compl. ¶ 8), violated the "Covered Relationships" statutes (Id. at ¶ 5), and omitted evaluation factors from the vacancy announcement in violation of Office of Personnel Management statutes and procedures[5] (Id. at ¶ 6). These alleged violations of personnel rules are insufficient to establish his claims under Title VII. See Howze v. Adams, 689 F.Supp. 20, 25 (D.D.C. 1988) ("A plaintiff cannot meet his ultimate burden of proof by simply showing that the agency's decision, although not based on a prohibited factor under the Act [Title VII], was reached in violation of federal personnel law. Instead, discriminatory motive is critical."); Devera v. Adams, No. 92-1395, 1995 WL 405674, at *12 (D.D.C. June 29, 1995) (same); Johnson v. Lehman, 679 F.2d 918, 922 (D.C. Cir. 1982) (noting that a prospective employer's failure to follow its own regulations and procedures alone may not be sufficient to support a finding of age discrimination. Even though adherence to or departure from internal hiring procedures is a factor that the trier of fact may deem probative in determining the true motivation

---

[5] Plaintiff stated that Bond rated applicants on criterion that was not in job announcement (architect and engineering ("A & E") contract experience). Plff. Depo. at 50:24-25; 51:1-2; Am. Compl.¶ 13). He also alleges that Ms. Magruder acted unfairly or illegally when she made A&E contract experience a criteria for her rating. Id. at 52:8-25, 53:1-6. Although A & E contract experience is not specifically listed in the Job Announcement, it is subsumed within several evaluation factors listed in that announcement. See Vacancy Announcement, ETA-04-047PN (Knowledge of comonly applied procurement methods and **types of contracts** and Knowledge of source of supply and characteristics of assigned **services**) (emphasis added). "." See Jackson v. Gonzales, 496 F.3d 703, 709 (D.C. Cir. 2007) ("[W]e are aware of no previous case from this or any other circuit suggesting that an employee gets past summary judgment simply by showing that a factor in the hiring decision was not expressly listed in the job description when the factor was encompassed by the job description."). Furthermore, choosing an applicant because of her skill in a type of contract is not a reason motivated by racial discrimination but rather a legitimate, non-discriminatory reason for that selection. " See Fischbach v. D.C. Dep't of Corr., 86 F.3d 1180, 1183 (D.C.Cir.1996) (quoting Pignato v. Am. Trans Air, Inc., 14 F.3d 342, 349 (7th Cir.1994)). "Once the employer has articulated a nondiscriminatory explanation for its action, ... the issue is not the correctness or desirability of [the] reasons offered ... [but] whether the employer honestly believes in the reasons it offers." Id. (internal quotations and citations omitted).

behind the hiring decision of the prospective employer, it is nonetheless essential that the claimant establish "discriminatory motive.").

Plaintiff has failed to show either that Defendant had a racially discriminatory motive or that his legitimate reasons are pretextual. He has only stated that the selection was unfair because he believed that he was a more qualified candidate. This reason does not even address the issue of race, but rather amounts to a difference of opinion with the selecting official. Plaintiff's allegations and evidence are also insufficient evidence to show pretext. See Fischbach v. D.C. Dep't of Corr., 86 F.3d 1180, 1183 (D.C.Cir.1996) (quoting Pignato v. Am. Trans Air, Inc., 14 F.3d 342, 349 (7th Cir.1994)) (internal quotation marks omitted) ("It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. He must show that the explanation given is a phony reason."). Plaintiff asks the Court to rule on whether his assessment of the candidates for the Contracts Specialist position should prevail over Mr. Bond's assessment. Title VII does not permit this Court to do that. An employer has discretion to choose among qualified candidates for a position, and absent a demonstrably discriminatory motive, courts lack the authority to second-guess what nondiscriminatory qualities-in this case, current knowledge and experience-it will seek in filling a position. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 259 (1981); Fischbach, 86 F.3d at 1183; Stewart v. Ashcroft, 352 F.3d 422, 429 (D.C. Cir. 2003).

