## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **EDWARD D. WASHINGTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-2149 (CKK)** |
| | ) | |
| **ELAINE L. CHAO, Secretary,** | ) | |
| **U.S. Department of Labor,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## NOTICE OF FILING EXHIBITS REFERENCED IN
## DEFENDANT'S MOTION TO DISMISS OR,
## IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

The Defendant, through counsel, the United States Attorney for the District of Columbia,

respectfully notifies the Court and Counsel of the filing of the attached exhibits referenced in

Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss

Or In the Alternative, Motion for Summary Judgment and Defendant's Statement of Material Facts

Not in Dispute.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. BAR NUMBER 498-610

By: _____/s/_____
ALEXANDER D. SHOAIBI,  Bar #423587
Assistant United States Attorney
Judiciary Center Building – Civil Division
555 Fourth Street, N.W. – Room E-4218
Washington, D.C. 20530
(202) 514-7236

November 26, 2007

## CERTIFICATE OF SERVICE

I hereby certify that, on this 26th day of November, 2007, I caused the foregoing **Notice of Filing Exhibits Referenced in Defendant's Motion to Dismiss Or, in the Alternative Motion for Summary Judgment, Index to Defendant's Exhibits, and Exhibits** to be served on Plaintiff *pro se* by U.S. mail, postage prepaid, addressed as follows:

**Edward D. Washington**
**7124 Strathmore Street**
**Falls Church, VA 22042**

_____
                                    /s/
_____
ALEXANDER D. SHOAIBI,   Bar #423587
Assistant United States Attorney
Judiciary Center Building – Civil Division
555 Fourth Street, N.W. – Room E-4218
Washington, D.C. 20530
(202) 514-7236

Counsel for the Defendant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **EDWARD D. WASHINGTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-2149 (CKK)** |
| | ) | |
| **ELAINE L. CHAO, Secretary,** | ) | |
| **U.S. Department of Labor,** | ) | |
| | ) | |
| **Defendant.** | ) | |


## INDEX TO DEFENDANT'S EXHIBITS

| EXHIBIT | DESCRIPTION |
|---|---|
| 1 | Vacancy Announcement ETA-04-047PN |
| 2 | Defendant's Responses to Plaintiff's Interrogatories (Marissa Dela Cerna and Chari Magruder) |
| 3 | EEO Affidavit of Keith A. Bond, executed on November 29, 2004. |
| 4 | Deposition Excerpts of Plaintiff Edward D. Washington, July 18, 2007. |
| 5 | Certificate of Eligibles |
| 6 | Declaration of Keith A. Bond, executed on November 16, 2007 |
| 7 | Application of Jennifer A. Snook for ETA-04-047PN |
| 8 | Letter from Keith A. Bond to Plaintiff, dated May 3, 2004 |
| 9 | Plaintiff's EEO Affidavit, executed on April 24, 2005 |

| 10 | Letter from Plaintiff to U.S. Department of Labor, dated April 26, 2004 |
| 11 | Letter from Plaintiff to Ms. Lillian Winstead, dated June 10, 2004 |
| 12 | Plaintiff's Resume and Evaluation Factors |

**COMPETITIVE NOTICE**                                                      An Equal Opportunity Employer

| | |
|---|---|
| **Position:** Contract Specialist | **Announcement No:** ETA-04-047PN |
| **Series/Grade:** GS-1102-09 | **Opening Date: March 15, 2004** |
| | **Closing Date: March 26, 2004** |
| **Salary Range: $41,815 - $54,360** **(includes locality pay of 14.63%)** | **Number of Vacancies:** One (1) |
| | **Bargaining Unit:** Inside Bargaining Unit |
| **Organizational/Geographic Location:** Employment & Training Administration Office of Financial and Administrative Management Office of Grants and Contacts Management' Division of Contract Services | **Promotion Potential:** GS-11* |
| | **Civil Service Status Required:** No |
| | **Temporary Position:** No-Permanent Position |
| | **Part-time Position:** No-Full-Time Position |
| **Duty Station: Washington D.C.** | **Area of Consideration:  All Eligible Candidates and *ICTAP Eligibles Within the Local Commuting Area** |

Applications will also be accepted from persons who qualify under noncompetitive hiring authorities, such as (but not limited to) Veterans Readjustment Appointment (VRA eligibles), 30% or more compensable veterans, persons with disabilities, Outstanding Scholar, or present/ former Peace Corps personnel. Additionally, veterans who are preference eligibles or who have been separated from the armed forces under honorable conditions after substantially completing three years of continuous active military service may apply under the Veterans Employment Opportunity Act.
Detailed application instructions and an on-line application form are available on the Employment and Training Administration, Office of Human Resources web site at URL: http://wdsc.doleta.gov/jobs/

---

**Position Duties and Responsibilities:**

This position is located in the Employment and Training Administration (ETA), Office of Financial and Administrative Management (OFAM), Office of Grants and Contract Management (OGCM), Division of Contract Services (DCS). The DCS is responsible for providing centralized services to the National Office, ETA for federal acquisition (procurement) requirements to ensure effective and uniform implementation of Federal and Departmental procurement and assistance regulations and guidelines within ETA.

The incumbent serves as a Contract Specialist responsible for acquisition duties, such as, procurement planning, pre/post award contract administration, cost/ price analysis, negotiations and contract administration for services, materials and equipment.

Specific duties include but are not limited to:

'Analyzes solicited and competitive proposals and assures full compliance with procurement regulations, policies, and procedures under the guidance of a Senior Contract Specialist.

Reviews requisitions and determines appropriate method and type of procurement, citing the authority in determinations and findings reports prepared for the Contracting Officer.

Prepares solicitation documents such as Requests for Proposals (RFPS), Invitations for Bids (IFBs), Requests for Information (RFIs), and Requests for Quotations (RFQs), referring to Senior Contract Specialists as needed. Works closely with Program Officials in order to produce "Specification/Description/Work Statements," "Instruction to Offerors," and "Recommendation Evaluation for Award" publication information for the Contracting Officer's signature.

Determines adequacy and completeness of purchase description, conducts appropriate research and analysis, and initiates any corrective actions required.

Prepares and issues solicitation documents; selects appropriate clauses, ensures clear and complete specifications, and serves as a central point of contact on assigned procurements.

Performs detailed analysis of proposals received to determine responsiveness and responsibility of offerors including review of past awards and performance, request pre-award survey, and establishment of price reasonableness by either price or limited cost analysis.

Drafts final contracts, modifications, and purchase orders including appropriate specifications and standards and specials clauses, for signature of the Contracting Officer, assuring compliance with procurement regulations, policies, and procedures.



**Qualification Requirements: (Applicants must meet qualification, legal, and regulatory requirements for the position by closing date of this vacancy announcement.)**

To be eligible, applicants must have 2 full academic years of progressively higher level graduate education or masters or equivalent graduate degree or LL.B. or J.D.; or one year of specialized experience at the GS-7 grade level in the Federal Service.

To qualify solely on education for GS-1102 positions on the basis of graduate education, graduate education in one or a combination of the following fields is required: accounting, business, finance, law, contracts, purchasing, economics, industrial management, marketing, quantitative methods, or organization and management.

Specialized experience is experience in or directly related to the position, such as contract specialist responsible for acquisition duties, such as, procurement planning, pre/post award contract administration, cost/ price analysis, negotiations and contract administration for services, materials and equipment which has equipped the applicants with specific knowledge, skills and abilities to perform successfully the duties of the position.

*ICTAP **(Interagency Career Transition Assistance Program** candidates):Applicants applying for special selection priority under 5 CFR Part 330 Subparts C or G (ICTAP), must be well qualified and submit proof of eligibility, i.e., RIF separation notice, certificate of expected separation, or other agency certification that you are in a surplus occupation; submit the last or current performance rating of record of at least fully successful or equivalent; apply for a vacancy at or below the grade level from which separated; file an application for a specific vacancy within the time frame indicated in the announcement; and be well qualified for the position. If separated through compensable injury or disability, no performance rating is required. Well qualified is defined as: A rating of at least Good on evaluation factors designed as High (H).

## CONDITIONS OF EMPLOYMENT

The following statements apply if checked:

| | |
|---|---|
| ___ Requires a security clearance | ___ Requires a valid drivers license |
| ___ Requires a medical examination | ___ Subject to geographic mobility |
| ___ Subject to financial disclosure requirements | ___ Subject to drug test prior to appointment |
| ___ Requires a supervisory/managerial probationary period if the requirement has not been met | _X_ Subject to receipt of an official college transcript if qualification was based solely on education or a combination of education and experience. |
| ___ Subject to frequent overtime | |
| ___ Subject to frequent travel | |

## METHOD OF EVALUATION

Applicants meeting the minimum qualification requirements for this position may be further evaluated against other job related factors to determine who will be referred to the selecting official. The rating and ranking of candidates to determine the best qualified will be accomplished by comparing the candidate's knowledge, skills and abilities against those of other eligible candidates for each of the evaluation factors. The most important factors will be designated by the letter (H), indicating high. These factors are essential to the successful performance of the duties of the position. The candidate's experience, training, awards and performance appraisal will be considered in the evaluation process. It is the responsibility of the applicant to provide all of the information needed by the closing date of this announcement. Current and/or past supervisors may be contacted unless specified otherwise. Applicants may be interviewed by a panel and/or the selecting official or his/her designee.

In addition to meeting the minimum qualifications and eligibility requirements for special priority consideration, ICTAP candidates must meet the desired level of performance as indicated by the knowledge, skills, and abilities and be rated well qualified. Well qualified is defined as a rating of at least Good on evaluation factors designed as High (H).

**EVALUATION FACTORS:** It is **highly recommended**, but not required, that all candidates address and submit the evaluation factors on a separate sheet of paper. To be considered Highly Qualified (HQ), applicants need to receive a rating of "**High**" (H) in all factors listed below designated (H). For ICTAP eligibles to be considered well qualified, they must receive a rating of "**High**" (H) in factors 1, 2, & 3, & 5 and a rating of Medium (M) in factor 4. **Failure to address these evaluation factors may impact your final rating and/or ranking.**

EVALUATION FACTORS: **Factors designated (H) are rated high.**

1. Basic knowledge of procurement procedures, laws, regulations and techniques to effectively carry out a full range of procurement assignments. **(H)**

2. Knowledge of commonly applied procurement methods and types of contracts, such as, fixed price or cost reimbursement contracts, formula-funded or discretionary grants, and the required clauses and special provisions to plan and carry out the procurement to recommend award. **(H)**

3. Knowledge of source of supply and characteristics of assigned services sufficient to identify potential suppliers, assure adequate price competition, and evaluate bid responsiveness and responsibilities of the bidders. **(H)**

4. Knowledge of price analysis sufficient to review contractor proposals, and to perform analysis using previous history or other data sources to assure reasonableness of prices. **(H) (M) for ICTAP Candidates**

5. Skill in oral and written communications to negotiate contract prices and terms with contractors. **(H)**

## HOW TO APPLY

You may submit an Optional Application for Federal Employment (OF-612), a resume or any other written format, including a Standard Form (SF) 171, you choose. Certain information is needed in order to evaluate your qualifications for the job, therefore, your application **must** contain the following information:

- Vacancy announcement number, title, series, grade for the job for which you are applying -
- Full legal name and mailing address
- Social Security Number (SSN)
- Country of Citizenship – **MUST BE U.S. CITIZEN**
- Veterans Preference
- Daytime and evening telephone numbers
- For experiences most relevant to the position, include name of employer, dates of employment, job title, start and end dates, a description of your duties and responsibilities and hours worked per week for each job listed
- Title, series and grade and dates of highest Federal civilian position held
- For education, include name, city, and state of high school and colleges/universities attended as well as date of diploma or GED. Also include type and year of any degrees received and majors. If no degree, include total credits earned and indicate whether semester or quarter hours. Do not send transcripts unless checked below.
- To receive credit for relevant training, list seminar/course titles, dates, number of hours and name of the institutions from which training was received.
- Description of honors, awards, and special qualifications such as language skills, computer skills along with dates acquired, if relevant to position.
- If applying for reinstatement or transfer, attach a copy of the appropriate SF-50, Notification of Personnel Action, which confirms your status.

| | |
|---|---|
| **The following material is required if checked:**<br><br>**X** -- Most recent supervisory performance appraisal **or** a statement with reasons why you do not have a supervisory appraisal is required for all applicants.<br><br>**X** SF-50, Notification of Personnel Action (Required for all current or former federal applicants).<br><br>**X** -- **College transcript (Required if qualifying based solely on education or a combination of education and experience.**<br><br>**X** -- Other: DD-214 and/or SF-15 for VETERANS<br><br>**X** -- Other: ICTAP Letter for ICTAP Eligibles<br><br>**X** -- Please complete and submit the attached Applicant Background Questionnaire, OMB No. 1225-0072, with your application. Submission of this form is optional. Data collected will be used only in aggregate, to assess the effectiveness of outreach efforts. Consideration for this job will not be affected by failure to submit this form. **We will acknowledge receipt of your application, if it is accompanied with this form.**<br><br>* **You must submit a copy of your college transcript(s) with your application if you are trying to qualify based solely on education. If not, you will be found ineligible.** | *Mail your application to, or secure forms or information from:*<br><br>U.S. Department of Labor<br>Employment and Training Administration<br>Office of Human Resources<br>200 Constitution Avenue, NW, Room N-4656<br>Washington, DC 20210<br>**Attn: Shelley DeCrane**<br>Commercial: (202) 693-3922<br>Fax: (202) 693-3734<br>TTY: (202) 693-3924<br><br>**The area of consideration for this position is limited to All Eligible Candidates and \*ICTAP Eligibles Within the Local Commuting Area.**<br><br>An incomplete application package may result in your being considered ineligible. To receive consideration for this opportunity, **your complete application must be in the Office of Human Resources by the closing date of this announcement.** |

All qualified candidates will receive consideration for this position without regard to race, color, religion, sex, age, national origin, disability, political affiliation, labor organization affiliation, marital status, sexual orientation, or other non-merit factors.

The Department of Labor welcomes and encourages applications from persons with physical and mental disabilities and will reasonably accommodate the needs of those persons.

-Use of postage paid government agency envelopes to file job applications is a violation of Federal law and regulation.
-If the position is announced with promotion potential, the incumbent may be promoted without further competition upon meeting all legal regulatory requirements. However, promotion is not guaranteed and no promise is implied.
-Travel and relocation costs will be paid for employees of the Department for promotion. Other moves are payable if relocation is determined to be in the best interest of the government.
-Selection for this position may be made as a result of this announcement or by any other appropriate means including reassignment, reinstatement, new appointment, transfer or change to lower grade.
-Special Note to Outside Applicants: Male applicants between the ages of 18 and 25 are eligible for appointment only after registering with the Selective Service System.

**VETERANS' PREFERENCE:** If you served on active duty in the U.S. Military and were separated under honorable conditions, you may be eligible for veterans' preference. To receive preference, if your service began after October 15, 1976, you must have a Campaign Badge, Expeditionary Medal, service connected disability, or you must have served on active duty during the Gulf War from August 2, 1990 through January 2, 1992.
* To claim 5-point preference, **attach a copy of your DD-214**, Certificate of Release or Discharge from Active Duty, or other proof of eligibility.
* To claim 10-point preference, **attach an SF-15**, Application for 10-point Veterans' Preference, plus proof required by that form.

The Government Reform Act of 1994 mandates that all Federal employees who are hired after January 1, 1995 must receive their salary via Direct Deposit/Electronic Fund Transfer or must request a waiver.

WHY WORK FOR US: As a permanent or long term temporary employee with the Department of Labor, you will be entitled to a wide array of benefits. The Federal Employees Health Benefits program has many plans to choose from; all at very reasonable rates which can be paid from pre-tax income. The Federal Employee Retirement System is one of the premier retirement programs in the nation. This program features three components: a retirement pension; the Thrift Savings Plan (an employee controlled investment program); and social security. Federal Employee Group Life Insurance offers numerous life insurance policy options covering employees, spouses and dependents. The leave program offers exceptional time off benefits including annual leave, sick leave, an employee leave share program, Family Friendly Leave, Family Medical Leave, and 10 paid holidays per year. The Child Care Subsidy Program provides financial assistance to make child care more affordable for qualifying employees. Employee Assistance Programs provide confidential counseling and referral services to employees and their family members at no cost as well as periodic seminars on behavioral health issues. You may also be entitled to career development and enrichment training. As an employee of the Employment and Training Administration you will enjoy additional benefits such as the Transportation Subsidy Program (vanpool, commuter vehicle), a pre-tax payroll deduction benefit; and Family Friendly Policies such as alternative work schedules. There are a variety of other services provided such as a cafeteria, Fitness Center, Health Unit, on-site childcare center; credit union, recreation association and store, dry cleaners, and U.S. postal services.