Plaintiff further testified that he believed that even if Bond had reason to believe that Plaintiff was white, Defendant would have selected Bond over Plaintiff. Plff. Depo. at 54:16-24. Ultimately, Plaintiff testified that Bond selected Snook over him because he preferred Snook. Plff. Depo. at 49:16-19. Plaintiff has conceded that race was not a motivating factor in his non-selection.

**4.    Plaintiff Has Failed to Establish the "Even Tougher" Background Circumstances Necessary when the Alleged Discriminating Official is the Same Race as the Plaintiff.**

Plaintiff has also failed to establish the background circumstances necessary when alleging discrimination by an official who is the same race as himself.  Because Plaintiff's race is the same as that of the alleged discriminating official, Mr. Bond (Bond Aff. at p.1 (Bond states that he is an African-American)), he must overcome an inference against discrimination.  See Hammond v. Chao, 383 F.Supp.2d 47, 58 n.2 (D.D.C. 2005)(noting that it "weigh[ed] against an inference of discrimination when both the Plaintiff and the selecting official were African-American."); Schmidt v. Chao, No. 04-892, 2006 WL 1663389, at *5 (D.D.C. June 13, 2006) (stating that it "weigh[ed] against an inference of discrimination" when both the Plaintiff and the selecting official are Caucasian); Horvath v. Thompson, No. 02-2157, slip op. at 7 (D.D.C. April 23, 2004) (citing Fairchild v. Forma Scientific, Inc., 147 F.3d 567, 573 (7th Cir. 1998)) (applying principle where plaintiff's gender was same as that of the selecting official).

Plaintiff has not overcome this inference against discrimination.  He barely alleges, let alone establishes, that Bond discriminated against him based on race.  As shown above, there is nothing racially motivated about Bond's non-selection of Plaintiff.  Plaintiff has admitted this fact in his sworn testimony. As shown below, Bond did not know Plaintiff's race when he made the selection.  Furthermore, there is no evidence suggesting that Bond has an aversion to hiring African-American employees.  Indeed, in the two years preceding Plaintiff's complaint, Bond selected four (4) African-Americans for positions ranging from GS-9 to GS-14.  Exhibit 3, Bond EEO Affidavit at 5-6.  The facts of this case and Bond's recent hiring history all show that he did not have a racial bias against selecting blacks for employment.  Therefore, one should infer that Bond did not discriminate against Plaintiff on the basis of race because he is the same race as Plaintiff.

## CONCLUSION

Plaintiff failed to establish a prima facie case of discrimination.  Plaintiff failed to rebut Bond's sworn testimony that he was ignorant of Plaintiff's race but rather offered only conjecture as to how Defendant would know his race.  In the alternative, Plaintiff also conceded that race was not a motivating factor in Bond's selection decision.   Plaintiff has alleged a set of facts involving a selecting official of his own race who made a selection based solely on the relative qualifications of the candidates, while ignorant of Plaintiff's race.  Thus, Plaintiff has failed to state a claim under Title VII.

For the above reasons, and any which may be presented in Defendant's reply brief, Defendant's Motion to Dismiss or,  in the Alternative, Motion for Summary Judgment should be granted and this matter should be dismissed.


Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, DC Bar #489610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____/s/_____
ALEXANDER D. SHOAIBI,   Bar #423587
Assistant United States Attorney
Judiciary Center Building – Civil Division
555 Fourth Street, N.W. – Room E-4218
Washington, D.C. 20530
(202) 514-7236

Counsel for the Defendant

25

OF COUNSEL:
David Peña
Office of the Solicitor
Department of Labor

November 21, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 21st day of November, 2007, I caused the foregoing **Defendant's Motion to Dismiss, or in the Alternative for Summary Judgment, Defendant's Statement of Material Facts Not in Dispute, and proposed order** to be served on Plaintiff *pro se* by U.S. mail, postage prepaid, addressed as follows:

**Edward D. Washington**
**7124 Strathmore Street**
**Falls Church, VA 22042**

_____

/s/

ALEXANDER D. SHOAIBI,   Bar #423587
Assistant United States Attorney
Judiciary Center Building – Civil Division
555 Fourth Street, N.W. – Room E-4218
Washington, D.C. 20530
(202) 514-7236