**DELEGATED EXAMINING AUTHORIZATION NO. DL-1.** Competitive examining authority has been delegated to the Department of Labor by the Office of Personnel Management. Non-status applications will be forwarded to the Delegated Examining Unit for rating, ranking and referral.

**You must submit a copy of your college transcript(s) with your application if you are trying to qualify based solely on education. If not, you will be found ineligible.**

# APPLICANT BACKGROUND QUESTIONNAIRE

FORM APPROVED

OMB No. 1225-0072
(Exp. 4-30-2002)

| | |
|---|---|
| The U.S. Department of Labor is requesting your completion of this form to assist the agency in evaluating and improving its efforts to publicize job openings and to encourage applications for employment from a diverse group of qualified candidates, including minorities and persons with disabilities. The Department will use the data you supply to determine how many applicants are from different groups and how many of these applicants are qualified for the job in question. The Department will then assess the effectiveness of specific outreach efforts and means of communicating information on job vacancies in light of this information.<br><br>EFFECTS OF NONDISCLOSURE: Providing the information requested on this form is voluntary. This information will have no effect on hiring decisions.<br><br>Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. | Information provided on this form will be used for program evaluation. Personal identifying information will not be included in the tabulation of data in the DOL database.<br><br>The public reporting burden for this collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to the U.S. Department of Labor, Human Resource Services Center, FPB, Washington, D.C. 20210; and the Office of Management and Budget, Paperwork Reduction Project, Washington, D.C. 20503.<br><br>Solicitation of this information is in accordance with 5 CFR Section 720, Federal Equal Opportunity Recruitment Program (FEORP). |

## PLEASE COMPLETE THE FOLLOWING:

Name:

Do you have a Disability?  ___ Yes  ___ No
If You checked Yes above, is your disability one of the targeted

disabilities listed below?  ___ Yes  ___ No
- ___ Blind
- ___ Deaf
- ___ Missing Extremity(s)
- ___ Partial Paralysis
- ___ Complete Paralysis
- ___ Convulsive Disorder
- ___ Mental Retardation
- ___ Mental Illness
- ___ Genetic or physical condition affecting limbs or spine

Sex: ___ Male  ___ Female

Title, Grade, and Announcement Number Of Position for which applying:

## ETHNIC SELF-IDENTIFICATION

**Are you Hispanic, Latino, or of Spanish Origin?**  (Definition: A person of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin, regardless of race.) ___ Yes  ___ No

## RACE SELF-IDENTIFICATION

**Please read the descriptions, then mark one or more races to indicate what you consider yourself to be.**

___ American Indian or Alaska Native   -- A person having origins in any of the original peoples of North and South America (including Central America), and who maintains tribal affiliation or community attachment.

___ Asian   — A person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian subcontinent including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam.

___ Black or African American   --- A person having origins in any of the black racial groups of Africa.

___ Native Hawaiian or   --- A person having origins in any of the original peoples of Hawaii, Guam, Samoa, or other Pacific Islands.

___ Other Pacific Islander

___ White   --- A person having origins in any of the original peoples of Europe, the Middle East, or North Africa.

### SOURCE OF INFORMATION ABOUT THIS VACANCY:  (Check all that apply)

- _____ 1. Magazine
- _____ 2. Newspaper
- _____ 3. Radio/Television Broadcast
- _____ 4. Agency Personnel Office
- _____ 5. State Employment Office
- _____ 6. Government Recruitment at School
- _____ 7. Federal, State, or Local Job Info. Center
- _____ 8. Friend or Relative Working for the Agency
- _____ 9. Internet
- _____ 10. Federal/DOL Jobsline
- _____ 11. Other

Interrogatories directed to Chari Magruder

## INTERROGATORY NO. 1

Please cite with specificity, the authority for evaluating applicants' qualifications on Construction and Architect-Engineering experience.

## RESPONSE TO INERROGATORY NO. 1

Ms. Magruder did not evaluate applicants' qualifications or experience in Construction and Architect-Engineering. Specifically, she was charged with the responsibility of reviewing applicants' qualifications against the evaluation factors only.

## INTERROGATORY NO. 2

Please describe in detail the methodology and calculations you used to arrive at the numerical score for each applicant, to include veteran's preference points.

## RESPONSE TO INERROGATORY NO. 2

Ms. Magruder was not instructed to give numerical scores for the applicants. As a panel member, she gave applicants ratings of "Very Good," "Good" and/ or "Meets Requirements."

## INTERROGATORY NO. 3

Do you have any knowledge or reason to believe that Mr. Keith Bond preferred Ms. Snook's selection to any of the other applicants for Vacancy Announcement ETA-04-047PN?

## RESPONSE TO INERROGATORY NO. 3

No.

## INTERROGATORY NO. 4

Please explain in detail, a summary of the telephone calls you placed from the Department of Labor to the Plaintiff at telephone number (703) 521-2100, during the period April 2004 through May 2004.

## RESPONSE TO INERROGATORY NO. 4

Ms. Magruder did not place any phone calls to Plaintiff or to the cited number.



## INTERROGATORY NO. 5

Please describe in detail any advice or assistance you provided to Ms. Snook in the preparation of her application for Vacancy Announcement ETA-04-047PN.

## RESPONSE TO INERROGATORY NO. 5

Ms. Magruder did not provide any advice or assistance to Ms. Snook in the preparation of her application for Vacancy Announcement ETA-04-047PN.

Interrogatories to Marissa Dela Cerna.

1. Please cite with specificity the authority for evaluating applicants' qualifications on Construction and Architect-Engineering experience.

RESPONSE:

As of April - 2004:

| | |
|---|---|
| Series/Grade: | Contract Specialist, GS-402-13 |
| Title of Position: | Team Leader/Senior Contract Specialist |
| Organization: | U.S. Department of Labor |
| Location: | ETA/OFAM/Office of Grants and Contracts (OGCM) |
| | Division of Contract Services (DCS) |
| | 200 Constitution Avenue, N.W., Room N-4655 |
| | Washington, DC 20210 |

Years of Experience:    Total = 20 years, with DCS = 9 years

EDUCATION:
The George Washington University, Master's Certificate in Government Contracting, 11130/2001 The University of the East, Bachelor of Science in Business, Administration (B.S.B.A.), Major: Accounting, 10/25/1979

<u>Contracting Experience:</u>

1) Served as Team Leader, Senior Contract Specialist, GS 1 102 -13, at the Division of Contract Services (DCS), OGCM/OFAM. I was responsible for the procurement of major and complex Architectural and Engineering (AiE) Services and Construction Services for 48 Job Corps Centers nationwide. I reviewed requests for procurement and analyzes the requirements, recommending revisions to the statement of work or specifications necessary; and determines and recommends, as necessary to the Contracting Officer the type of contract, the proposed milestones and the procurement plan that best fit the requirements of the acquisition being procured. I was commended for outstanding performance of duties and responsibilities as a leader in our division.

2) Responsible for managing the DCS Procurement Actions for 48 Job Corps Centers nationwide.

Under my leadership, my team has processed over fifty percent of total procurement actions for Fiscal Year - 04 (worth $83,218,527.55). As the result show, collectively the A&E and Construction Unit were able to <u>maximize available funding, exceed our small business utilization expectations,</u> and <u>initiate 52 projects,</u> while also technically and administratively supporting current active projects.

3) Pioneered. the Electronic Procurement System (EPS) system in ETA. I have trained and assisted a few Contract Specialists in processing procurement actions via EPS. Last year, ETA has transitioned into a new Electronic system of processing procurement actions. I took initiative to learn how the new system works and I have trained my staff on new developments on the system.

4) Guided the Division of Contract Services through the procurement management system, from solicitation to the award of contract. Approximately fifty (50) percent of acquisitions are difficult and complex involving services, which address new organizational needs and programs. Occasionally, requests involve sole source procurement.

5) Served as advisor to new Contract Specialists in managing complex situation such as interpretation of the Federal Acquisition Regulations, various simple and complex procurement actions, negotiations, cost and price analyses and reviewing Solicitation Packages to be submitted to the Contracting Officer.

6) Maintained good working relationship with co-workers and various agency officials in order to .promote cooperation and work efficiency.

7) Provided program officials with expertise in contract administration concerning matters of program monitoring which may subsequently require contractual actions.

8) Reviewed requests for the procurement of major and complex architectural, engineering and construction services.

## CERTIFICATE OF TRAINING COMPLETED:

1. DOL E-Procurement System Requisition Module & Contracting Module Training, U.S. DOL E Procurement, 24 hours
2. PRODOC - Complex FAR Documentation Generation, Distributed Solutions, Inc., 24 hours
3. Contract Claims, Management Concepts, 40 hours, 3.0 CEU
4. Construction Claims, Management Concepts, 24 hours, 1.8 CEU
5. Appropriations Law Seminar, Management Concepts, 32 hours, 2.4 CEU
6. Negotiation Strategies and Techniques, George Washington    University, 2.8 CEU
7. Design/Build Contracting, George Washington    University, 1.3    CEU
8. Federal Contracting Basics, George    Washington University, 2.8    CEU
9. Federal Procurement of A-E    Services, George Washington    University, 2.8 CEU
10. Operating Practices in Contract Administration, George Washington University. 2.8 CEU
11. Contract Pricing, George Washington University, 2.8 CEU
12. How Owners Prevent & Defend Construction Claims, Federal Publications & DOL/DMJiM/HTB, 8 hours
13. COTR-GOTR Training, U.S. DOL, 40 hours

14. JTPA Amendments Training, U.S. DOL, 16 hours
15. Federal Appropriations Law Seminar, U.S.
    DOL, 40 hours 16. Ethics Training (yearly
    basis), U.S. DOL, 8 hours every year

Leadership - Certificate of Training Completed:

1. Effective Supervision (Management Concepts),
    24  hours, 1.8 CEU
2. Resolving Conflict (Management Concepts), 16
    hours, 1.2 CEU
3. Leadership & Management Skills for Non-Managers (Management Concepts),
    16 hours, I .2 CEU
4. Interpersonal Skills: Developing Effective Relationships (Management
    Concepts), 24  hours, 1.8 CEU
5. Supporting Empowerment (U.S. Dept. Of Labor) 24 hours
6. SMUT-Supervisors, Managers & Union Pair Training, (U.S. Dept. Of Labor) 8
    hours

2. Please describe in detail the method you used to assign numerical scores to each
applicant's qualifications, to include veteran's preference points.

RESPONSE:

The "Rating Schedule" for Job Announcement No: ETA-04-047PN, Contract
Specialist GS-1 102-09, had five (5) Evaluation Factors. These three (3) sheets of
paper indicates with an explanation as to how the raters would rate as follows: (VG),
(G), and (MR). I was told by the Office of Personnel that the rating meant Very Good
for (VG), Good for (G), and Meets Requirements for (MR).

The "Qualification Evaluation Sheet" for the above-mentioned Announcement
contained the following: 1) Applicant's name, 2) Title/Grade of Position and
Announcement No., 3) Organization Location, 4) Date of Evaluation, 5) Typed Name
and Signature of Rater(s) Completing this Sheet. The rest is the table of: Evaluation
Factors, Reasons, and the Evaluation.

As one of the two raters, I completed my narratives and the ratings. I indicated the
ratings with a narrative for the "Reasons Column" and I was instructed to put a check
mark on the appropriate quality level in the Evaluation Column where I rated their
qualifications as VG, G or MR accordingly. At the beginning, we were told to write
in pencil. I personally do not want to write in pencil because I wanted my ratings to
be more readable and permanent. It took me roughly one week to rate all the
applicants.

My rating does not include any numerical rating at all. We were instructed by Valerie
Sails (Personnel Staff) to sign the sheets and. leave the **"Composite Rating"** and the

**"Individual Rating"** blank. THERE WAS ABSOLUTELY NOTHING ON ALL THE EVALUATION SHEETS THAT WOULD INDICATE FOR THE RATERS TO INCLUDE: **"VETERAN'S PREFERENCE POINTS"**

3. Please provide the date(s), times and purpose you were at the Department of Labor on either a Saturday in April 2004 and May 2004.

RESPONSE: I do not recall my whereabouts on April 2004 and May 2004.

4. Please explain in detail a summary of the telephone calls you place from the Department of Labor to the Plaintiff at the telephone number (703)521-2100, during the period April 2004 through May 2004.

RESPONSE: I do not recall all my phone calls during the period April 2004 through May 2004. 1 do not recognize the above telephone number.

5. Do you have any knowledge or reason to believe that Mr. Keith Bond preferred Ms. Snook's selection to any of the other applicants for Vacancy Announcement ETA-04-047PN?

RESPONSE:

Yes, I have knowledge and reason to believe that Mr. Keith Bond preferred Ms. Snook's selection to any of the other applicants for Vacancy Announcement ETA-04-047N. I have reason to believe that this position was created because Jennifer Snook was originally hired as a Contractor (Contract Specialist) in the same Division and somehow was probably offered a full time job because according to Mr. Keith Bond (the Selecting Official.), *"They are excellent employees and are the future of DCS ".* Also from Mr. Keith Bond's official Email to me, dated October 6, 2004, Mr. Bond indicated to me that *"Jillian, Jennifer, Lance, or Chanta did not have a thorough knowledge of procurement processes and regulations when they were hired ".* This E-mail started when I voiced out my opinion regarding the cross-training of new hires having little or minimal experience as a Contract Specialist.

Mr. Keith Bond has planned and intended Ms. Jennifer Snook to cross-train in Chari Magruder's section once she was hired. So, I had a strong feeling that Jennifer's spot for that position was a done deal. *Also, soon* after that, Ms. Jennifer Snook admitted to us (after our Standard of Ethics Training) that she was the one who referred Sarah Folino (Ms. Snook's friend from the same University) to Mr. Keith Bond. She was concerned because during our Standard of Ethics Class, the Solicitor's Office indicated that it is a violation of the Standard of Ethics to hand-in someone's application (SF 171) to a hiring official (which in this case was Mr. Bond).

Nevertheless, in no time, Mr. Keith Bond hired Ms. Sarah Folino. At the beginning (just like Ms. Snook), Sarah Folino was hired as a contractor Contract Specialist and later Ms. Folino was hired as a full time Government Employee. Like Ms. Snook, Ms. Sarah Folino has very minimal experience for the Contract Specialist's job. This created a pattern of Mr. Bond's hiring style and technique which everyone knew in the

whole Division and Ms. Magruder among other people was also very aware of these questionable if not unfair hiring practices of Mr. Bond. If you look further and investigate further, the rest of the new hires such as Jillian Matz, Chanta Ferrell, Beatrice Moseley, Lance Purvis were hired at almost similar pattern and all without thorough knowledge of procurement processes and regulations when they were hired.

## WITNESS' AFFIDAVIT

I, (name)  KEITH A. BOND

am an __X__ employee of ___ applicant to ___ former employee of the U.S. Department of Labor's:

(Agency)  Employment AND TRAINING AdmiNistration

(Office)  Office of FinaNcial aNd AdmiN. MaNagement

(Division)  DIVISION OF CoNtract Services

(Branch)  _____

Located in (city and state)  WashingtoN, DC

In the capacity of (show both your organization title and the classification of your job, if different):

SUPERVISORY CONTRACT SpecialIst (1102)

Grade  15    between (date) 5/2001 and (date) PreseNt

My telephone number during working hours is: ▮▮▮▮▮▮▮▮▮▮

## I HAVE BEEN ADVISED OF THE FOLLOWING:

I am required by Federal regulations and Department of Labor policy to cooperate fully and promptly with the investigator who has been assigned to conduct a thorough and impartial investigation into a complaint of discrimination against the Department of Labor. I must provide a statement for the investigative report which is true and complete to the best of my knowledge and which discloses all of my firsthand knowledge having a bearing on the merits of the complaint. My statement is provided under oath (or affirmation), without a pledge of confidentiality, in accordance with Equal Employment Opportunity Commission rules and regulations and Department of Labor policy. This means that any employee(s) whom I accuse of discrimination or other acts of impropriety may be shown relevant portions of my affidavit and be provided an opportunity to respond for the record. In addition, the complainant and the appropriate Departmental officials involved in the EEO complaint process will receive the entire investigative file. I have the right to review my statement prior to signing it and may make initialized corrections if it is incomplete or inaccurate. I have the right to receive a copy of the signed statement.

I am entitled to representation by a person of my choice during my participation in the EEO process, so long as my choice does not result in a conflict of interest. I___ have __X__ have not chosen a personal representative at this time.

EEO regulations specifically protect participants in the EEO complaint process from any acts of reprisal, discrimination, coercion, harassment, restraint, or interference as a result of their participation in the complaint process.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly ___ swear _√_ affirm that the statement which follows is true and complete to the best of my knowledge and belief, and addresses the issues and concerns raised with me by the investigator.