Counsel for the Defendant

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EDWARD D. WASHINGTON,      )
                                )
        **Plaintiff,**         )
                                )
**v.**                        )      **Civil Action No. 06-2149 (CKK)**
                                )
**ELAINE L. CHAO, Secretary,**   )
**U.S. Department of Labor,**     )
                                )
        **Defendant.**       )

## DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

In this Title VII case, Plaintiff, Edward Washington, contends that the Department of Labor's Employment and Training Administration (ETA) discriminated against him on the basis of his race when he was not selected for a Contract Specialist position with the agency in 2004. First Amended Complaint ¶ 1. For the following reasons, no material facts are in dispute and judgment should be entered in the Defendant's favor.

1. On March 15, 2004, vacancy announcement ETA-04-047PN was issued for a GS-1102-09 Contract Specialist position within the Department of Labor's Employment Training Administration (ETA),   Exhibit 1 (Vacancy Announcement ETA-04-047PN) at p. 1 .

2. The position was within ETA's Office of Financial and Administrative Management (OFAM), Office of Grants and Contracts Management, Division of Contract Services.  Id.

3. The duties of the position involved federal procurement, specifically, the subject of contracts used by the Department of Labor for various services.  Vacancy Announcement at p. 1.

4. The position's duties also included acquisition duties, procurement planning, pre and post award contract administration, cost/ price analysis, negotiations and contract administration for

services, materials and equipment.  Id.

5.  The vacancy announcement included the following duties:  (1) analyzes solicited and

competitive proposals; (2) reviews requisitions and determines appropriate method and type of

procurement; (3) prepares solicitation documents such as Requests for Proposals (RFPS),

Invitations of Bids (IFBs), Requests for Information ("RFIs"), and Requests for Quotation

("RFQs'); (4) prepares and issues solicitation documents; (5) performs detailed analysis of

proposals received to determine responsiveness and responsibility of offerors; and (6) drafts final

contracts, modifications, and purchase orders.  Vacancy Announcement at p. 1.

6.  The vacancy announcement identified five evaluation factors considered to be essential to the

successful performance of the duties of the position: (1) Basic knowledge of procurement

procedures, law, regulations and techniques to effectively carry out a full range of procurement

assignments; (2) Knowledge of commonly applied procurement methods and types of contracts,

such as fixed price or cost reimbursement contracts, formula funded or discretionary grants, and

the required clauses and special provisions to plan and carry out the procurement to recommend

award; (3) Knowledge of source of supply and characteristics of assigned services sufficient to

identify potential suppliers, assure adequate price competition, and evaluate bid responsiveness

and responsibilities of the bidders; (4) Knowledge of price analysis sufficient to review

contractor proposals, and to perform analysis using previous history or other data sources to

assure reasonableness of prices; and (5) skill in oral and written communications to negotiate

contract prices and terms with contractors.  Id.

7.   A rating panel, consisting of two members, Chari Magruder and Marissa Dela Cerna

reviewed and rated each of the applicants.  Exhibit 2 (Defendant's Response to Plaintiff's

2

Interrogatories (Marissa Dela Cerna's Response to Interrogatory 2 & Chari Magruder's Response to Interrogatory 2)).  The raters did not give numerical scores to the applicants but instead rated their qualifications as "Very Good", "Good", or "Meets Requirements."  Id.

8.     Three applicants were placed on the certificate of eligibles provided to the selecting official: Jennifer Snook, a white female; Exhibit 3 (EEO Affidavit of Keith A. Bond ("Bond Aff."), executed November 29, 2004 at p. 6),  Plaintiff Edward D. Washington, African-American male, (Exhibit 4,  of Edward D. Washington, July 18, 2007 ("Plff. Depo.")42:9, Plaintiff states his race), and Beatrice Mosely.  Exhibit 5, Certificate of Eligibles.  The numerical ranking of the three (3) candidates on the certificate was prepared by ETA's personnel office.  Exhibit 6, Declaration of Keith A. Bond, executed on November 16, 2007 ("Bond Decl.") at ¶ 6.   The rankings were done before the selecting official, Keith Bond, received the Certificate of Eligibles and the candidates' applications.  Id.  Mr. Bond had no input or influence regarding these rankings.  Id.