CRC Form 10
(Rev. 9/01)



GOVERNMENT
EXHIBIT
3

KAB
(Initials)

Tab F-2 pg. 1

Witness Questionnaire
Witness: Keith Bond
EEO Complaint of Edward Washington Case No. 04-11-116

Please respond to the following request for information relative to this formal complaint of discrimination. Provide your response to the following questions on the affidavit forms enclosed. Number and initial each page and initial any corrections made to any items in your affidavit. Prepare your response in narrative form to best relate what occurred in this complaint. As you describe circumstances and facts in a time sensitive chronology, give specific and detailed information so that someone who is not familiar with the situation can understand what it is you are trying to explain/demonstrate. In other words, your affidavit should paint a picture for the person who will make the decision relative to the issue raised in this complaint.

Please provide your response to the following:

1. Please state for the record your name, race, position, location, and duties of your work with the Department of Labor.

   My name is Keith A. Bond. I am an African-American. I am a Supervisory Contract Specialist, Contracting Officer, and Chief, Division of Contract Services, ETA/DOL. I am responsible for managing the Division of Contract Services. This Division includes the Research Contracting Unit and the Architect-Engineer (A&E) and Construction Contracting Unit.

2. Please describe your role/responsibilities pertaining to the vacancy announcement at issue.

   I was the selecting official. I reviewed each candidate's application, compared their knowledge, skills and abilities with the evaluation factors to each other and selected the best qualified applicant based on the method of evaluation stated in Job Announcement No: ETA-04-047PN.

3. Please explain the merit staffing process employed to select a candidate for the position of Contract Specialist, Series/Grade GS-1102-09, advertised under Vacancy Announcement No. ETA-04-047PN.

KAB

See Announcement ETA-04-047PN for a complete description of the merit staffing process. Since there were no bargaining unit employees on the certification list, interviews of applicants were not required.

4.  Please explain in detail why Mr. Washington was not selected for the position of Contract Specialist, Series/Grade GS-1102-09, advertised under Vacancy Announcement No. ETA-04-047PN.

Mr. Washington was not selected for the position of Contract Specialist, Series/Grade GS-1102-09, advertised under Vacancy Announcement No. ETA-04-047PN for the following reasons:

(1) Mr. Washington was not the most highly qualified applicant based on comparison of his application with the other eligible candidates. The application review panel ranked Mr. Washington number two on the list of applicants.

(2) Mr. Washington had no current experience as a contract specialist. In his application he cites the last time that he did contract specialist work was April 1994, ten year ago. The Federal Acquisition Regulation in which knowledge of is critical for this job has changed significantly since 1994. There was no indication in Mr. Washington's application of his knowledge best value, past performance, competitive range or recommendation for award, which are familiar terms used in the procurement profession. Mr. Washington has served as Managing Director of a multi-faceted company that provides limousine services, contract consulting services and food safety training. There is no description of work Mr. Washington performed as a contract specialist from 1994 to present.

(3) There is no indication in Mr. Washington's application that he has knowledge of A&E and Construction type contracting (Sealed Bidding). A significant amount of the contracting work performed under this announcement is A&E and Construction type contracting.

(4) Mr. Washington experience appears to be in the small purchase procurement area (he has a $25,000 contracting officer's warrant). The Division of Contract Services awards contracts from small purchases ($0 to $100,000) to large complex procurements over $20 million. The only indication in Mr. Washington's application that he worked on procurements over $100,000 is the statement "Procures supplies and services for small and large purchases".

(5) Under the evaluation factors, the majority of Mr. Washington's responses are more definitions of procurement terms rather than explanation of how he performed the specific tasks of the job i.e.

> Acquisition planning assures that the Government meets its needs in an economic and timely manner;

Tab F-2 pg. 3

KAB

Complex procurements, especially those unique to the government, increase risk;

Price analysis evaluates a total sum, without analyzing its separate cost elements; and

Armed with this data, a price objective meeting is scheduled with the contracting officer, and the briefing conducted.

(6) Other than my reviewing of Mr. Washington's performance evaluation reports dating from 1985 to 1992, I had no personal knowledge of Mr. Washington's work performance. Mr. Washington has not had a performance appraisal since 1992.

6. Please contrast your response to number four (4) with your detailed reasons for selecting the Selectee. Your response here must be sufficiently detailed.

Ms. Snook was selected for the position of Contract Specialist, Series/Grade GS-1102-09, advertised under Vacancy Announcement No. ETA-04-047PN for the following reasons:

(1) Ms. Snook was ranked number one on the eligibility certification list by the application review panel. Mr. Washington was ranked number two. The ranking was based on comparing Ms. Snook's knowledge, skill and abilities against those of the other eligible candidates for each of the evaluation factors.

(2) Ms. Snook had experience processing A&E and Construction and Contracting by Negotiated procurements. For example, Ms. Snook has participated in sealed bid openings, A&E competitive contract selections, A&E sole source contract selections, and numerous contract modifications under A&E and Construction contracting. Ms. Snook has prepared cost reimbursement type solicitations and contracts, purchase orders, firm fixed price contracts and numerous contract modifications under Contracting by Negotiation.

(3) Ms. Snook' described her responsibilities and duties in more detail than Mr. Washington. Her duties and responsibilities were as follows:.

Responsible for all contractual functions from start to finish relating to A&E and Construction contracting actions for fifteen Job Corps centers;

Prepare solicitation documents including Requests for Proposals, Invitation for Bids, Requests for Qualifications, for competitive procurements posted at the Government point of entry;



Analyzes competitive and sole source proposals to determine if they responded fully to Department of Labor requirements including regulations, policies, and procedures;

Prepare contracts, purchase orders, and contract modifications in accordance with the Federal Acquisition Regulation and agency procedures for signature by contractors and the Contracting Officer.

In addition, I had personal knowledge of how Ms. Snook performed the duties and responsibilities described in the job announcement. This knowledge is based on my observation of her performance in the Division of Contract Services for the period January 2003 through March 2004. Ms. Snook is bright, articulate, and an extremely hard worker with excellent oral and written communication skills. She is able to grasp the Federal procurement procedures, laws, regulations and techniques effectively with very little direct supervision conversely. She worked on both small purchases and large more complex procurements. I had no personal knowledge of how Mr. Washington performed on the job.

5.  Were you aware of the Complainant's race at the time of the selection?

No.

6.  Were you aware of the Selectee's race at the time of the selection?

Yes.

7.  Please state the name and race of the Selectee for the position of Contract Specialist, Series/Grade GS-1102-09, advertised under Vacancy Announcement No. ETA-04-047PN.

The selectee's name is Jennifer Snook. Her race is white.

8.  Was the selection for the Contract Specialist, Series/Grade GS-1102-09, advertised under Vacancy Announcement No. ETA-04-047PN based on race?

The selection for the Contract Specialist, Series/Grade GS-1102-09, advertised under Vacancy Announcement No. ETA-04-047PN position was not based on race.

9.  During the past two years have you made other selections in your organization? If yes, please indicate the names and the race of the selectees.

Lance Purvis to a GS-09 contract specialist position. Mr. Purvis was an African-American. Dayle White and Vera Montague to GS-12 contract specialist positions. Ms. White and Ms. Montague are both African-Americans. Harry B.

Ladson Jr. to a GS-14 contract specialist position. Mr. Ladson is African-American.

10. The complainant alleged that an employee on the selection panel informed him after reviewing the application he was one of the best qualified, but you selected another candidate for the position. Please respond to this assertion.

I have no knowledge of this allegation. The selection was made to the number one applicant on the eligibility certification list who I felt was the best qualified.

11. Please provide any other relevant information that you wish to add.

I would like to clarify item 7. (documentation submitted by the complainant for the vacancy ) Summary of Interviews of the EEO Counselor's Summary Report. Jennifer Snook is a 20-25 year old white female. She had worked a year prior to the job announcement in the A&E/Construction Unit, Division of Contract Services/ETA as a contract specialist trainee. During that one year period, Ms. Snook took courses in Introduction to Federal Contracting, Federal Contract Negotiation Techniques, Federal Contract Law, Best Value Source Selection, Architect-Engineer Services Contracting, and Construction Contracting. Ms Snook also cross trained with the Research Contracting Unit to learn Contracting by Negotiation. She has a BA in French from Penn State University. The courses were paid for indirectly by the Government through Coffey Communications, LLC. Coffey Communications, LLC is a task order contractor with ETA/DOL.

12. Have you received any assistance in preparing this statement and/or has your statement been reviewed by anyone other than an attorney from the office of the Solicitor or a private legal representative? If yes, please provide the name, title, and contact information for any such individual(s).

This statement has been reviewed by an attorney (s) from the DOL Office of the Solicitor.

I have reviewed this statement, which consists of __7__ pages, and hereby solemnly ✓ swear ✓ affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

_Keith A. Bauc_____     _11/29/04_____
        (Signature of Deponent)                              (Date)


Signed before me at (Street and City) _____

on this ____ day of _____, 20____

_Roderick Dawsher_ 11/29/04
        (Signature of Investigator/Witness)


CRC Form 10
(Rev. 9/01)

KAB
(Initials)

**Tab F-2 pg. 7**

# ORIGINAL

1

1 | UNITED STATES DISTRICT COURT

2 | FOR THE DISTRICT OF COLUMBIA

3 |

4 | - - - - - - - - - - - - - - - - - -x

5 | EDWARD D. WASHINGTON                      :

6 |               Plaintiff                   :

7 |    vs.                                    :    Case No: 060-2149

8 | ELAINE L. CHAO, SECRETARY                 :

9 | UNITED STATES DEPARTMENT OF LABOR   :

10 |               Defendant                  :

11 | - - - - - - - - - - - - - - - - - -x

12 |

13 |                              Washington, D.C.

14 |                              Wednesday, July 18, 2007

15 |

16 |

17 | Deposition of:

18 |                    EDWARD D. WASHINGTON

19 | the Deponent, called for examination by counsel for the

20 | Defendant, pursuant to notice and agreement as to time and

21 | place, at 501 3rd Street, N.W., Washington, D.C., before

22 | Jack L. Becker, a Notary Public in and for the District of

23 | Columbia.

24 |

25 |

FREE STATE REPORTING, INC.
Court Reporting   Depositions
D.C. Area (301) 261-1902
Balt. & Annap. (410) 974-0947



GOVERNMENT
EXHIBIT
4

```
 1  APPEARANCES:
 2                      On Behalf of the Plaintiff:
 3                      PRO SE
 4
 5                      On Behalf of the Defendant:
 6                      ALEXANDER SHOAIBI, ESQUIRE
 7                      Assistant United States Attorney
 8                      501 3rd Street, N.W.
 9                      Washington, D.C.  20530
10                      (202) 514-7236
11
12
13
14                          I N D E X
15  WITNESS:              EXAMINATION:           PAGE:
16  Edward Washington    Direct - Mr. Shoaibi       3
17
18
19                        E X H I B I T S
20  EXHIBIT NO.:           DESCRIPTION:           PAGE:
21  (None marked)
22
23
24
25
```

```
1                    P R O C E E D I N G S
2                                                   (10:10 a.m.)
3  Whereupon,
4                    EDWARD D. WASHINGTON
5  was called as a witness and after having been first duly
6  sworn, was examined and testified as follows:)
7                    DIRECT EXAMINATION
8        BY MR. SHOAIBI:
9        Q.    Could you please state your name for the record?
10       A.    Edward D. Washington.
11       Q.    Okay.  Mr. Washington, as you know, my name is Alex
12  Shoaibi.  I am the Assistant U.S. Attorney assigned to
13  represent the government in a lawsuit that you filed in U.S.
14  District Court.  I'm going to be asking you questions about
15  your background, about the allegations in the case.  If you
16  don't understand any of my questions, please let me know and I
17  will clarify them and try to state them more clearly.
18            You are under oath, so it's important that you, you
19  know, answer questions that you have factual knowledge of.  If
20  you're going to speculate or whatever, just tell me you're
21  doing that, but make sure that we clarify between what we know
22  to be the case and what we think is the case.
23       A.    Okay.
24       Q.    Okay.  Where are you from?
25       A.    You mean where was I born?
```

1    Q.   Did you in any way suspect that your race was a

2  factor in your not obtaining any of the other jobs that you

3  applied for with the government?

4    A.   No, sir.

5    Q.   Now you applied for this position, Contract

6  Specialist, GS-1102-09, pursuant to a vacancy announcement in

7  March of 2004, is that correct?

8    A.   Yes, sir.

9    Q.   Okay.  And how did you become aware of that job?

10   A.   I got it -- I was on the Internet.

11   Q.   Looking for jobs to apply for?

12   A.   Yes, sir.

13   Q.   Okay.  And why did you feel that was a good job for

14  you or did you feel that way?  I don't know.

15   A.   Yeah, I did.  I felt that (a) being a business

16  person for over ten years, that -- along with my actual

17  contracting experience, I thought that I would be a good fit

18  and an asset to the Department, especially when a man had run

19  a company and have had employees, have negotiated contracts,

20  deal with the insurance companies and other things that go

21  along with me running a business.  I felt that that gave me

22  the -- that fact that I'm a person who could go in and be a

23  real asset to the Department.

24   Q.   Now you submitted the application.  When did you

25  first become aware that you had not gotten the job?

1      A.    That's when I received an anonymous telephone call.
2  I don't remember -- I have caller ID on the phone and it shows
3  up as United States Government.

4      Q.    I'm sorry.  Say that again.

5      A.    It shows up as United States Government.

6      Q.    Okay.  What time was that call?

7      A.    It was on a -- and I went back and I -- it was on a
8  Saturday morning -- morning, and initially when I received the
9  call -- let me clarify that.  The way I had my phone system
10 set up is that -- because many times I'm on the road, so if a
11 person calls my office and I don't answer, it goes into my
12 voice mail, but I have pager notification as part of the
13 Verizon service, so when someone hangs up, within 30 seconds
14 of them hanging up, my pager will go off and then I dial back
15 in and listen to the message.

16     Q.    Okay.

17     A.    So I didn't initially talk to that person from that
18 initial phone call.

19     Q.    Okay.  The phone call came in Saturday morning, and
20 what is the -- other than seeing the Federal government --
21 United States Government, did you get the phone number?

22     A.    The phone number, it shows United States Government
23 and it shows up a (202) -- it had like 0s on the end, the last
24 four digits on the end, and I think it showed -- I think it
25 showed like 693, then four 0s at the end.  I don't remember

21

1  the exact -- I did not write it down.

2      Q.   Have you made any attempt to obtain your phone

3  records to determine the source of that phone call?

4      A.   No, sir.

5      Q.   But that was on April 26, 2004, and you're with

6  Verizon?

7      A.   Yes, sir.

8      Q.   Verizon, like Verizon Wireless, right?

9      A.   Verizon went to regular Ma Bell.  It's a land line

10 phone in my office.

11     Q.   Okay.  And your pager, though -- you have a pager.

12 Is that a Verizon pager?

13     A.   No.  It's a -- let's see if I can explain it.  It's

14 a Metro Call pager.

15     Q.   Okay.

16     A.   I just pay Verizon.  I think it's $7.00 a month to

17 have pager notification.

18     Q.   Okay.  So Verizon is your phone company and you're

19 registered with Verizon in -- you live in Arlington?

20     A.   In Virginia, yes, sir.

21     Q.   And was your address April 26th, 2004 the same as it

22 is now?

23     A.   Yes, sir.

24     Q.   Which is 7124 Strathmore Street, Falls Church,

25 Virginia 22042?

22

1     A.   Yes, sir.

2          Q.   Okay.  And approximately what time Saturday morning

3     did that phone call come in?

4          A.   It was somewhere between 8:30 and 10:00.  I don't

5     remember the exact time now.

6          Q.   And what were you doing at the time?  You say you

7     were in your car when you got the phone call -- when you got

8     the notification of the phone call?

9          A.   Right.

10         Q.   Okay.  Did that person leave a message on your

11    phone?

12         A.   Yes, sir.

13         Q.   Okay.  And, as I understand it, you did not keep a

14    copy of that message?

15         A.   No, sir.  I wasn't sure about recording phone calls,

16    and I -- so I didn't.  The messages -- the voice mail

17    messages, you can save them up to 30 days.  If you don't do

18    anything with it -- either you erase it in 30 days or the

19    phone company will erase it within 30 days.