9.     As part of the selection process for ETA-04-047PN, Bond reviewed each candidates' application thoroughly, including that of Plaintiff.  Bond Decl. at ¶ 5.  These applications contained no information or documentation that indicated the race of the applicants.  Id. Mr. Bond, an African-American male, selected Ms. Snook for the position.  Certificate of Eligibles; Declaration of Keith Bond ("Bond Decl."), executed on November 16, 2007, at ¶ 2.

10.    Mr. Bond was aware of the race and approximate age of the selectee, Ms. Snook.  Bond Aff.. at p. 5.

11.    Mr. Bond  was not aware of the race of Plaintiff at the time of the selection.  Bond Aff.. at p. 5; Bond Decl. at ¶4.  He did not become aware of Plaintiff's race until after Plaintiff had filed

his administrative complaint and the EEO counselor contacted him in July 2004.  Bond Decl. at ¶

4.

12.    Ms. Snook was a contract employee in Mr. Bond's office at the time of the selection, and

had been so employed from February, 2003.  Exhibit 7, Snook Application at p. 1.

13.    Mr. Bond had personal knowledge of Ms. Snook's job performance while she worked in

her office.  Her duties and responsibilities included the same duties and responsibilities as those

of the position advertised as ETA-04-047PN.  See Snook Application at pp. 1 & 3.

14.     During her tenure in Mr. Bond's office, Ms. Snook had taken a series of courses relating to

procurement and contracting in the federal government including an introductory course to

federal contracting, Architect-Engineer Services contracting, and Construction Contracting.

Snook Application at p. 4.  In addition, Ms. Snook had knowledge of the Federal Acquisition

Regulations.   Snook Application at 3 (noting that Snook had "prepare[d] solicitation and award

documents by selecting appropriate FAR clauses to include in each type of package using web-

based E-procurement programs including Pro Trac" and had "prepare[d] contracts, purchase

orders, and modifications in accordance with the FAR.").

15.    Ms. Snook's work included all aspects of the duties of the advertised position. Compare

Snook Application at p 3 ("Prepare solicitation documents including Requests for Proposals

(RFPs), Invitations for Bids (IFBs) and Requests for Qualifications." ("RFQs")) Vacancy

Announcement at p. 1 ("Prepares solicitation documents such as Requests for Proposals (RFPS),

Invitations for Bids (IFBs) . . .").  Also compare Snook Application at p. 3 ("Analyze competitive

and sole source proposals to determine if they responded fully to Department of Labor

requirements including regulations requirements including regulations, policies, and

procedures.") Vacancy Announcement at p. 1 ("Analyzes solicited and competitive proposals and assures full compliance with procurement regulations, policies, and procedures under the guidance of a Senior Contract Specialist.").

16.    Ms. Snook's application addressed each of the evaluation factors identified in the vacancy announcement and provided details of her work experience applicable to each factor.  Snook Application at pp. 9-13.

17.    In making his decision, Mr. Bond relied upon Ms. Snook's application and detailed description of her experience.  Bond Aff. at pp. 4-5.  Mr. Bond viewed favorably Ms. Snook's experience with sealed bid openings, competitive contract selections, sole source contract selections and the modification of existing contracts.  Id. at p. 4.

18.    Mr. Bond had observed first hand Ms. Snook's performance of the duties and responsibilities described in the job announcement from January 2003 through March 2004. Bond Aff. at p. 5; Plff. Depo. at 37:15-17.  Mr. Bond considered her to be able to grasp the Federal procurement procedures, laws, and techniques effectively with little direct supervision. Id.  He was aware that she had experience in both small and large procurements.  Id.  Based upon his personal observation of her abilities, he considered her to be a bright, hard-working individual with excellent communication skills.  Id.