20         Q.   So the phone system -- the message was not left on a

21    tape, it was left on a answering service that you got through

22    Verizon?

23         A.   Yes, sir.

24         Q.   Okay.  Have you made any attempts at all through

25    Verizon to try to retrieve that message?

```
 1       A.    No, sir.
 2       Q.    Okay, because you're under the understanding it's
 3  been erased?
 4       A.    Right.
 5       Q.    And that's based on what?  It automatically erased
 6  on your phone, but you don't know about any back tapes or
 7  anything like that, if there might be any way to find it and
 8  you haven't made any attempts to do that?
 9       A.    I haven't made any attempts.
10       Q.    Okay.  Now what was the -- could you tell by the
11  voice the gender of the person that called you?
12       A.    Female.
13       Q.    It was a woman, okay.  Anything else distinctive
14  about the voice of the person that called you in terms of
15  deepness, highness, accent, rapidity of speech, anything like
16  that?
17       A.    The accent gave me reason to believe that the female
18  was either Hispanic or Asian, and I couldn't quite determine
19  which.
20       Q.    Okay.  So it was an accent of some kind?
21       A.    Yes, sir.
22       Q.    It appeared to be an accent, a non-American accent?
23       A.    Yes.
24       Q.    A foreign accent rather than a New York accent?
25       A.    Right.
```

```
 1        Q.    It was an accent from a foreign country?
 2        A.    Yes, sir.
 3        Q.    And you say Hispanic or Asian as opposed to, say,
 4   German or French or anything like that?
 5        A.    Right.
 6        Q.    Okay.
 7        A.    Right.
 8        Q.    Okay.  Any indication as to whether it was a middle-
 9   aged woman, a elderly woman, young woman?  This is all based
10   on your understanding.
11        A.    Yeah.  I did subsequently talk to that person --
12        Q.    Okay.
13        A.    -- but at the point of just listening to that
14   initial message, I thought somewhere maybe in the mid- to high
15   40s, somewhere in there.
16        Q.    Okay.
17        A.    She was a mature woman.  Let's put it that way.
18        Q.    What did the message say --
19        A.    Basically --
20        Q.    -- as completely as you can remember it?
21        A.    Yes, sir.  Basically she said you are one of the --
22   no.  You are the best qualified applicant for the position,
23   but they're going to give it to someone else.  They're going
24   to give it to another young lady who is less qualified.
25        Q.    What else did it say, if anything, and remember that
```

25

1  you're under oath and remember that you're doing this to the

2  best of your recollection?

3      A.  Yes, sir.  That's basically what I remember of that

4  initial conversation.

5      Q.  You are the best qualified applicant for the

6  position, but they're going to give it to another young lady

7  who is less qualified?

8      A.  Yes, sir.

9      Q.  Okay.  And when you received that message, what did

10  you do?  Did you do any follow-up in terms of determining who

11  it was that called or anything like that?

12      A.  No.  What I did -- and there was a short -- a few

13  days in between because at first I was kind of shocked.

14      Q.  And at this point you had received no notification

15  whatsoever from the Agency or any other source as to what was

16  the status of your application?

17      A.  Correct.

18      Q.  Okay.  How long had your application been pending at

19  the point of receiving that phone call?

20      A.  Whatever the deadline date was for the announcement.

21      Q.  February, March until sometime --

22      A.  Right, sometime -- that was on the --

23      Q.  26th of April.

24      A.  -- the 26th of April.

25      Q.  According to your complaint.  Okay.  You received

1 the message, and what did you do then with regard to the

2 message?

3     A.   I left it there for almost a month, and I think that

4 actually I just let it drop off.  I don't think that I went in

5 and physically erased it because I knew after 30 days it would

6 drop off.

7     Q.   Did you make any attempt to contact any

8 representative of the Agency to determine whether, in fact,

9 you had not gotten the job?

10     A.   No, sir.  What --

11     Q.   Why not?

12     A.   Because what happened, a few days later, and I don't

13 remember the exact period when I got the next phone call.  As

14 it so happened I was in the office and I talked to this lady.

15     Q.   Okay.  So when did you talk to this lady in the

16 office?

17     A.   A few days later, and I don't remember the exact

18 time frame.  She called again, and it was early in the

19 morning.  That much I do remember.  I don't remember the exact

20 time --

21     Q.   It wasn't on April 26th, this was a few days after

22 April 26th?

23     A.   Yes, sir.

24     Q.   Okay.  And you were in the office and this person

25 called you on the same phone number or a different phone

1  number?

2      A.    Same phone number.

3      Q.    Same phone number.  And it was the same -- you

4  picked up the phone and it was the same voice that you heard

5  on the message?

6      A.    Yes, sir.

7      Q.    Okay.  And what did that person say in that

8  conversation?

9      A.    In that conversation she said that -- she identified

10  to me the person who was going to be selected for the

11  position, Ms. Jennifer Snook.  She said that she did not want

12  anything from me.  She just knew that it was wrong for what

13  they were doing and that I should do something about it.  What

14  I did was --

15      Q.    I'm not asking you what you did.

16      A.    Okay.

17      Q.    She identified Jennifer Snook as the person.  What

18  else did she say?  Did she say anything about Jennifer Snook

19  at all?  She said Jennifer Snook is getting the job.  What

20  else did she say?

21      A.    She said she was less qualified than I was.

22      Q.    Okay.  Did she tell you why?

23      A.    I'm trying to remember.  I don't want to misquote or

24  misstate.

25      Q.    You don't recall?

1    A.    No, sir, I do not.

2    Q.    Okay.   And what else did she tell you?

3    A.    That the deadline date or the date -- I needed to do

4  something before -- she gave me the date that -- I guess that

5  they were going to make a decision as to whom they were going

6  to select.  She gave me a date.  It was a date in May, and I

7  want to say May the 14th or the 17th or somewhere in there.

8    Q.    The date they were going to make the selection?   I

9  thought she --

10    A.    They were going to announce who was going to be

11  selected for the position.

12    Q.    So what she said was that they were planning to

13  select her or they had selected her?

14    A.    If I remember correctly, she said that they were

15  going to select her.

16    Q.    By a certain date?

17    A.    Yes, sir.

18    Q.    That you needed to do something before that date?

19    A.    Yes, sir.

20    Q.    Did she tell you what you needed to do?

21    A.    She recommended that I file a complaint with the IG,

22  which is what I did.

23    Q.    How long was this telephone conversation?

24    A.    Maybe 10, 15 minutes.

25    Q.    Did you get the phone records of that conversation?

32

```
1        A.    She did not -- she never gave me her name.

2        Q.    Okay.

3        A.    That much I am positive of.

4        Q.    Okay.  But you don't appear to be positive as to

5   whether she identified herself in any other way or are you?

6   Did she identify herself in any other way?

7        A.    I'm not sure that I understand.

8        Q.    You get an anonymous phone call from somebody

9   telling you you didn't get the job because, you know, somebody

10  who was less qualified was getting it.  A couple of days later

11  you get a phone call where you had a 10 to 15 minute

12  conversation with somebody, the same person, and this person

13  is telling you that this Jennifer Snook woman is getting it,

14  et cetera, and we're going to go through that conversation in

15  detail, but in the course of that entire conversation you

16  never once said who are you?

17       A.    I asked her that, but she did not want to give her

18  name, and I thanked her for being courteous to inform me of

19  what was going on, but she did not want -- I know that for --

20  now this I can say for a fact.  She did not -- specifically

21  did not want to give her name.

22       Q.    Did she in any way identify herself at all as to who

23  she was, where she worked, how she would know, anything like

24  that?

25       A.    Yes, sir, and during that 10 to 15 minute when I was
```

1    -- when she called the second time and I was talking to her,
2    what basically she said was he has done -- he has pulled this
3    crap or this stunt before, and whomever the other lady was
4    said that she wanted to go along with whatever the selecting
5    official, who turned out to be Mr. Bond -- I didn't know that
6    at the time.  She wanted to follow -- make sure that Ms. Snook
7    got the highest rating above the other applicants.

8         That's basically the gist of the conversation as I
9    remember it, but I do specifically remember two things:  (a)
10   she did not want to give her name and, (2) she mentioned that
11   this is not the first time that it had happened, and that
12   whomever the other she was, for which she never gave a name,
13   wanted to see to it that the person, being Ms. Snook, would be
14   rated so that she would come up the -- come up on the top of
15   the list.

16        Q.   Okay.  Going back to the question I asked you
17   earlier, did this person in any way identify herself or
18   explain how she would have any of this information?

19        A.   I honestly do not remember, Mr. Shoaibi.

20        Q.   Okay.

21        A.   And I want to -- I can speculate, but I honestly do
22   not remember.

23        Q.   When this person said he's done this before, what
24   did she say was the this that he had done before?

25        A.   As I understood her conversation, as I understood

34

1  it, my interpretation of what she said to me about doing this
2  before was that there were other job applicants -- there were
3  other vacancy announcements and she wanted to insure that
4  whomever -- I guess the person -- whomever the person is that
5  he wanted to select for the position, wanted to insure that
6  that person got the highest rating regardless of
7  qualifications.

8      Q.   Okay.  What I've got from the conversation so far is
9  that this person identified Jennifer Snook as the person who
10 was being selected, that Jennifer Snook was less qualified
11 than you were, and that there was a woman who wanted to make
12 sure that Jennifer Snook was selected.

13     A.   Yes, sir.

14     Q.   Okay.  And the person, the man that she indicated as
15 the person who assumedly was making the selection, wanted
16 Jennifer Snook and wanted to make sure Jennifer Snook was
17 selected?

18     A.   Yes, sir.

19     Q.   Okay.  Did this person say anything else in the
20 phone conversation about why this person who was making this
21 selection or this woman who was involved in the selection
22 somehow wanted Jennifer Snook over you?

23     A.   None other than that's who the selecting official
24 wanted to hire for the position.

25     Q.   And where in that conversation, if anywhere, did the

36

1      A.    It's not -- administrative error by a human, that's
2   one thing, but when you intentionally violate the rules and
3   procedures to get that someone who you want, that's where the
4   problem comes in.  So saying that they wanted to hire ABC
5   versus CDE, there's nothing wrong with that.

6      Q.    Based on -- and I want to make sure I'm
7   understanding this.  Based on your testimony thus far in this
8   deposition with regard to your employment, you've indicated to
9   me that after leaving the Army in 1994, in early 1994, I
10  believe, is that correct --

11     A.    Yes, sir, April of '94.

12     Q.    -- your primary source of income and occupation was
13  running a limousine service?

14     A.    Yes, sir.

15     Q.    Okay.  And that when you applied for this position
16  almost ten years later with the government as a Contract
17  Specialist, you had not worked as a contract specialist or in
18  that field for ten years, is that correct?

19     A.    Not entirely, no, sir.

20     Q.    Well, almost not at all, isn't that correct?

21     A.    No, sir.  Prior to -- besides mentioning the earlier
22  contracts that I had worked on with other companies prior to
23  me being a business owner is not a contract specialist per se,
24  but being a business owner and an employer, that requires
25  skills in negotiating contracts from providing services to my

1   clients, to negotiating the insurance or buying a vehicle, so
2   it wasn't -- so I may not work primarily as a contract
3   specialist in a governmental capacity.  Yes, sir, that's
4   absolutely correct.  From being a business owner and an
5   employer for ten years, I've done quite a bit of contract
6   work.

7       Q.  Okay.  The person who received the job, this
8   Jennifer Snook person, was, in fact, working in the government
9   contract arena just prior to the time of the selection, isn't
10  that correct?

11      A.  Yes, sir.

12      Q.  And the person who ultimately was offered the job
13  was, in fact, working for the selecting official?

14      A.  Yes, sir.

15      Q.  And he, in fact, had an opportunity to see her work
16  in the actual context in which she would ultimately be
17  performing it?

18      A.  Yes, sir.

19      Q.  You, on the other hand, had not worked in anything
20  that one could specifically call the contract arena in the
21  government for approximately ten years at the time of your
22  application?

23      A.  Correct, sir.

24      Q.  Okay.  Do you know who made that phone call -- those
25  phone calls?

1          A.    Do I know who made --

2          Q.    The phone calls we've been talking about, the one --

3    the April 26th phone call and then the phone call that

4    happened a couple of days later.  As I understand it, we're

5    not sure at this point whether April 26th was the message or

6    was the live phone, but whatever, the two phone calls that

7    were on or around April 26th, do we know who made those?

8          A.    Well, the --

9          Q.    One second.

10         A.    Sure.

11                         (OFF THE RECORD)

12                         (ON THE RECORD)

13               BY MR. SHOAIBI:

14         Q.    Okay.  Do you know who made that telephone call?

15         A.    In fact, no, sir, I do not.

16         Q.    Okay.  Do you have any suspicion, and I know I told

17   you to only testify to what you know to be the case, but I can

18   ask you if you have any beliefs and to tell me the facts upon

19   which those beliefs are based.  You do not know who made those

20   phone calls?

21         A.    No, sir, I do not.

22         Q.    Have you made any attempt to find out?

23         A.    No, sir.

24         Q.    Well, other than the interrogatories that you've

25   directed to individuals asking them whether they made phone

1  calls, their responses being in the negative?

2      A.   Correct.

3      Q.   So you had some suspicion that it was certain

4  people, but that did not pan out in discovery, is that correct

5  unless some people are lying under oath?

6      A.   Correct.

7      Q.   Okay.  So you had some suspicions of certain Agency

8  employees, but you don't have any proof of that?

9      A.   No, sir.

10     Q.   Okay.  You said in your complaint that the anonymous

11  caller was able to identify the selectee by name, Jennifer

12  Snook, and by race, white.

13     A.   Yes, sir.

14     Q.   Now you did not tell me about that when I asked you

15  what you remembered about the telephone call, so why don't we

16  revisit that telephone call?  Which telephone call in

17  paragraph 15 of your complaint -- when you say the anonymous

18  caller identified the selectee by name and by race, what part

19  of the telephone call contained the race reference?

20     A.   It was during the conversation when she recommended

21  that I do something prior to, I want to say, May the 14th or

22  whatever the selection date was.

23     Q.   Okay.  What did she say?

24     A.   That's when -- during that conversation is when she

25  identified Mrs. Snook by name and by race.

40

1    Q.   Why did she do that?  Explain that to me.  I don't
2  understand.  She said you had to do something by a certain
3  date and what, and Jennifer Snook is white?

4    A.   No, sir.  It was during the conversation when she
5  explained to me who the person was and the person's race.  And
6  also during that conversation she stressed by -- she
7  recommended I do something before the actual selection --
8  before the official notification date.  When they send out the
9  notice, it says who got the job and thank you for applying,
10 but you didn't.

11   Q.   How in the world did race come up in the
12 conversation?  That's what I don't understand.

13   A.   The lady brought it up.  I did not.  I didn't have a
14 clue.

15   Q.   What was the context in which she brought it up?
16 I'm just trying to understand this.  You know, you're filing a
17 lawsuit right now, you're making allegations of
18 discrimination, and I want to find out the basis for this
19 statement in your complaint where you say that the anonymous
20 caller was able to identify her by name and by race.  How did
21 she do that?

22   A.   She brought it up during the telephone conversation.
23 Why she said it to me, I can only speculate.  I can only take
24 it for what she said.  I don't have a clue.  I didn't know who
25 this lady was, didn't know who any of these people were until

41

1  I got the anonymous phone call and subsequently the follow-on

2  phone call.

3      Q.  Okay.  Just to be clear, the identification of race

4  came in the person to person phone call --

5      A.  Correct.

6      Q.  -- not in the message?  She didn't leave the white

7  in the message, did she, because you didn't tell me that when

8  I asked you about the message before?

9      A.  To my recollection, it was during the actual phone

10 two-way conversation.

11     Q.  All right.  And, again, I'm going to ask you if you

12 recall how she said it.  How did it come up?  It's a 10 to 15

13 minute conversation.  She's telling you that Jennifer Snook is

14 being selected over you, that she's not as qualified, that the

15 selecting official is --

16     A.  She was -- and I don't remember if she mentioned the

17 selecting official's name or not.  To my recollection, she

18 did, but I'm not for certain.  I'm doing this off of memory.

19 But she was -- part of the conversation was she's his favorite

20 -- I don't want to say something that is, in fact, not true

21 and, like I said, I'm going off memory.  Let's -- a lot less

22 qualified or no experience, something on -- I just -- Mr.

23 Shoaibi, I just don't remember the actual words, nor did I

24 record the -- nor did I sit there and say -- do a memorandum

25 of the actual wording when we had the conversation.

1       Q.   But you know that somewhere in there she said she

2   was white?

3       A.   Yes, sir.

4       Q.   You don't know why, you don't know the context, you

5   don't know how?

6       A.   No, sir.

7       Q.   Did you race come up in the conversation with her at

8   all?