19.    Mr. Bond did not interview any of the candidates for the position.  Bond Aff. at p. 3.

20.    Plaintiff had some prior experience in government contracts but none since 1994.  Plff. Depo. at 36:15-25; 37:1-6; 37:19-23.

21.    Mr. Bond found the lack of recent experience to be a reason not to select Plaintiff for the position.  Bond Aff. at p. 3.

22.    Mr. Bond considered Plaintiff's lack of recent experience unfavorably because of the

significant changes that had occurred over time regarding the Federal Acquisition Regulations.

Bond Aff. at p. 3.

23.    In April 2004, Plaintiff alleges that he received two anonymous telephone calls from a

person who told him that Plaintiff was not going to be selected for the position even though he

was the most qualified candidate.  Plff. Depo. at 24:21-24; 27:21-25; 28:1.  Plaintiff alleges that

the first call took the form of a message.  Id. at 22:10-12.  Plaintiff did not keep a copy of the

message which was left by the first call.  Plff. Depo. at 22:13-15.  Plaintiff did not write down the

phone number.  Id. at 20:2-3, 25-21:1.  He made no attempt to obtain phone records to determine

the source of that phone call.  Id. at 20:2-4.  He made no attempts to retrieve that message from

Verizon.  Id. at 22:24-25, 23:1-9.  Plaintiff directed interrogatories to individuals he suspected

made the phone calls, and none of these individuals acknowledged making the phone calls.  Id. at

38:24-25; 39:1-5; Interrogatory Responses of Marissa Dela Cerna at p. 3 (Answers 3 and 4);

Interrogatory Response of Chari Magruder at p. 1 (Answer 3).

24.    Plaintiff made no mention of racial discrimination in his April 26, 2004 letter to the U.S.

Department of Labor, which was written contemporaneously with the phone call.  See April 26,

2004 letter at p. 1.  In that letter, Plaintiff mentioned the call that he had received on April 26,

2004.  Id.  According to that letter, the caller stated that Plaintiff was rated best qualified but that

"the position will not be offered to me because another person who has previously worked as a

contractor for DOL with one year of experience, will fill the position on or by 30 Apr. 04."  Id.

Plaintiff's requested relief stated nothing about race.  Id. at p. 2.  Plaintiff requested that "an

inquiry be conducted to determine my qualifications for the announcement, and the board/review

6

results." <u>Id.</u>

25.    Plaintiff believed that even if Bond had reason to believe that he was white, Bond would have selected Snook over him.  Plff. Depo. at 54:16-24.  Bond selected Snook over him because Bond preferred Snook.  Plff. Depo. at 49:16-19.

26.    On May 3, 2004, Mr. Bond sent a letter to Plaintiff informing him that another candidate had been selected for the position of Contracts Specialist, GS-1102-9.  Exhibit 8, May 3, 2004 letter from Bond to Plaintiff.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, DC Bar #489610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

_____/s/_____
ALEXANDER D. SHOAIBI,  Bar #423587
Assistant United States Attorney
Judiciary Center Building – Civil Division
555 Fourth Street, N.W. – Room E-4218
Washington, D.C. 20530
(202) 514-7236

OF COUNSEL:
David Peña
Office of the Solicitor
Department of Labor

November 21, 2007

Counsel for the Defendant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **EDWARD D. WASHINGTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-2149 (CKK)** |
| | ) | |
| **ELAINE L. CHAO, Secretary,** | ) | |
| **U.S. Department of Labor,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

This matter comes before the Court on the Defendant's Motion to Dismiss or in the

Alternative for summary judgment, pursuant to Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6) and Fed.

R. Civ. P. 56.  Upon consideration of the Motion, the entire record herein, and for good cause

shown, it is by the Court this _____ day of _____, 2007, hereby

ORDERED that Defendant's Motion to Dismiss/ Motion for Summary Judgment is

GRANTED.


SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE

Copies to:

Alexander D. Shoaibi,
Assistant United States Attorney
Judiciary Center Building – Civil Division
555 Fourth Street, N.W. – Room E-4218
Washington, D.C. 20530


Edward D. Washington
7124 Strathmore Street
Falls Church, VA 22042