9       A.   She knew I was black.  She told me that.

10      Q.   How did that come up?

11      A.   She mentioned it.

12      Q.   How did that come up?

13      A.   I can't remember how she said it.  It was during the

14  same period when we were discussing Mrs. Snook being the

15  favorite or -- one that Mr. Bond wanted to select, but I don't

16  remember the exact words or the exact point that she brought

17  it in that she knew I was African-American.

18      Q.   Did she tell you how she knew that you were black?

19      A.   No, sir, she did not.

20      Q.   Did she say anything at all about -- did the

21  conversation in any way indicate -- did she say in any way why

22  she said you were black?  How did that come up?  I keep asking

23  that because I don't understand how in the conversation that

24  comes up.

25      A.   Yeah, and I don't -- I just don't remember the exact

1   recall.

2       Q.   And this is a form that --

3       A.   It's a separation document.  It's in that file

4   somewhere.

5       Q.   And would it have been something that was -- upon

6   what do you base your belief, if you have such a belief, that

7   the selecting official in this case would have seen that

8   document?

9       A.   Because he said he reviewed all the files.

10      Q.   Okay.  And that was a file that you provided as part

11  of your job application?

12      A.   Yes, sir.

13      Q.   So the other way that he would know is if anywhere

14  in your job application or any of the documents that you've

15  provided your race was identified?

16      A.   Yes, sir.

17      Q.   Okay.  But if it's not in there, then the only way

18  that he would know is because your last name is Washington?

19      A.   As far as I can tell.

20      Q.   Okay.  Do you believe that if your last name had

21  been Smith you would have gotten the job over Ms. Snook?

22      A.   I'm not sure that I -- no.  I think Ms. Snook would

23  have gotten the job -- let's see if I can -- I want to make

24  sure I word this properly.  After reviewing the investigatory

25  files, so now -- I'm aware of some things now that I didn't

49

1    Q.   Yeah.

2    A.   If that person had a common name -- I want to make

3 sure I understand your question before I respond to it.  So

4 that person had a common name that wasn't easily identifiable

5 by race or whatever.  You got the same set of records.  Would

6 that person have been selected --

7    Q.   Over a woman that he had worked with, who he knew,

8 who he liked, had experience in the area.

9    A.   No, I don't think so.

10        REPORTER:  Could I just bother you for a second

11 while I change the tape?

12        MR. SHOAIBI:  Sure.

13                    (OFF THE RECORD)

14                    (ON THE RECORD)

15        BY MR. SHOAIBI:

16    Q.   Mr. Washington, tell me why you think Jennifer Snook

17 was selected for this position over you or over any of the

18 other applicants.

19    A.   Because that was Mr. Bond's preference.

20    Q.   And why -- what's wrong with Mr. Bond selecting

21 somebody that he prefers to the position?  Why do you find

22 that to be improper?

23    A.   Do I find it to be improper because he preferred

24 her?  I don't find anything wrong with that.

25    Q.   Okay.  Well, then why are you filing a federal

50

1  complaint against the Department of Labor and asking for

2  compensatory damages, back pay, front pay, salary increases,

3  retirement benefits, legal fees?  Why are you doing that if

4  you don't have any problem with Bond selecting the person he

5  preferred for the job?

6      A.   Because Mrs. Snook -- I am the -- was the most

7  qualified person for the job.

8      Q.   Why do you think Ms. Snook was selected?

9      A.   Because she was Mr. -- that's who Mr. Bond wanted to

10 hire.

11     Q.   Why do you think he wanted to hire her?

12     A.   I can only give you his reasons that he stated in

13 the investigative file, is that he knew her, he worked with

14 her, he knew her capabilities and potential.  That's something

15 in his own words in the investigative file, so I can only --

16     Q.   Okay.  Do you have any other information upon which

17 to base a contrary reason or a different reason?

18     A.   Yes, sir.

19     Q.   What is that?

20     A.   The investigatory file and the -- in the file Mr.

21 Bond clearly stated that yes, he knew Mrs. Snook, he worked

22 with her, was familiar with her work habits and so forth, and

23 that she has -- or that I lacked construction and A&E

24 experience.  (A), that violates OPM regulations and guidelines

25 because it specifically states that applicants should not be

51

1  rated on something that's not in that position description,
2  that job announcement.
3       Secondly, they take one year of on the job training
4  in that -- on the job contract training versus four years of
5  experience as a contract specialist and a contracting officer,
6  plus a person with ten years of business experience of running
7  a company, of being an employer and being a business owner,
8  versus a person who has one year of on the job training.
9       Q.    Okay.  Can you think of any other reasons why Mr.
10 Bond selected Ms. Snook for the position and did not select
11 you -- over you?
12      A.    Nothing other than what I've already stated.
13      Q.    Did you make any attempt to determine the race or
14 job qualifications of the people who were selected over you
15 for the other two federal jobs that you applied for?
16      A.    No, sir.
17      Q.    Why not?
18      A.    I didn't have any reason to suspect that the
19 selection process was not anything but fair and impartial.
20      Q.    Was it the telephone calls that you received from
21 this anonymous caller the reason that led you to file this
22 lawsuit?
23      A.    Yes, sir.
24      Q.    I'm almost done.  I just want to make sure that I've
25 covered everything in my mind.  Other than the reasons that

1  we've discussed for Mr. Bond's selection, do you believe that

2  anybody else in the selecting process was -- acted unfairly or

3  illegally with regard to the ultimate selection of Ms. Snook

4  for the position?

5       A.    Yes.

6       Q.    How many people?

7       A.    One, possibly two.

8       Q.    Okay.  Who is the one person that you know -- you

9  believe that --

10      A.    Ms. Magruder.

11      Q.    Okay.  And why do you say that she did?

12      A.    Now having the investigatory interrogatories back,

13  on the evaluation sheets where the panel does their evaluation

14  on the people -- on the person's qualifications, she stated

15  that I didn't have A&E contract experience, assumed I didn't,

16  made it a point on Ms. Snook's rating that she has A&E

17  construction experience.  Mrs. Magruder also supervises Ms.

18  Snook.  When I submitted the interrogatories and the answers I

19  got back, the answers that Ms. -- to the interrogatory that

20  Ms. Magruder provided, in my view, they looked at it and said

21  well, we evaluated based on what strictly was in the vacancy

22  announcement when the rating sheet shows that she gave a

23  preference to Ms. Snook having construction and A&E background

24  and not -- that's taking a criteria that's not even in --

25  that's assuming that comes into play one way or the other

1  because it wasn't in the vacancy announcement, so you can't --
2  not only me.  It would annoy me that other applicants couldn't
3  respond to it, not knowing that they're going to evaluate you
4  on something that's not there.

5      Q.   And Ms. Magruder did this?

6      A.   Yes.

7      Q.   Okay.  And do you know why she did that?

8      A.   I can speculate from the documents that I have.

9      Q.   Tell me.  Please do that, yeah.

10     A.   Okay.  In one of those earlier phone conversations
11  with the anonymous caller when she said that the other lady
12  wants -- basically to follow -- do what Mr. Bond wants to do
13  to hire Ms. Snook, she said but I won't do that.  In the
14  investigatory file there's a document -- I'll have to look at
15  it -- that shows that Mrs. Snook was supervised by Mrs.
16  Magruder.

17         In another document the other evaluator on the panel
18  is Mrs. Delacerna, and she states under oath in her responses
19  to interrogatories that she is -- Ms. Magruder is basically
20  following the Director's -- or the preferences of Mr. Bond, if
21  you will.

22     Q.   Okay.

23     A.   So that's the reason that I believe that.

24     Q.   Do you believe that Mr. Bond didn't select you
25  because he suspected you were black?

1     A.   I can't --

2     Q.   -- or was it because he knew Snook, he worked with

3   Snook, he liked Snook, he wanted Snook?

4     A.   Do I think that Mr. Bond did not want to hire me

5   because I was black?  Is that --

6     Q.   That was my question.

7     A.   Huh?

8     Q.   Well, my question was do you believe that he chose

9   Snook over you because of his suspicion based on your last

10  name that you were black?

11    A.   I believe he chose Mrs. Snook over me because she

12  was his favorite who happened to be white.

13    Q.   Do you believe that his choosing her over you as his

14  favorite would not have taken place if you were black -- I

15  mean if you were white?  Excuse me.

16    A.   If I weren't white, would he still prefer Mrs.

17  Snook?

18    Q.   No, because you're not white.  Let me restate it.

19  Do you believe that his selection of Ms. Snook as his

20  favorite, to use your words --

21    A.   Okay.

22    Q.   -- would have changed if you -- if he had reason to

23  believe that you were white?

24    A.   No, sir.

25    Q.   I don't have any further questions.  You can -- you

```
 1                        CERTIFICATE
 2         I, Jack L. Becker, a Shorthand Reporter and a Notary
 3    Public, do hereby certify that the foregoing witness,
 4    EDWARD D. WASHINGTON, was duly sworn on the date indicated,
 5    and that the foregoing is a true and accurate transcription of
 6    my stenographic notes and is a true record of the testimony
 7    given by the foregoing witness.
 8         I further certify that I am not employed by or related to
 9    any party to this action by blood or marriage and that I am in
10    no way interested in the outcome of this matter.
11         In witness whereof, I have hereunto set my hand this
12    1st day of August, 2007.
13
14
15
16                         Jack L. Becker
17                         Notary Public in and for the
18                         District of Columbia
19
20
21
22    My commission expires:
23    February 28, 2011
24
25
```

UNITED STATES DEPARTMENT OF LABOR
CERTIFICATE OF ELIGIBLES
OPM INTERAGENCY AGREEMENT NUMBER DOL-1

Certificate No.:  ETA-04-047PN

TieBreaker  0

| | | | | |
|---|---|---|---|---|
| Announcement No.:  ETA-04-047PN | | Position Title:  Contract Specialist | | |
| Series/Grade: 1102   - 9 | | Duty Location  Washington, DC | | |
| Date of Certificate:  4/26/2004 | | To Be Returned  By:  7/26/2004 | | |

When selecting from this certificate, an appointing officer MUST, with sole reference to merit and fitness, make selection for the first vacancy from the top 3 eligibles available for appointment. For the second vacancy, make the selection from the 3 top unselected eligibles available and uneliminated. Each succeeding vacancy must be filled in a like manner until all selections are made. The appointment officer MUST not Passover a preference eligible to select a non-preference eligible unless he/she submits reasons which are sufficient to warrant the Passover. Selection MUST be made without discrimination for non-merit reasons such as race, religion, sex, national origin, politics, age, marital status, physical handicap, or membership or nonmembership in a union.

| | | | | | | |
|---|---|---|---|---|---|---|
| Snook | Jennifer | | NV | 100 | no | _selected_ |
| Washington | Edward | ——— | TP | 99 | no | nonselect |
| Moseley | Beatrice | | NV | 84 | no | nonselect |

Job offer made & accepted on 5/3/04.
Start date 5/17/04

Selecting Official  _Keeter H. Rose_   Date  4/30/04
Signature

Return Certificate and all applications to:   Valerie Sails



GOVERNMENT
EXHIBIT
5

Tab F-6

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Edward D. Washington, Plaintiff *pro se*. | ) ) ) ) ) |
| v. | ) **CA. No. 06-2149-CKK** |
|  | ) ) |
| Elaine Chao, United States Secretary Of Labor. Defendant. | ) ) ) ) ) ) |

## DECLARATION OF KEITH A. BOND

I, Keith A. Bond, declare under penalty of perjury the following:

1. My name is Keith A. Bond and I am a Supervisory Contract Specialist GS-1102-15 in the Department of Labor's Employment and Training Administration. I was the selecting official regarding vacancy announcement number ETA-04-047PN that I understand is the subject of the case identified above.

2. I selected Ms. Jennifer Snook for ETA-04-047PN on April 30, 2004.

3. I previously submitted a sworn declaration on November 29, 2004, in connection with the administrative investigation of Plaintiff's equal opportunity complaint regarding his non-selection for ETA-04-047PN.

4. As I stated in that declaration, at no time during the selection process for that position was I aware of the race of Plaintiff. I had no knowledge of his race until Plaintiff filed



his administrative EEO complaint and I was contacted by the EEO counselor assigned by

the Department of Labor to administer the counseling process of his complaint, in July,

004.

5. In making my selection I reviewed each candidate's application thoroughly, including

that of Plaintiff. There was neither documentation nor any information of any kind in

those applications indicating the race of the applicants nor did anyone advise me of the

race of the candidates prior to my selection of Ms. Snook.

6. My signature appears on the certificate of eligibles that indicates that I selected Ms.

Snook for the position. The numerical ranking of the three candidates on the certificate

was prepared by ETA's personnel office. I had no input or influence regarding the

rankings. The rankings were done prior to my receiving the certificate and the candidates

applications.

I HEREBY DECLARE under penalty of perjury in accordance with 28 U.S.C. §1746 that

the foregoing statement by me is true and correct to the best of my knowledge and belief

and is based upon records and my personal knowledge.

Executed on November 16, 2007:

KEITH A. BOND

# OPTIONAL APPLICATION FOR FEDERAL EMPLOYMENT – OF 612

Form Approved
OMB No. 3206-0219

## Section A – Applicant Information

★ Use Standard State Postal Codes (abbreviations). If outside the United States of America, and you do not have a military address, type or print "OV" in the State field (Block 6c) and fill in the Country field (Block 6e) below, leaving the Zip Code field (Block 6d) blank.

| 1. Job title in announcement | 2. Grade(s) applying for | 3. Announcement number |
|---|---|---|
| Contract Specialist | GS-1102-09 | ETA-04-047PN |

| 4a. Last name | 4b. First and middle names | 5. Social Security Number |
|---|---|---|
| SNOOK | JENNIFER ANNE | |

| 6a. Mailing address | 7. Phone numbers (include area code if within the United States of America) |
|---|---|
| | 7a. Daytime |

| 6b. City | 6c. State | 6d. Zip Code | 7b. Evening |
|---|---|---|---|

6e. Country (if not within the United States of America)

8. Email address (if available)

## Section B – Work Experience

Describe your paid and nonpaid work experience related to this job for which you are applying. Do not attach job description.

| 1. Job title (if Federal, include series and grade) |
|---|
| CONTRACT SPECIALIST |

| 2. From (mm/yyyy) | 3. To (mm/yyyy) | 4. Salary    per | 5. Hours per week |
|---|---|---|---|
| 02/2003 | 03/2004 | $ 31,000.00   Year | 40.00 |

| 6. Employer's name and address | 7. Supervisor's name and phone number |
|---|---|
| | 7a. Name Brenda Williams |
| | 7b. Phone |

8. May we contact your current supervisor?   Yes ☒   No ☐
If we need to contact your current supervisor before making an offer, we will contact you first.

9. Describe your duties and accomplishments
(See Attached)

*[stamp: 2004 MAR 26 A 8 5 OFFICE OF HUMAN RESOURCES]*

## Section C – Additional Work Experience

| 1. Job title (if Federal, include series and grade) |
|---|

| 2. From (mm/yyyy) | 3. To (mm/yyyy) | 4. Salary    per | 5. Hours per week |
|---|---|---|---|
| | | $ | |

| 6. Employer's name and address | 7. Supervisor's name and phone number |
|---|---|
| | 7a. Name |
| | 7b. Phone |

8. Describe your duties and accomplishments

U.S. Office of Personnel Management
Previous edition usable

NSN 7540-01-351-9178
50612-101

Page 1 of 2

Optional Form 612
Revised December 2002

GOVERNMENT
EXHIBIT

Tab F-4 pg. 25

## Section D – Education

1. Last High School (HS)/GED school. Give the school's name, city, state, ZIP Code (if known), and year diploma or GED received:

Johnsonburg Area High School, Johnsonburg, Pennsylvania 15845
Diploma - 1997

2. Mark highest level completed:    Some HS ☐    HS/GED ☐    Associate ☐    Bachelor ☒    Master ☐    Doctoral ☐

| 3. Colleges and universities attended. Do not attach a copy of your transcript unless requested. | Total Credits Earned | | Major(s) | Degree (if any), Year Received |
|---|---|---|---|---|
| | Semester | Quarter | | |
| 3a. Name | | | French, Language and Culture Option and International Politics. | B.A., 2001 |
| The Pennsylvania State University | 136 | | | |
| City: University Park | State: PA | Zip Code: 16802 | | |
| 3b. Name | | | | |
| City | State | Zip Code | | |
| 3c. Name | | | | |
| City | State | Zip Code | | |

## Section E – Other Qualifications

Job-related training courses (give title and year). Job-related skills (other languages, computer software/hardware, tools, machinery, typing speed, etc.). Job-related certificates and licenses (current only). Job-related honors, awards, and special accomplishments (publications, memberships in professional/honor societies, leadership activities, public speaking, and performance awards). Give dates, but do **not** send documents unless requested.

(See Attached)

## Section F – General

1a. Are you a U.S. citizen?    Yes ☒    No ☐  →    1b. If no, give the Country of your citizenship

2a. Do you claim veterans' preference?    if yes, mark your claim of 5 or 10 points below.
2b.  5 points    Attach your *Report of Separation from Active Duty* (DD 214) or other proof.
2c. 10 points    Attach an *Application for 10-Point Veterans' Preference* (SF 15) and proof required.

3. Were you ever a Federal civilian employee?    No ☒    Yes ☐  →    If yes, list highest civilian grade for the following:

| 3a. Series | 3b. Grade | 3c. From (mm/yyyy) | 3d. To (mm/yyyy) |
|---|---|---|---|
| | | | |

4. Are you eligible for reinstatement based on career or career-conditional Federal status?    No ☒    Yes ☐
   If requested in the vacancy announcement, attach *Notification of Personnel Action* (SF 50), as proof.

## Section G – Applicant Certification

I certify that, to the best of my knowledge and belief, all of the information on and attached to this application is true, correct, complete, and made in good faith. I understand that false or fraudulent information on or attached to this application may be grounds for not hiring me or for firing me after I begin work, and may be punishable by fine or imprisonment. I understand that any information I give may be investigated.

| 1a. Signature | 1b. Date (mm/dd/yyyy) |
|---|---|
| *Jennifer A. Snook* | 03/19/2004 |

U.S. Office of Personnel Management    NSN 7540-01-351-9178    Page 2 of 2    Optional Form 612
Previous edition usable    50612-101    Revised December 2002

/ Tab F-4 pg. 26

Section B – Work Experience
9. Describe your duties and accomplishments (Continued)

As a Contract Specialist, my duties cover all aspects of procurement for
construction, architect-engineer, and discretionary contracts. This
includes procurement planning, solicitations, pre award and post award
contract management, cost and price analysis for all actions under
$550,000, negotiations, preparation of contract documents and contract
administration.

Responsible for all contractual functions from start to finish relating to
the architect-engineer and construction action for fifteen Job Corps
Centers around the country

Prepare of solicitation documents including Requests for Proposals
(RFPs), Invitations for Bids (IFBs), Requests for Qualifications, etc., for
both competitive procurements posted at the Governmenwide point of
entry, Federal Business Opportunities, and also sole-source solicitations

Prepare solicitation and award documents by selecting appropriate FAR
clauses to include in each type of package using web-based E-
procurement programs including Pro Trac

Remain in constant contact with the public as the contact person for
contracts under my control to answer questions and concerns of
contractors

Analyze competitive and sole-source proposals to determine if they
responded fully to Department of Labor requirements including
regulations, policies and procedures. This includes analysis of price,
past performance, capabilities, and level of responsiveness to evaluation
criterion.

Submit reports to the Contracting Officer on recommendation for
competitive range, recommendations for award, and memorandums on
contract actions.

Cooperate with the Program Office and Project Managers to determine
exact requirements for each procurement, including statement of work,
instructions to offerors, and evaluation criteria.

Prepare contracts, purchase orders, and modifications in accordance
with the FAR and agency procedures for signature by contractors and the
Contracting Officer

Section E- Other Qualifications (Continued)

I have completed and received training certificates for the following job-related training courses at Management Concepts, located in Vienna, Virginia:

> Introduction to Federal Contracting (2003)
> Federal Contract Negotiation Techniques (2003)
> Federal Contract Law (2004)
> Best Value Source Selection Using Tradeoffs (2003)
> Architect-Engineer Services Contracting (2003)
> Construction Contracting (2003)

Job Related Skills:

Computer:   Pro-Doc
            E-Procurement Systems
            Microsoft programs such as Word, Excel, and PowerPoint
            Federal Business Opportunities Web Site

Languages: Fluent French

## Supervisory Appraisal

Although I am currently working at a rate equal to that of a GS-9, I am not a federal employee, and therefore; do not receive an official Supervisory Performance Appraisal. In place of this, please find attached, an informal performance review conducted by Brenda Williams, Contracting Officer. Also attached is a copy of an email from Chari Magruder, my supervisor, commending my work on a recent presentation.

MID TERM REVIEW FOR JENNIFER SNOOK

DATE: August 13, 2003

Your overall level of performance is this review period has been highly effective. You
are managing your workload and grasping the procurement process for A/E and
Construction well. You immediately correct mistakes when brought to your attention.
You are establishing good working relationship with fellow team members and others.
You have a positive attitude towards your work

```
1
PAGE
```

MLLE JENNIFER SNOOK

| LAST NAME | SNOOK |
| FIRST NAME | JENNIFER |
| MIDDLE NAME | ANNE |
| STUDENT NUMBER | |

JOHNSONBURG AREA HIGH SCHOOL  JOHNSONBURG PA

HIGH SCHOOL NAME AND ADDRESS   DATE OF ADMISSION   FALL 97

| COURSE | NO | TITLE | CREDIT | GRADE | | COURSE | NO | TITLE | CREDIT | GRADE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | **FALL SEM 1997** | | | | FR | 402W | ADV GRAM & WRITING | 3.0 | B |
| PHIL | 197B | ETHICS IN COMM | 3.0 | B+ | | PL SC | 197C | DEMOC IN THE USSR | 3.0 | A |
| L A | 283 | CMPTR-APPL LA I | 3.0 | C | | FR | 352 | INTRO FR LIT II | 3.0 | B |
| PSY | 002 | PSYCHOLOGY | 3.0 | C | | | | | | |
| FR | 003 | INMD FRENCH | 4.0 | B- | | | | **SPRING SEM 2000** | | |
| ENGL | 030 | HONORS FRESH COMP | 3.0 | B+ | | FR | 499 | FR FOREIGN STDY | 3.0 | B+ |
| | | | | | | FR | 499 | FR FOREIGN STDY | 3.0 | A |
| | | **SPRING SEM 1998** | | | | FR | 499 | FR FOREIGN STDY | 3.0 | A- |
| FR | 201 | ORAL COMM & RDNG | 4.0 | A- | | B A | 499 | B A FOREIGN STDY | 3.0 | A |
| ASTRO | 007 | ASTRO UNIVERSE | 3.0 | B+ | | B A | 499 | B A FOREIGN STDY | 3.0 | B |
| CAMS | 045 | CLASSICAL MYTH | 3.0 | C+ | | | | | | |
| SOC | 001 | INTRO SOCIOLOGY | 3.0 | A | | | | **FALL SEM 2000** | | |
| MATH | 022 | COLLEGE ALGEBRA II | 3.0 | B | | PL SC | 418 | INT REL THEORY | 3.0 | A |
| | | | | | | SPAN | 010 | INTENSIVE SPAN | 6.0 | NN |
| | | **SUMMER SEM 1998** | | | | FR | 310 | FR PRESS | 3.0 | A- |
| THEA | 100 | ART OF THEATRE | 3.0 | C | | COMM | 150 | CINEMA ART | 3.0 | A |
| FR | 139 | FRNCE & FR-SPK WLD | 3.0 | B+ | | FR | 452W | 19 CENTURY FR LIT | 3.0 | A- |
| ENGL | 050 | INTR CREATIVE WRIT | 3.0 | A- | | | | | | |
| | | | | | | | | **SPRING SEM 2001** | | |
| | | **FALL SEM 1998** | | | | ESACT | 159 | ICE SKAT--ADV BEG | 1.5 | A |
| PL SC | 001 | INTR TO AM NAT GOV | 3.0 | B+ | | ENGL | 202A | WRITING/SOC SCI | 3.0 | A |
| STAT | 100 | STAT CONCEPTS | 3.0 | A | | FR | 416 | INTRO TO FR LING | 3.0 | A- |
| GEOSC | 010 | NATIONAL PARK GEOL | 3.0 | A | | PL SC | 455 | GOVT & POL-W EUR | 3.0 | WN |
| ASTRO | 011 | ELEM ASTRO LAB | 1.0 | A | | HIST | 418 | FR REV & NAPOLEON | 3.0 | A- |
| ECON | 002 | MICROEC ANLY | 3.0 | A | | FR | 529 | SEMINAR 16TH CENT | 3.0 | A |
| FR | 202 | GRAMMAR & COMP | 3.0 | B+ | | | | | | |
| | | | | | | | | | | |
| | | **SPRING SEM 1999** | | | | | | | | |
| FR | 330 | FR CULT AND CIV | 3.0 | A- | | | | | | |
| FR | 351 | INTRO FR LIT I | 3.0 | B+ | | | | | | |
| GEOG | 128 | GEOG INTNATL AFFRS | 3.0 | A- | | | | | | |
| PL SC | 014 | INTNATL RELATIONS | 3.0 | A- | | | | | | |
| ANTH | 045 | CULTURAL ANTH | 3.0 | B- | | | | | | |
| | | | | | | | | | | |
| | | **SUMMER SEM 1999** | | | | | | | | |
| SPCOM | 100B | EFFECTIVE SPEECH | 3.0 | B+ | | | | | | |
| BB H | 046 | INTRO HUMAN SEX | 1.0 | A | | | | | | |
| METEO | 003 | INTRO METEO | 3.0 | A | | | | | | |
| ESACT | 183 | KARATE | 1.5 | A | | | | | | |
| | | | | | | | | | | |
| | | **FALL SEM 1999** | | | | | | | | |
| HIST | 120 | EUROPE SINCE 1848 | 3.0 | A | | | | | | |
| PL SC | 442 | AM FOREIGN POLICY | 3.0 | A | | | | | | |

**SPECIAL ACTIONS AND NOTES**

SP00 ED ABROAD AT PARIS, FRANCE
05-01 BACHELOR OF ARTS CONFERRED IN MULTIPLE MAJORS -
       COLLEGE OF THE LIBERAL ARTS  FRENCH
       LANGUAGE/CULTURE OPT
       COLLEGE OF THE LIBERAL ARTS - INTERNATIONAL POLITCS
05-01 MINOR IN INTERNATIONL STUDIES

Transcript Key is printed
on back of Official Transcript

An Official Transcript is printed on
a blue Penn State background

The word COPY will appear
if photocopied

Discoloration of this document
indicates unauthorized alterations

| TERM/SEM | MAJOR | TERM/SEMESTER | | | CUMULATIVE | | | TOTAL CREDITS |
|---|---|---|---|---|---|---|---|---|
| | | CREDIT | GRADE PTS | AVERAGE | CREDIT | GRADE PTS | AVERAGE | EARNED |
| FALL 97 | L A | 16.0 | 42.66 | 2.67 | 16.0 | 42.66 | 2.67 | 16.0 |
| SPRING 98 | L A | 16.0 | 52.66 | 3.29 | 32.0 | 95.32 | 2.98 | 32.0 |
| SUMMER 98 | L A | 9.0 | 27.00 | 3.00 | 41.0 | 122.32 | 2.98 | 41.0 |
| FALL 98 | FR BA | 16.0 | 59.98 | 3.75 | 57.0 | 182.30 | 3.20 | 57.0 |
| SPRING 99 | FR BA | 15.0 | 52.02 | 3.47 | 72.0 | 234.32 | 3.25 | 72.0 |
| SUMMER 99 | FR BA | 8.5 | 31.59 | 3.76 | 80.5 | 265.31 | 3.31 | 80.5 |
| FALL 99 | FR BA | 15.0 | 53.01 | 3.53 | 95.5 | 319.32 | 3.34 | 95.5 |
| SPRING 00 | FR BA | 15.0 | 52.02 | 3.47 | 110.5 | 371.34 | 3.36 | 110.5 |
| FALL 00 | FR BA | 12.0 | 46.02 | 3.84 | 122.5 | 417.36 | 3.41 | 122.5 |
| SPRING 01 | FR BA | 13.5 | 52.02 | 3.85 | 136.0 | 469.38 | 3.45 | 136.0 |

*DEANS LIST
END OF TRANSCRIPT

J. James Wager

Tab F-4 pg. 31

# EVALUATION FACTORS

**1. Basic knowledge of procurement procedures, laws, regulations and techniques to effectively carry out a full range of procurement assignments.**

For the past year, I have been employed as a Contract Specialist with the Employment & Training Administration's Division of Contract Services. Immediately, I was immersed in the world of procurement, as I began in a busy season for Architect-Engineer and Construction contracts. I began by studying Introduction to Federal Contracting, Architect-Engineer Services Contracting, and Construction Contracting with Management Concepts in Vienna, Virginia. Here I learned a lot about procurement theory and laws, which I then brought back to the office and applied to Procurement Action Requests (PARs) assigned to me.

One concept that I learned early on is the importance of the Federal Acquisition Regulations, or FAR. This is a compilation of laws and regulations that give uniform policies and procedures for acquisitions to all federal agencies. Although any agency may develop specific procedures, they cannot conflict with those of the FAR which is based on statutes, executive orders, already existing regulations, legal decisions by the Comptroller General or other courts.

With an understanding of the FAR, I am able to determine which regulations govern each type of procurement and each stage of contract administration that I work on. I must always consider which clauses are required or affect procurement actions when generating contract documents.

For my Construction Contracts, I must always consider clauses related to Performance Bond and Payment Bonds, which are always necessary in construction. Some Construction contracts involve a Liquidated Damages clause (FAR 52.211-12) indicating the dollar amount that a contractor will be held liable for, per day, that they exceed the dated specified for substantial completion. In the RFP I sent to a Pennsylvania firm, the rate of Liquidated Damages will be for a sum of $600 per day if they do not complete work on time.

When working on Architect-Engineer contracts, I must consider a different range of clauses to be included. For example, they are not required to have payment or performance bonds, but they are held to the clause of Design within Funding Limitations (FAR 52.236-22) which gives an estimated value for the anticipated construction project resulting from the designs and specifications that they produce. Legally, the Architect-Engineer cannot design a project that will exceed our construction estimate or they will have to re-design at no additional cost to the Government.

For Research and Development actions, I often refer to clauses such as FAR 52.217-9, Option to Extend the Term of the Contract to extend a contract or the Availability of Funds for the Next Fiscal Year clause if funding is not presently available to fully fund a contract.

Recently my office upgraded to a new electronic system of generating procurement documents. Unfortunately, due to technical glitches that have not entirely yet been resolved, necessary clauses are missing and unnecessary clauses are added when we have been generating solicitations, contracts and modifications. Due to my knowledge of what requirements are required for each type of procurement, I have been able to identify errors and quickly adjust them. Because of my understanding of the electronic system, I have often been called upon to help my colleagues make corrections to their electronic documents.

On a daily basis my duties cover various procurement activities. I am familiar with all procurement procedures from acquisition planning to closer out and am in charge of those functions for all contracts relating to fifteen Job Corps Centers and five major Research and Development Contracts. On a daily basis I work on unilateral and bi-lateral modifications, competitive RFPs, sole source acquisitions, regular Architect-Engineer selection procurements, incorporation of task orders into IDIQ contracts, answering questions of contractors and working with supervisors and other Contract Specialists.

**2. Knowledge of commonly applied procurement methods and types of contracts, such as, fixed price or cost reimbursement contracts, formula-funded or discretionary grants, and the required clauses and special provisions to plan and carry out the procurement to recommend award.**

Although I was hired to work in a department specializing in Architect-Engineer and Construction contracts where my focus is primarily on fixed price contracts, I was fortunate enough to begin cross-training immediately in the Research and Development department. Through working simultaneously in two different fields, I have learned to use cost reimbursement, labor hours, time and materials, fixed price plus fixed fee contracts. Additionally I have had extensive experience working with Indefinite Delivery Indefinite Quantity, or Task Order Contracts.

For any type of contract procurement, I remain in constant contact with the program office. Working together is necessary for the development of a solicitation package that will meet the needs of the Government. In the early stages of the procurement process, I like to have a meeting with those involved in the procurement, such as the Contracting Officers Technical Representative, Project Managers, Contracting Officers and plan for the procurement. In one such meeting for an Architect-Engineer solicitation, I met with the Project Manager from PBDewberry, the government's technical consultants, and members of the selection committee to develop a schedule and evaluate plans and goals so that everyone shared the same understanding of project goals and timelines and how to proceed in accordance with the FAR and DOL regulations. This helps to insure that the procurement will run smoothly.

Depending on the type of contract anticipated, I must prepare a specific type of solicitation package with different clauses and advertise for them each in different ways. For all competitive procurements, I use the Government website Federal Business Opportunities to post solicitations, requests for SF254 and SF255s and RFPs. Many procurements are conducted as sole-source due to Small Business Administration regulations. I have extensive experience in 8(a) matched source contracts to emerging small businesses. For these type contracts, I include special clauses relating to the 8(a) program HUBZone clauses for procurements in Historically Under-utilized Business Zones.

Also I have drafted an RFP and served as the Contract Specialist overseeing the administration of a competitive cost-reimbursement contract with a Small Business requirement for a subcontracting plan. In these procurements, I demonstrated an ability to assess the needs of the procurement and select appropriate clauses and provision necessary.

When I have completed all aspects of the procurement process, I prepare a Recommendation for Award in which I state my findings to the Contracting Officer. This memorandum insures that the Contracting Officer, and subsequently the file, has all the necessary information to understand why I believe that awarding a contract to a particular firm is in the best interest of the Government.

**3. Knowledge of source of supply and characteristics of assigned services sufficient to identify potential suppliers, assure adequate price competition, and evaluate bid responsiveness and responsibilities of the bidders.**

I have employed several methods of source selection procedures since I have been a contract specialist. When contemplating the type of selection methods I will be using, I first must evaluate what my priorities are for this particular selection, lowest price, lowest price-technically acceptable, or if I am looking for a trade off between cost and price. Depending on my decision, this will help me to be able to determine if I will be using a negotiated or sealed-bidding type of procurement. Additionally, I need to take into consideration the area and type of work so that I can determine the extent of capable small business concerns in that area. For example, on a recent procurement that I conducted, the Office of Job Corps was in need of a General Contractor for construction work in Maine. Through a database search, two small HUBZone companies were located. One was determined to be unable to perform work required by the scope of this project. Due to this determination, I conducted this procurement as a matched sole-source in which costs were negotiated with tradeoffs between cost and price with only the capable firm. In a competitive construction project in Georgia, I represented the Government during the opening of sealed bids for construction work. For this project, it was concluded that adequate competition could come from local small business, and any interested contractors were invited, via www.fedbizopps.gov, to submit their bids, in a sealed envelope, and the award would go to the lowest priced responsive bidder.

The source selection process can be modified to fit the need of any procurement. In addition to submission of proposals, Offerors can be asked to give oral presentations to supplement their proposals, as is required in a current Research and Development procurement I am conducting. Architect Engineer firms are often asked to submit forms outlining their qualifications, from I work with the Project Manager to develop a "short-list" so that only the firms with the possibility of being selected may continue on to the next phase of the selection process, interviews, such as those I conducted recently in the Spokane, Washington area.

Once sources have been selected or proposals are being evaluated, I assure adequate price competition by understanding as much about the market as possible, I study similar contracts for price comparison, I request cost and pricing data from the offeror, I compare the proposal to the statement of work and evaluation criteria and work closely with the program office to understand the exact government requirement.

All solicitations proffer clear instructions to potential offeror on how to apply to the solicitation. This is located in Section M, Criteria for Evaluation, of a solicitation package. When establishing if each offeror is responsive or nonresponsive, it is these criteria that are used. When proposals are evaluated and found to have weaknesses, they could potentially be corrected through discussions with offerors. When evaluating Architect-Engineer submissions, I have come across several examples that are deemed "nonresponsive" and eliminated from further consideration in the bidding process, such as failing to send proposals before the closing date, not submitting required resumes, and failure to demonstrate an understanding of the Statement of Work.


**4. Knowledge of price analysis sufficient to review contractor proposals and to perform analysis using previous history or other data sources to assure reasonableness of prices.**

In my current position as a Contract Specialist, I have the duty of analyzing any proposal under $550,000. Before making an award to an offeror, it is my responsibility to perform a price analysis on their proposed rates to determine if they are reasonable and to secure the best value for the government's dollar.

There are several methods that I employ when conducting cost analyses. One important method is conducting market research. I do this by comparing the rates proposed by an offeror to those of pre-existing contracts of a similar nature. By assessing values found to be reasonable for the same type of contract in the same geographic area, I can establish a rough estimate of what is considered reasonable in that area. For example, I recently negotiated a firm-fixed price Architect-Engineer contract for a new dormitory at a Civilian Conservation Center in the Pacific Northwest. I selected two files for dormitory projects at other Job Corps Centers, also in Washington State and used them as a basis for comparison. This gave me a general idea of what the current acceptable rates are for that area.

Also, for all construction and architect/engineer type contracts, I receive an independent government estimate provided by our technical support contractors, PBDewberry. With the IGE, I can compare each line item proposed with the anticipated level of effort suggested by our technical advisors. This gives me a clear idea of the level of effort, labor hours, and expectations for any specific project. In my analysis of a proposal for a construction project in Maine, I found major discrepancies between the proposed and the estimate to the degree that it was not possible to compare the two. I discussed my concerns with the Project Manager to determine if the general contractor had misunderstood the requirements or if there was a problem in the estimate. Through this, we discovered that the estimate was made using out-dated data and was immediately revised. From there, an adequate comparison was made, and we planned our negotiation topics.

Additionally, I consult the FAR about what costs are legally acceptable and unacceptable. This is most important in the determination of indirect costs and the calculation of overhead rates. Occasionally there are questionable costs included in the overhead calculations. Once I came across a cost for "advertisement for employees." It was unclear what this cost covered, so I requested that the offeror submit additional information explaining their inclusion of this cost.

From this evaluation, I am able to determine any questionable aspects of an offeror's proposal. Depending on the type of procurement, I then use this data for negotiation purposes or cost discussions.

**5. Skill in oral and written communications to negotiate contract prices and terms with contractors.**

Since working with Department of Labor's Employment and Training Administration, Division of Contract Services, I have had the chance to conduct negotiations for several procurements, all of which had successful outcomes. I received a training certificate from Management Concepts, in Vienna, Virginia, for successful completion of their course, "Federal Contract Negotiation Techniques," where I gained a valuable knowledge of laws governing negotiations, different approaches to conducting negotiations, and some experience in mock negotiations among class members. From this strong basis, I was able to build my solid background in contract negotiation by adding real life experience negotiating direct costs, overhead rates, profit rates, labor hours, period of performance, level of effort and other contract terms with contractors.

To prepare for any negotiation, I begin by analyzing the proposal that is to be negotiated. I am currently in the process of planning negotiations for a soon-to-be awarded Architect-Engineer Contract in the Pacific Northwest, which I will use for an example. I started by comparing the bottom line total with that of the Independent Government Estimate (IGE), and determined that they were approximately sixty thousand dollars over the estimate. From there, using the cost and price analysis that I have conducted, I look at each line item as compared to the IGE to see where there seems to be a difference in ideas of how to approach this project. One thing that immediately came to my attention is the indication of clerical staff members under the direct cost rates. This is an unallowable cost for this type of procurement, since clerical staff are considered an indirect cost. This is a term that I will have to negotiate with the contractor, because they feel that it should be considered a direct cost. After I finish analyzing the proposal and determining areas which I think could be potential areas for change, I contact the Project Manager to get his opinion on the proposal. We confer about the areas that each would like to address, then schedule a meeting with the Offeror. Before the negotiations, the Project Manager and I once again go over any areas that we feel should be negotiated and develop a plan for the negotiation process.

I have learned that going into a negotiation session with a positive attitude is always the best approach. In order to have successful negotiations, two parties with different opinions, in this case the Government wanting to get the best deal for it's money and the contractor wanting to get the most money for his work, come together to try to reach a mutually satisfactory agreement. If, in the end, one party or the other does not feel that they have a fair arrangement, this will not lead to a satisfactory working arrangement.

Both sides must be willing to make concessions. One major point of contention is often the profit level. Often Contractors ask for upwards 12 percent, but I am not sanctioned to permit a rate of higher than ten percent. In the last contract that I negotiated they had questionable costs as allowable in their indirect cost rate calculations, and I asked them to provide additional an additional written explanation of what "advertising costs for new employees" entailed, for approval of the Contracting Officer.

Often, negations take more than one round of discussion, and I feel that an important negotiation skill that I possess is patience to work through each individual area, request a revised proposal and repeat the whole process until we can arrive at rates that are acceptable for the work to be performed. My personal goal is to bring the offeror's price within three to four percent of the Independent Government Estimate. In an Architect-Engineer Contract that I negotiated for award last month, I was able to bring the offeror in at slightly below the government estimate, and still be a beneficial agreement for the Contractor and the Government.



U.S. Department of

Assistant Secretary for
Employment and Training
Washington, D.C. 20210

MAY - 3 2004

Mr. Edward D. Washington
944 South Wakefield Street
Arlington, VA 22204

Dear Mr. Washington:

I wish to thank you for applying for the position of Contract
Specialist, GS-1102-9, in the Division of Contract Services,
Office of Grants and Contract Management. After reviewing the
resumes of the best qualified applicants, of whom you were one,
I have selected another candidate for the position. However,
should other Employment and Training Administration vacancies
subsequently occur in which you are interested, you are
encouraged to submit an application.

Sincerely,

KEITH A. BOND
Contracting Officer



GOVERNMENT
EXHIBIT
8



A Proud Member of America's Workforce Network

Tab F-7 pg. 1

Complainant's Questionnaire
<u>EEO Complaint of Edward Washington CRC 04-11-116</u>

Please respond to the following request for information relative to this formal complaint of discrimination. Provide your response to the following questions on the affidavit forms enclosed. Number and initial each page and initial any corrections made to any items in your affidavit.

Prepare your response in narrative form to best relate what occurred in this complaint. As you describe circumstances and facts in a time sensitive chronology, give specific and detailed information so that someone who is not familiar with your situation can understand what it is you are trying to explain/demonstrate. In other words, your affidavit should paint a picture for the person who will make the decision relative to the issue raised in this complaint.

Please provide your response to the following:

1.  Please state for the record your full name and address, position, and location with the Department of Labor.

2.  Please state for the record your race.

**Contract Specialist, Series/Grade GS-1102-09, advertised under Vacancy Announcement number ETA-04-047PN**

3.  You alleged that you were discriminated against on the basis of your race when you were not selected for Vacancy Announcement Number ETA-04-047PN. Please explain the process followed for announcing this position, submitting your application, etc. Please submit any documentation to corroborate your testimony.

4.  Please indicate how the specific agency official(s) involved in making the selection decision for the position of Contract Specialist, Series/Grade GS-1102-09, advertised under Vacancy Announcement number ETA-04-047PN was aware of your race.



GOVERNMENT
EXHIBIT

9

Tab F-1 pg. 7

5. Please describe the process by which you applied for the position in question, including whether or not you talked to and/or were interviewed by any agency employee(s) (please provide names(s) of individuals(s) if applicable).

6. Please explain how you satisfied all the requirements for applying for this position.

7. Please describe, in detail, how you were eligible/qualified for this position.

8. Please describe in detail why you believe that your qualifications are plainly superior to the applicant who was selected.

9. You alleged that on April 26, 2004 you received an anonymous telephone call from someone who works at Department of Labor in reference to your qualifications. Please provide more detail.

10. Please explain why you believe that the specific agency officials involved in making the selection decision for the position of Contract Specialist, Series/Grade GS-1102-09, advertised under Vacancy Announcement number ETA-04-047PN intentionally discriminated against you on the basis of your race.

11. Please provide any other relevant information that you wish to add.

Please read the end of the affidavit form, and note that your signature means that you are swearing or affirming the truth of the information you have provided. Please sign this last page and number all the pages of your affidavit and ensure that you have placed your initials at the bottom of each page, with the exception of the last page.

Please send your finalized statement with any documents you would like to submit as exhibits to me within fifteen (15) calendar days of receipt of this letter. My address is: Department of Labor, ATTENTION: Roderick Faulkner, Frances Perkins Building, OASAM/Civil Rights Center, Room N4123, 200 Constitution Avenue, NW, Washington, DC 20210. Again, if you have any questions, feel free to contact me at (202) 693-6552.



**COMPLAINANT'S AFFIDAVIT**

I, (name) Edward D. Washington

am an ____ employee of ____ applicant to ____ former employee of the U.S. Department of Labor's:

(Agency) ______________________________

(Office) ______________________________

(Division) ______________________________

(Branch) ______________________________

Located in (city and state) ______________________________

In the capacity of (show both your organization title and the classification of your job, if different):

______________________________

Grade ________ between (date) ________ and (date) ________ [redacted]

My telephone number during working hours is: [redacted]

I HAVE BEEN ADVISED OF THE FOLLOWING:

I have an obligation to cooperate fully with the investigator who has been assigned to conduct an impartial and appropriate investigation of my complaint of discrimination. Therefore, I must provide a statement for the investigative record that is true and complete to the best of my knowledge and belief and fully addresses the issues accepted for investigation. My statement must be specific with regard to names, dates, places, circumstances and related events, and disclose my firsthand knowledge of any directly related information that is relevant to the issue(s). My statement, along with my Informal Complaint, Counselor's Summary Report, Formal Complaint, and the "issue accepted for investigation" shall serve as the basis of the investigation. While I may voluntarily submit any additional documents or information to the investigator for consideration, it will be the investigator's responsibility to determine what evidence shall actually become part of the investigative report. If there are any documents or facts that substantiate my allegations, I must provide them to the investigator, or make them known to the investigator. I may suggest witnesses to be interviewed by the investigator. However, the investigator will decide which witnesses to interview based on relevant information he or she feels will be furnished.

My statement is made under oath (or affirmation), without a pledge of confidentiality, in accordance with the rules, regulations, policies, and procedures of the Equal Employment Opportunity Commission and the Department of Labor. This means that any employee(s) whom I accuse of discrimination or other acts of impropriety may be shown this statement or relevant portions and be given an opportunity to respond. Agency officials responsible for processing complaints of discrimination will have access to the entire investigative report. If discrimination is found, any employee accused of discrimination will have an opportunity to review a sanitized version of the report. If discrimination is found and disciplinary action is proposed, the employee accused of discrimination will have an opportunity to review the report in its entirety without deletions. Participants in the discrimination complaint process are specifically protected by law and the EEO regulations from any acts of reprisal, discrimination, coercion, harassment, restraint, or inference for their participation in the investigation and other phases of complaint processing.

I have the right to be represented by a person of my choice during presentation of my complaint and preparation of my statement (so long as my choice does not result in a conflict of interest). I have ✓ have not ____ chosen a personal representative at this stage of my complaint. In the event I have not chosen a representative but obtain a representative at a later date, I will advise the investigator and the Director of the Civil Rights Center in writing.

I have the right to review my statement prior to signing it, and may make initialed corrections if it is incomplete or inaccurate. I have a right to receive a copy of the signed statement.

Having reviewed the preceding information with the investigator, I solemnly swear or affirm that the statement to follow is true and complete to the best of my knowledge and belief, and fully addresses the issues and allegations raised by me in my EEO complaint.

Initials: EDW

CRC No. 04-11-116

### Attachment to:
### Complaint's Questionnaire
### EEO Complaint of Edward Washington CRC 04-11-116

**Item 3**

a. My application is enclosed. I hand delivered it to DOL on 26 Mar 04, and waited at the Security Desk for a staff person from the HR office to pick it up.

b. I confirmed with Ms. DeCrane, the point of contact on the vacancy announcement that she received my application within the stated deadline.

**Item 4**

a. I do not know when, and if Mr. Boyd reviewed the documents submitted. With my last name being Washington and I know of only one white person with this last name, he was the former executive of the National Rifle Association who is now deceased; the inference is there to make that assumption.

b. By listening to my recorded message on my office telephone, it would be highly likely that the person listening (call 703/521-2100) could easily make that assumption.

**Item 5**

a. I searched DOL's website for vacancy announcements. The only person I called prior to receiving the anonymous telephone call was Ms. DeCrane, in the HR office.

b. I was not interviewed by anyone at DOL concerning this vacancy announcement.

**Item 6**

I met the deadline and documentation requirements required by the vacancy announcement. If my application was incomplete, or did not arrive on time, I can only assume that it would have been returned and not presented to the evaluation panel.

**Item 7**

a. My resume, ranking factors, and evaluation report from the Contracting Support Office documents my experience as a Contract Specialist, and Contracting Officer.

b. The following documents (attached now and along with the original application) support the ranking factors:

    (1) Info Paper - Contract Close-Out, 12 Jun 92
    (2) Evaluation Report, Aug 91 to Jul 92
    (3) Contracting Officer Representative Course, 29 Mar 85
    (4) Management of Defense Acquisition Course (Basic), 1 May 92
    (5) Federal Contract Law Course, 8 Oct 93
    (6) Certificate of Appointment - Contracting Officer, 17 Sep 85
    (7) DD Form 214, 30 Apr 04

**Attachment to:**
**Complaint's Questionnaire**
**EEO Complaint of Edward Washington CRC 04-11-116**

c.   You can confirm with anyone in the Contracting Office that only duly appointed Contracting Officers, Program Managers, or Department Heads are authorized to sign contracts on behalf of the Government. There are many contract specialist, analysts, and similar type personnel, but only those with a "warrant" can legally obligate the Government in such a manner. Even attorneys, who review them for legal sufficiency, cannot do so without a Certificate of appointment.

**Item 8**

a.   The person selected for the position, Ms. Snook, as I was told by the anonymous caller had only one year of experience, and the only evaluation consisted of an e-mail stating the work she had done while working there for one year prior to this position being announced.

b.   The supporting documents cited in Item 7 above, compared to one year of experience, and without the formal training courses I have completed are the reasons I know that I am more qualified than Ms. Snook.

c.   Add my 5 points as a U.S. veteran should mean something, especially at DOL, the agency responsible for enforcing many of the veterans' rights.

**Item 9**

a.   On 26 Apr 04 (see letter attached), I received an anonymous telephone call from an employee of DOL. This person stated that I was rated as best qualified, however, someone with less experience would be selected for the position.

b.   I do not have any relatives or friends who work at DOL. The only person whom I have met is Secretary Chao. I have chauffeured her to television talk shows when she was employed at one of the think tanks.

c.   My office phone has voice mail so those callers can leave a message. After 30 days, messages are automatically erased. I did not re-record it because I was not sure of the legality.

d.   This person never provided a name. My caller ID displayed the call was from within DOL. I spoke to this person two times, only because by chance I was in my office to accept the call.

e.   I can only assume that this person works in the Contracting Office, or certainly was one of the panel members evaluating applicant's documents. The level of detail explained to me concerning the total number of applications, six and only Ms. Snook and I was rated as best qualified. I would have no means of finding out this type of information.

f.   The person would not provide a name because of fear or retribution, or termination. That's why I did not insist on a name; and I thanked that person for being candid, and trying to ensure that all employees of DOL maintain such high standards.

**Attachment to:**
**Complaint's Questionnaire**
**EEO Complaint of Edward Washington CRC 04-11-116**

**Item 10**

a.   I cannot unequovically state why Mr. Boyd selected someone other that the best qualified applicant for the vacancy.  What I do honestly believe Is that people who are placed in a junior senior position, such as a Contracting Officer, have a duty and responsibility to represent their employer In high standards, without even the slightest hint of intentional unethical behavior.  When they violate that trust and responsibility, they should be held accountable for their actions.

b.   All other factors being equal, and my qualifications exceed Ms. Snook give me ample reasons to believe that race was the determining factor In my not being selected for the vacancy.

**Item 11**

a.   I do not believe that the actions of Mr. Boyd are reflections of the entire Department of Labor.  Age, wisdom, and experience give me cause for making this statement.

b.   However, I do have reasons to believe that once this investigation is complete, the anonymous caller (I am sure you will determine who it is) should not be penalized for attempting to insure that the agency is represented in the highest ethical standards.

c.   Prior to receiving the anonymous call, I had no reason to think otherwise.  That's why I did not initially pursue an investigation for the previous announcement (EPA-04-006PN).

d.   Finally, If what the anonymous told me is entirely accurate, I am sure any reasonable person could only conclude that I am a victim of discrimination.

e.   Response to DOL letter dated September 20, 2004 (FEDEX: 8455 9375 5600), referencing position ETA-04-006PN, Human Resource Specialist:

   (1)  The position was advertised at GS-13, not GS-09.

   (2)  In my letter dated 26 Apr 04, I did not nor do I now allege discrimination.  I requested that someone verify Ms. Salls statement to me that the announcement had been withdrawn.

   (3)  If the position were subsequently filled by someone other than a current federal employee, I would like that fact made known me, or made known to the EEOC.

   (4)  I assumed that Ms. Salls told me the truth.  That's why I submitted my application for the Contract Specialist position.  Should your inquiry reveal that someone other than a current federal employee filled this position, then I request that it remains included with my original complaint.          Edward D. Washington          09/24/05
/////////////////////////////////END OF STATEMENT/////////////////////////////////////////

I have reviewed this statement, which consists of __3__ pages, and hereby solemnly ____ swear ____ affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential, will become a permanent part of the record of investigation, and may be shown to any necessary party.

_Edward D. Wesley_                  _24 APR 05_

       (Signature of Affiant)                             (Date)

Signed before/received by me at (Street and City) _____

on this ____ day of _____, 20_____

                      4/27/05

                (Signature of Investigator/Witness)

CRC Form 10
(Rev. 3/03)

        CRC NO. 04-11-116

26 April 2004

FROM:   Edward D. Washington

Office: ███████ , Fax: ███████ Cell: ███████

TO:   The U.S. Department of Labor
      Office of the Inspector General - Hotline
      200 Constitution Avenue, N.W., Room F5506
      Washington, DC 20210
      Office: (202) 693-5100, Fax: (202) 693-7020

Re:   Vacancy Announcements Inquiry

1.   ETA-04-047PN, Contract Specialist, GS-09

     a.   I submitted an application for this vacancy announcement by the closing date of 26 March 04.

     b.   Today, I received an anonymous telephone call from someone who works at DOL. This person stated that I was rated as best qualified, however the position will not be offered to me because another person who has previously worked as a contractor for DOL with one year of experience, will fill the position on or by 30 Apr 04.

     c.   This message is stored on my voice mail, and I will retain it until this issue is resolved.

2.   ETA-04-006PN, Human Resource Specialist, GS-13

     a.   I submitted an application for this vacancy announcement by the closing date of 16 Jan 04.

     b.   On 17 Mar 04, I spoke to Ms. Valerie Sails, 202/693-3718. She informed me that several applications were received, but DOL had decided to cancel the announcement and fill the position with a current DOL employee. She also stated that I would receive written confirmation on the termination of this announcement.

     c.   To date, I have not received any communication, so I do not know if the position was filled by a current employee or someone outside the federal government.


GOVERNMENT
EXHIBIT
10

3.  My purpose in requesting this inquiry is to ensure that the playing field is level, and not cause DOL or any of its employees any discomfort or harm. Nor do I necessarily want to be forced on a supervisor or department head if they prefer to hire someone else.

4.  I have chauffeured, through a limousine company, Mrs. Chao when she was employed at The Heritage Foundation. I'm sure, just from by brief acquaintance, that she does not tolerate inadequate performance.

5.  Therefore, I respectfully request that an inquiry be conducted to determine my qualifications for the announcement, and the board/review results.


Sincerely,

ED Washington

10 June 2004    <u>Reprinted: July 20, 2004 (Notice from Gregory Reeves, EEO Counselor)</u>

FROM:    Edward D. Washington
         944 South Wakefield Street, Suite 304
         Arlington, VA 22204
         Office: ▓▓▓▓▓▓▓  Fax: ▓▓▓▓▓▓▓  Cell: ▓▓▓▓▓▓▓

THRU:    Ms. Annabelle T. Lockhart, Director, Civil Rights Center
         The U.S. Department of Labor
         200 Constitution Avenue, N.W., Room 4123
         Washington, DC 20210

FOR:     Ms. Lillian Winstead

Re:      **Formal Complaint of Discrimination**

## 6.  *Specify the action(s) that gave rise to this complaint*

a. I submitted an employment application for Announcement No. ETA-04-047PN, Contract Specialist, GS-09.

b. On 26 Apr 04, I received an anonymous telephone call from someone who works at DOL. This person informed me that I was rated as best qualified, however, the position will be offered to another person.

(1) Of the six applicants, four were rated as qualified, and two were rated as best qualified.

(2) Ms. Jennifer Snook was selected for the position even though I had more years of experience, a contracting warrant, and five points as a U.S. veteran.

(3) I received a letter dated 3 May 04, and post marked 12 May 04 from Mr. Keith Bond, Contracting Officer. This letter informed me that another candidate had been selected for the position.

(4) Should, during your investigative process, a discussion concerning me not stating whether or not I have construction or artichect-engineering contracting experience; this was not included in the job description or any of the ranking factors. Therefore, none of the candidates should receive a higher or lower ranking.

(5) On 17 May 04, I received a letter from the Complaint Analysis Office advising me that my complaint had been forwarded to Ms. Lockhart's office.



**GOVERNMENT
EXHIBIT
11**

**Page 1 of 2**

*Ed Washington*
*Civil Rights Center-DOL*

Tab b-1 pg. 3

    c.  On 26 Jan 04, I submitted an employment application for ETA-04-006PN, Human Resource Specialist, GS-13.

    b.  On 17 Mar 04, I spoke to Ms. Valerie Sails, � . She informed me that several applications were received, but DOL had decided to cancel the announcement and fill the position with a current DOL employee. She also stated that I would receive written confirmation on the termination of this announcement.

    c.  To date, I have not received any communication, so I do not know if the position was filled by a current employee or someone outside the federal government.

7. *Please specify remedy(ies)* you believe will resolve your complaint.

    a.  I will pursue monetary damages because I am deeply offended; the actions pertaining to the Contract Specialist position are racially discriminatory, and once again proves the point that African Americans get pneumonia when others catch a simple cold.

    b.  The person or persons responsible should be held accountable, both professionally and personally because until they have a compelling reason to modify their behavior, they will most likely continue to do more harm. This affects the public, and the integrity of all the professional people - from clerk to DOL Secretary.

    c.  I also believe that if I were offered a position now, I would be a high candidate for retribution.

    d.  When a response is received, forward a copy of it to my attorney:

Mr. John Angus, Esq.   (703) 581-0700
Weiner, Weiner, and Weiner PC
3251 Old Lee Highway, Suite 411
Fairfax, VA 22030

**Page 2 of 2**

*Ed Washington
Civil Rights Center-DOL*

**Tab b-1 pg. 4**



**Resume**
Edward D. Washington

OFFICE OF
HUMAN RESOURCES

2009 MAR 26  P. 2:55

Fax

**Apr 94 – Present**      **Ace Diversified Services, Inc.**

Serves as Managing Director of a multi-facet company that provides limousine
services, contract consulting services and food safety training. Develops and executes
strategic plans. Directs all activities pertaining to the budget and accounting
functions.

**Aug 69 – Apr 94**      **U.S. Army**

**Contract Specialists, 4 years**
Procures supplies and services for small and large purchase requests. Develops
statements of work, analyzes contractor proposals and negotiates price, terms, and
conditions. Conducts post award audits and prepares contract closeout actions.
Accurately records actions as they occur in the contract file, showing an audit trail and
supporting contracting actions. Ensures that contractors comply with statues and laws
to fulfill contract provisions. Analyzes and resolves complex contracting technical
issues. Conducts a variety of meetings to discuss and coordinate responsibilities of
the government and the contractor. Independently determines proper contract
solution and administrative actions. Prepares detailed findings and recommendations
for resolving disputes and controversies. Ensures that closeout files are complete and
accurate; and contain only the proper documentation. Analyzes contract price
proposals to establish price objectives and profit elements. Prepares historical cost
data and operating statistics for review by supervisors. Ensures that contract changes
are properly negotiated and the contract is properly modified.

**Recruiting Duties, 11 years**
Prospects, interviews, and determine enlistment eligibility for applicants who seek
enlistment. Recognized for consistently exceeding enlistment quotas. Manages a
sales force of 75 recruiters in five districts, set quotas, evaluate performance, and
conducts one-on-one and group training. Provides technical expertise and guidance to
the advertising contractor responsible for electronic (TV and radio) advertisements,
lead fulfillment services, focus group research and conventions support. Certified as a
Distinguished Educator. Serves as principal developer and writer for the proficiency
examination administered to 10,000 recruitment personnel.

**Management Analyst, 5 years**
Reviews and analyzes force structure documents to determine the manpower
requirements for civilian and military positions. Designed a data base to track 70,000
requirements by position, grade level, and division within each State National Guard
Headquarters and units.



GOVERNMENT
EXHIBIT
12

ETA-04-047PN, Contract Specialist



Full legal name and mailing address:

Edward D. Washington, ████████████

Citizenship:        U.S. Citizen

Veterans Preference:  5 points (DD Form 214 attached)

Daytime telephone number    ████████████

Cellular telephone number    ████████████

E-mail address    ████████████

## Contract Training and Appointment

        Defense Small Purchase Course, 1985
        Contracting Officer Appointment, 17 Sep 85
        Contracting Officers Representative Course, 29 Mar 85
        Management of Defense Acquisition Contracts Course (Basic), 1 May 92
        Federal Contract Law Course, 8 Oct 93

## Civilian and Military Education, 150 semester hours

        Aug 69      High School Graduate, Baltimore City College
        72-74       University of Baltimore, 48 semester hours
        75-76       Essex Community College, 15 semester hours
        1998        South Eastern University, 6 semester hours
        1999        Strayer College, 6 semester hours
                    Military courses, 75 semester hours

## Evaluation Reports

        Aug 91 - Jul 92        Contract Specialist
        Mar 88 - Feb 89        Management Analyst (Senior Staff NCO)
        Jun 86 - May 87        Management Analyst (Senior Staff NCO)
        Mar 85 - Sep 85        Senior Enlisted Advisor (Advertising)
        Nov 84 - Feb 85        Senior Enlisted Advisor (Advertising)

**Edward D. Washington**

## Evaluation Factors

**1.    Basic knowledge of procurement procedures, laws, regulations and techniques to effectively carry out a full range of procurement assignments.**

My assignment as the Contracting Officer's Representative (COR) on the national advertising contract involved extensive travel with the contractor to insure that the products provided and services performed, conform to the contract provisions and Department of Defense policies. Using the Federal Acquisition Regulation (FAR) and other directives, reviews purchase requests, awards small purchase contracts, reviews modification proposals, and issue modifications. Insert the appropriate contract clauses required for the specific type of procurement to protect the interests of the government and the contractor. A team of 7 contract attorneys were available to review proposals, discuss complex issues, and recommended revisions to remove any ambiguous items. Provides oral and written responses to contractors' questions, such as privity of contract between the government and a subcontractor, cost and pricing data submissions, or the applicability of contract clauses.

**2.    Knowledge of commonly applied procurement methods and types of contract such as fixed price or cost reimbursement contracts, formula-funded or discretionary grants, and the required clauses and special provisions to plan and carry out the procurement to recommend award.**

Acquisition planning ensures that the Government meets its needs in an economic and timely manner. The plan elements include cost, capability or performance, delivery requirements, and risk factors for the government and the contractor. A firm-fixed-price contract is generally used when the risk involved is minimal, or can be predicted with a high degree of certainty. Cost-type contracts are used when uncertainties in contract performance do not permit costs to be estimated with sufficient accuracy, and a fixed profit is set. Contract clauses and provisions ensure conformance, performance, and that delivery schedules are met.

**3.    Knowledge of source of supply and characteristics of assigned services sufficient to identify potential suppliers, assure adequate price competition, and evaluate responsiveness and responsibilities of the bidders.**

There are several sources from which the Government can identify potential bidders. Required sources such as the Federal Bureau of Prisons or other agencies are given priority over other sources. Place orders against contracts that were issued through another agency. The GSA Schedules are an excellent source because the price, terms, and conditions have been negotiated; and at the same time, document competition when there is more than one supplier. The Small Business Administration maintains a list of qualified suppliers. Using a source from the SBA achieves the government objectives of including minorities, women, and other disadvantaged suppliers.

ETA-04-047PN, Contract Specialist, GS-09

**Page 1 of 2**


## Evaluation Factors (cont'd)

In this electronic age, reviewing web sites could provide a host of sources. When a contract is awarded without competition, the contract file must accurately document the reasons, and include approval(s) by the contracting officer or other contracting authority. Bids and proposals are evaluated to determine their responsiveness, i.e., submitted on time, performance capabilities, and proposal evaluation factors. Contractor responsibilities include eligibility to submit bids or proposals, i.e., debarment or other factors, and certifications with contract clauses and provisions. The contract file is documented, and when necessary, assists the Government in preparing its case for settling contract protests and disputes.

**4.     Knowledge of price analysis sufficient to review contractor proposals, and to perform analysis using previous history,or other data sources to assure reasonableness of prices.**

Price analysis evaluates a total sum, without analyzing its separate cost elements. Develop a comparison schedule to review independent in-house estimates, with the proposed prices from contractors. Use yardstick measurement factors such as price per hour, or per square foot. Encourage or direct price breakouts versus bottom-line pricing to analyze and determine price reasonableness. When warranted, consider economic price adjustment clauses.

**5.     Skill in oral and written communications to negotiate contract prices with contractors.**

Negotiating a contract type and price are closely related in that it provides the contractor with incentives to be efficient, and economical in its performance. Complex procurements, especially those unique to the government, increases risk. A time-line or performance schedule assists in determining when to increase the contractor's risk. In-house estimates should include a cost analysis that includes a measurement of allowable, allocable, and reasonable costs. Armed with this data, a price objective meeting is scheduled with the contracting officer, and the briefing conducted. Understanding/ knowing the risk elements for both parties is a major element of properly preparing to negotiate with the contractor. I am an accounting major and major investor in a business services enterprise. When it involves money, either inflow or outflow, I put on my "cost accounting" hat to evaluate financial matters.