# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EDWARD D. WASHINGTON,

     Plaintiff,

     v.

ELAINE L. CHAO, Secretary,
United States Department of Labor

     Defendant.

Civil Action No. 06-2149 (CKK)

## MEMORANDUM OPINION
(September 9, 2008)

This is a Title VII employment discrimination case. Plaintiff Edward D. Washington, proceeding *pro se*, has brought suit against Defendant Elaine L. Chao, in her official capacity as the Secretary of the United States Department of Labor ("DOL"), alleging that the DOL's Employment and Training Administration discriminated against him on the basis of race by not selecting him for a Contract Specialist position in 2004. Defendant argues that race was not a factor in Plaintiff's non-selection, relying on the undisputed facts in the record that the person selecting the candidate for the position (himself an African American) had no knowledge of Plaintiff's race (also African American) when he made the selection, and Plaintiff's own concessions in his deposition testimony that the person selected for the position was chosen because she was viewed as an office "favorite" who just "happened to be white," and that Plaintiff would not have been selected for the position regardless of his race. Based on these and other facts in the record, Defendant filed a [17, 18] Motion to Dismiss, or in the alternative, Motion for Summary Judgment, which Plaintiff has opposed. After a searching review of the

parties' submissions, including the attachments thereto, applicable case law and statutory authority, the Court shall GRANT Defendant's [17, 18] Motion to Dismiss, on in the alternative, Motion for Summary Judgment, for the reasons that follow.

## I.  BACKGROUND

On March 15, 2004, the Department of Labor issued a vacancy announcement for a Contract Specialist position within the DOL's Employment Training Administration.[1]  Def.'s Stmt. ¶ 1.  The position involved federal procurement and required the employee to undertake various duties associated with DOL contracts, including analysis and solicitation of competitive proposals, review of requisitions, and drafting of final contracts, modifications, and purchase orders.  *Id.* ¶¶ 3, 5; Def.'s Mot., Ex. 1 at 1 (3/15/04 Vacancy Announcement).  The vacancy announcement included a list of five evaluation factors that were considered "essential to the successful performance of the duties" for the position:

(1) Basic knowledge of procurement procedures, law, regulations and techniques to effectively carry out a full range of procurement assignments;

(2) Knowledge of commonly applied procurement methods and types of contracts, such as fixed price or cost reimbursement contracts, formula funded or

---

[1] As the Court previously advised the parties, *see* [16] Order at 1 (Sept. 28, 2007), this Court strictly adheres to the text of Local Civil Rule 7(h) (effective September 2, 2008, LCvR 7(h)(1)) when resolving motions for summary judgment.  *See Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002) (district courts need to invoke Local Civil Rule 56.1 [which is identical to Local Civil Rule 7(h)(1)] before applying it to the case).  Although discretionary, in resolving the present motions, this Court "assume[s] that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  LCvR 7(h)(1).  Thus, in most instances the Court shall cite to Defendant's Statement of Material Facts ("Def.'s Stmt.") unless Plaintiff objects to relevant aspects of a fact proffered by Defendant.  In such instances, the Court shall also cite to Plaintiff's Response to Defendant's Statement ("Pl.'s Resp. Stmt.").  The Court shall also cite directly to the record, where appropriate, to provide additional information not covered by Defendant's Statement.

discretionary grants, and the required clauses and special provisions to plan and carry out the procurement to recommend award;

(3) Knowledge of source of supply and characteristics of assigned services sufficient to identify potential supplies, assure adequate price competition, and evaluate bid responsiveness and responsibilities of the bidders;

(4) Knowledge of price analysis sufficient to review contractor proposals, and to perform analysis using previous history or other data sources to assure reasonableness of prices; and

(5) skill in oral and written communications to negotiate contract prices and terms with contractors.

Def.'s Mot., Ex. 1 at 2 (3/15/04 Vacancy Announcement).  The vacancy announcement also indicated that it was "highly recommended, but not required, that all candidates address and submit the evaluation factors on a separate sheet of paper," and that it was "the responsibility of the applicant to provide all of the information needed by the closing date of this announcement." *Id.*

A rating panel consisting of Ms. Chari Magruder and Ms. Marissa Dela Cerna reviewed and rated each of the applicants who applied for the position.  Def.'s Stmt. ¶ 7.  The panel placed the names of three applicants on a "certificate of eligibles" and provided it to the selecting official, Mr. Keith A. Bond.  *Id.* ¶ 8.  The panel ranked Jennifer Snook, a white female, as the highest rated candidate.  *Id.*  Plaintiff, an African American male, was ranked second, and another applicant was ranked third.  *Id.*

There is no evidence in the record that Mr. Bond had any input or influence regarding these rankings.[2]  *Id.*  *See also* Def.'s Mot., Ex. 6 ¶ 6 (Decl. of K. Bond) ("The numerical ranking

_____

[2] Plaintiff argues that Mr. Bond was involved in the panel's ranking of the candidates, but cites no evidence that supports this assertion.  *See* Pl.'s Resp. Stmt. ¶ 8.  Instead, Plaintiff relies on an interrogatory answer from Ms. Dela Cerna, wherein she explains that she believed it was a

of the three candidates on the certificate was prepared by ETA's personnel office.  I had no input

or influence regarding the rankings.  The rankings were done prior to my receiving the certificate

and the candidates [sic] applications.").  To select a candidate, Mr. Bond "reviewed each

candidate's application thoroughly, including that of Plaintiff."  Def.'s Stmt. ¶ 9.  These

applications "contained no information or documentation that indicated the race of the

applicants."  *Id.*  Although Mr. Bond was aware of Ms. Snook's race because she had been a

contract employee in his office at the time of the selection, Mr. Bond was not aware of Plaintiff's

race at the time he made his selection.[3]  *Id.* ¶¶ 10-12.  Mr. Bond did not conduct interviews of the

candidates who applied for the position.  *Id.* ¶ 19.

 Mr. Bond had personal knowledge of Ms. Snook's job performance while she worked in

his office, and her "duties and responsibilities included *the same duties and responsibilities* as

those of the position" to which she and Plaintiff applied.  *Id.* ¶ 13-15 (emphasis added).  During

---

"done deal" that Mr. Bond would select Ms. Snook because Mr. Bond had hired previous
contractors in the office for Contract Specialist positions, and because Mr. Bond sent an email to
Ms. Dela Cerna on October 6, 2004, discussing these previous hires.  *See* Pl.'s Opp'n, Ex. 29
(Interrogatory answers of M.  Dela Cerna).  These statements do not provide evidence that Mr.
Bond influenced the panel's rankings.  First, Mr. Bond's email in October 2004 could not have
influenced the panel because they ranked the candidates in April 2004, Mr. Bond selected a
candidate in April 2004, and Ms. Snook accepted the officer in May 2004.  *See* Def.'s Mot., Ex.
5 at 1 (4/30/04 Certificate of Eligibles).  Further, regardless of whether Mr. Bond had a practice
of preferring candidates who worked in his office prior to applying for Contract Specialist
positions, Ms. Dela Cerna's interrogatory answer does not assert that this practice influenced her
rankings or those of Ms. Magruder.

 [3] Plaintiff facially disputes the statement that Mr. Bond was not aware of Plaintiff's race
at the time of his selection, but Plaintiff fails to cite to any contrary evidence in the record and
concedes that "Plaintiff does not have sufficient information and belief to verify the contents of
this statement."  Pl.'s Resp. Stmt. ¶ 11.  Because on a motion for summary judgment the party
opposing the Motion must bring to bear contrary *evidence* in the record that creates a genuine
issue of material fact for trial, Plaintiff's objection must be disregarded.

4

her tenure as a contract employee, Ms. Snook took "a series of courses relating to procurement and contracting in the federal government including an introductory course to federal contracting, Architect-Engineer Services contracting, and Construction Contracting." *Id.* ¶ 14. Ms. Snook's application for the position addressed each of the evaluation factors identified in the vacancy announcement, provided details of her work experience applicable to each factor, and included *specific examples* of activities she had performed that matched the duties she would be expected to perform in the advertised position. *Id.* ¶ 14-16; *see also* Def.'s Mot., Ex. 7 at 3, 9-13 (3/19/04 Snook Application).

In contrast, Mr. Bond was unfamiliar with Plaintiff's work experience because Plaintiff had previously worked as a Managing Director of a company that provided limousine and other services for the ten years preceding his application for the contracting position. *See* Pl.'s Opp'n, Ex. 1 at 1 (Resume of E. Washington). Rather than describing his experiences as to each of the evaluation factors identified in the vacancy announcement, Plaintiff provided a list of definitions associated with the evaluation factors. *See* Def.'s Mot., Ex. 12 at 3 (3/26/04 Application of E. Washington). For example, for the evaluation factor relating to "Knowledge of commonly applied procurement methods and types of contracts such as fixed price or cost reimbursement contracts, formula-funded or discretionary grants, and the required clauses and special provisions to plan and carry out the procurement to recommend award," Plaintiff provided the following description:

> Acquisition planning ensures that the Government meets its needs in an economic and timely manner. The plan elements include cost, capability of performance, delivery requirements, and risk factors for the government and the contractor. A firm-fixed-price contract is generally used when the risk involved is minimal, or can be predicted with a high degree of certainty. Cost-type contracts are used

> when uncertainties in contract performance do not permit costs to be estimated
> with sufficient accuracy, and a fixed profit is set.  Contract clauses and provisions
> ensure conformance, performance, and that delivery schedules are met.

*Id.*  Plaintiff's description of his actual experiences are briefly described in his resume, which reflects his experience as a Contract Specialist for four years in the United States Army.  *Id.* at 1. Plaintiff left that position in 1994.  *Id.*

Mr. Bond selected Ms. Snook for the Contract Specialist position in April 2004.  *See* Def.'s Mot., Ex. 5 at 1 (4/30/04 Certificate of Eligibles).  Plaintiff alleges that he received two anonymous telephone calls from an unidentified person in April 2004 who told Plaintiff that he was not going to be selected for the Contract Specialist position even though he was the most qualified candidate.  *See* Def.'s Mot., Ex. 4 at 20:1 - 34:24 (Depo. Tr. of E. Washington).  The first call took the form of a phone message, where an unidentified woman stated that Plaintiff was "the best qualified applicant for the position, but they're going to give it to another young lady who is less qualified."  *Id.* at 22:10 - 22:12; 25:5 - 25:8.  Rather than saving this message, Plaintiff "left it there [in the message system] for almost a month, and . . . just let it drop off [become erased]."  *Id.* at 26:3 - 26:4; 23:2 - 23:4.  Plaintiff did not otherwise keep a copy of the message, did not write down the phone number associated with the message, did not attempt to obtain phone records to determine the source of the phone call, and made no attempts to retrieve the message from the phone company.  Def.'s Stmt. ¶ 23; Pl.'s Resp. Stmt. ¶ 23.  The second call allegedly resulted in a conversation between Plaintiff and the unidentified woman.  *See* Def.'s Mot., Ex. 4 at 27:9 - 27:14 (Depo. Tr. of E. Washington).  During this call, the unidentified woman identified Ms. Snook as the person who would be selected for the position, explained that Plaintiff was more qualified, and suggested that "this is not the first time that [this] ha[s]

6

happened." *Id.* at 27:17 - 27: 21; 33:10 - 33:15.  When pressed for further details during his

deposition, Plaintiff also alleged that the caller identified Ms. Snook as a white person, and

indicated that she knew Plaintiff was an African American.  *Id.* at 42:1 - 42:13.  Plaintiff could

not, however, recall why race was discussed during this call or place the discussion in any greater

context:

> Q: But you know that somewhere in there [during the conversation] she said she
> [Ms. Snook] was white?
>
> A: Yes, sir.
>
> Q: You don't know why, you don't know the context, you don't know how?
>
> A: No, sir.
>
> * * *
>
> Q: Did she tell you how she knew that you were black?
>
> A: No, sir, she did not.
>
> Q: Did she say anything at all about – did the conversation in any way indicate –
> did she say in any way why she said you were black?  How did that come up?  I
> keep asking that because I don't understand how in the conversation that comes
> up.
>
> A: Yeah, and I don't – I just don't remember . . .

*Id.* at 42:1 - 42:25.[4]

On April 26, 2004, Plaintiff sent a letter to the DOL Office of the Inspector General

concerning the Contract Specialist position.  He indicated that "[t]oday, [he] received an

---

[4] Plaintiff directed interrogatories to individuals in this litigation who he suspected may
have been the source of the phone calls, but nobody acknowledged making them.  Def.'s Stmt. ¶
23.  Plaintiff notes, however, that the existence of these calls is corroborated because
"[s]ubsequent facts [] prove that he correctly identified the selectee by name and race before
completion of the Information Investigation."  Pl.'s Resp. Stmt. ¶ 23

anonymous telephone call from someone who works at DOL.  This person stated that I was rated as best qualified, however the position will not be offered to me because another person who has previously worked as a contractor for DOL with one year of experience, will fill the position on or by 30 Apr 04."  Def.'s Mot., Ex. 10 at 1 (4/26/04 Letter from E. Washington to DOL Inspector General).  The letter also indicated that "[t]his message is stored on my voice mail, and I will retain it until this issue is resolved."  *Id.*  The letter does not mention race or race discrimination. *Id.*

Plaintiff filed a formal complaint of discrimination on June 10, 2004.  *Id.*, Ex. 11 at 1-2 (6/10/04 Complaint of Discrimination).  As part of the investigation associated with this complaint, Mr. Bond completed a witness questionnaire.  *Id.*, Ex. 3 at 1-7 (11/29/04 K. Bond Questionnaire).  In it, he explained that he was the selecting official for the Contract Specialist position and that he "reviewed each candidate's application, compared their knowledge, skills and abilities with the evaluation factors to each other and selected the best qualified applicant based on the method of evaluation stated in the [vacancy announcement]."  *Id.* at 2.  Mr. Bond explained that Plaintiff was not selected because he was not the most qualified applicant.  *Id.* at 3.  In particular, he believed that Plaintiff lacked *current* experience as a contract specialist:

> In his [Plaintiff's] application he cites the last time that he did contract specialist work was April 1994, ten year [sic] ago.  The Federal Acquisition Regulation in which knowledge of [sic] is critical for this job has changed significantly since 1994 . . . [Plaintiff] has served as Managing Director of a multi-faceted company that provides limousine services, contract consulting services and food safety training.  There is no description of work [Plaintiff] performed as a contract specialist from 1994 to the present.

*Id.* at 3.  In addition, Mr. Bond believed that there was no indication in Plaintiff's application that Plaintiff had knowledge and/or experience with particular aspects of the duties he would be

expected to perform:

> There was no indication in [Plaintiff's] application of his knowledge [of] best
> value, past performance, competitive range or recommendation for award, which
> are familiar terms used in the procurement profession . . . The only indication in
> [Plaintiff's] application that he worked on procurements over $100,000 is the
> statement '[p]rocures supplies and services for small and large purchases.'

*Id.*  Finally, Mr. Bond noted that "[u]nder the evaluation factors, the majority of [Plaintiff's]

responses are more definitions of procurement terms rather than [an] explanation of how he

performed the specific tasks of the job."  *Id.*

In contrast to his assessment of Plaintiff's application, Mr. Bond explained that Ms.

Snook's application provided a description of experiences that would be pertinent to the contract

position.  For example,

> Ms. Snook had experience processing A&E and Construction and Contracting by
> Negotiated procurement . . . [and she] had participating in sealed bid openings,
> A&E competitive contract selections, A&E sole source contract selections, and
> numerous contract modifications under A&E and Construction contracting.  Ms.
> Snook has prepared cost reimbursement type solicitations and contracts, purchase
> orders, firm fixed price contracts and numerous contract modifications under
> Contracting by Negotiation.

*Id.* at 4.  Mr. Bond explained that "Ms. Snook[] described her responsibilities and duties in more

detail than [Plaintiff]," and that he also "had personal knowledge of how Ms. Snook performed

the duties and responsibilities described in the job announcement" based on his "observation of

her performance in the Division of Contract Services."  *Id.* at 5.

In terms of the specific allegations that Mr. Bond took race into account during the

selection process, he indicated that he was African American and that he was unaware of

Plaintiff's race at the time of his selection.  *Id.* at 1, 5.  He also indicated that he had selected four

previous individuals for Contract Specialist positions in the past two years.  *Id.* at 5.  All four

individuals that he selected were African American. *Id.* at 5-6.

The EEOC issued a decision on March 14, 2006, finding no discrimination. Pl.'s Opp'n, Ex. 26 at 1 (8/10/06 EEOC Denial of Reconsideration). Plaintiff moved for reconsideration of that decision and on August 10, 2006, the EEOC affirmed its previous decision. *Id.* at 1-3. Plaintiff filed the instant Complaint in this case on December 18, 2006, and an Amended Complaint on August 19, 2007.

Plaintiff was deposed in this case on July 18, 2007. During his deposition, Plaintiff testified that Mr. Bond may have known his race based on his last name – Washington.[5] Def.'s Mot., Ex. 4 at 45:17 - 45:18. Plaintiff then conceded, however, that he would not have been selected for the Contract Specialist position if his last name had been supposedly race-neutral, such as "Smith":

> Q: . . . Do you believe that if your last name had been Smith you would have gotten the job over Ms. Snook?
>
> A: I'm not sure that I – no. I think Ms. Snook would have gotten the job . . .
>
> * * *
>
> A: If that person had a common name – I want to make sure I understand your question before I respond to it. So that person had a common name that wasn't easily identifiable by race or whatever. You got the same set of records. Would that person have been selected –

---

[5] It appears during the deposition that Plaintiff may have been arguing that his race was stated on a separation document that was included in his application for the Contract Specialist position. *See* Def.'s Mot., Ex. 4 at 45:3 - 45:17 (Depo. Tr. of E. Washington). Plaintiff has subsequently admitted that his job application did *not* provide any indication of his race. *See* Def.'s Stmt. ¶ 9 (As part of the selection process . . . , Bond reviewed each candidates' application thoroughly, including that of Plaintiff. These applications contained no information or documentation that indicated the race of the applicants.") (internal citations omitted); Pl.'s Resp. Stmt. ¶ 9 ("Plaintiff does not dispute this statement.").

> Q: Over a woman that he had worked with, who he knew, who he liked, had experience in the area.
>
> A: No, I don't think so.

*Id.* at 45:20 - 45:22; 49:2 - 49:9.  When asked why he thought Mr. Bond selected Ms. Snook for the position, Plaintiff indicated that he believed the reasons were that "[Mr. Bond] worked with her, he knew her capabilities and potential."  *Id.* at 50:13 - 50:14.  Plaintiff then conceded that the reason for his non-selection was not based on his own or Ms. Snook's race:

> Q: . . . my question was do you believe that he [Mr. Bond] chose [Ms.] Snook over you because of his suspicion based on your last name that you were black?
>
> A: I believe he chose [Ms.] Snook over me because she was his favorite who happened to be white.
>
> * * *
>
> Q: . . . Do you believe that his selection of Ms. Snook as his favorite, to use your words –
>
> A: Okay
>
> Q: – would have changed if you – if he had reason to believe you were white?
>
> A: No, sir.

*Id.* at 54:8 - 54:24.

On November 21, 2007, Defendant filed a consolidated [17, 18] Motion to Dismiss under Rules 12(b)(1) or 12(c), or in the alternative, Motion for Summary Judgment under Rule 56, arguing that Plaintiff failed to set forth a prima facie case of racial discrimination and that Plaintiff could not rebut Defendant's non-discriminatory reasons for Plaintiff's non-selection. On December 21, 2007, Plaintiff filed an Opposition, arguing that he had set forth a prima facie case of discrimination and had adduced evidence of pretext.  Defendant filed a Reply on January

24, 2008.  Thus, Defendant's [17, 18] Motion is fully briefed and ripe for resolution.

## II.  LEGAL STANDARD

As a preliminary matter, the Court must address whether to proceed with Defendant's Motion pursuant to Rule 12(b)(1), 12(c), or 56.  In this regard, the Court is puzzled by Defendant's reliance on Rule 12(b)(1) (lack of subject matter jurisdiction), because Defendant does not contest that the Court has statutory authorization to exercise jurisdiction in this case, *see* 42 U.S.C. 2000e-5(f)(3); 28 U.S.C. 1331, and Defendant fails to provide *any* explanation as to why jurisdiction might be improper.  Equally unclear due to Defendant's lack of an explanation is why Defendant has moved to dismiss under Rule 12(c).[6]  To the extent Defendant intended to argue that Plaintiff's First Amended Complaint should be dismissed for failing to allege a prima facie case of discrimination, that argument has been foreclosed by the United States Supreme Court.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002) ("[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement").  *See also Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) ("[a]t the motion to dismiss stage, the district court cannot throw out a complaint even if the plaintiff did not plead the elements of a prima facie case").  Accordingly, it appears that the appropriate vehicle to review Plaintiff's claim of racial discrimination is through Defendant's Motion for Summary Judgment pursuant to Rule 56.

Under Federal Rule of Civil Procedure 56, a party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact

---

[6] The standard for reviewing a motion for judgment on the pleadings is the same as that applied to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  *Dale v. Exec. Office of the President*, 164 F. Supp. 2d 22, 24 (D.D.C. 2001).

in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ.

P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Under the summary judgment

standard, Defendant, as the moving party, bears the "initial responsibility of informing the district

court of the basis for [its] motion, and identifying those portions of the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits which [it]

believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). Plaintiff, in response to Defendants' motion, must "go beyond the

pleadings and by [his] own affidavits, or depositions, answers to interrogatories, and admissions

on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324

(internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the

nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar

summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be

material, the factual assertion must be capable of affecting the substantive outcome of the

litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a

reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d

1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251 (the court must determine

"whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is

merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty

Lobby*, 477 U.S. at 249-50 (internal citations omitted). "Mere allegations or denials in the

adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary

13

judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party must

do more than simply "show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, while the

movant bears the initial responsibility of identifying those portions of the record that demonstrate

the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come

forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing

Fed. R. Civ. P. 56(e)) (emphasis in original).

Importantly, "[w]hile summary judgment must be approached with specific caution in

discrimination cases, a plaintiff is not relieved of his obligation to support his allegations by

affidavits or other competent evidence showing that there is a genuine issue for trial." *Morgan v.

Fed. Home Loan Mortgage Corp.*, 172 F. Supp. 2d 98, 104 (D.D.C. 2001) (quoting *Calhoun v.

Johnson*, No. 95-2397, 1998 WL 164780, at *3 (D.D.C. Mar. 31, 1998) (internal citation

omitted), *aff'd*, No. 99-5126, 1999 WL 825425, at *1 (D.C. Cir. Sept. 27, 2000)); *see also

Marshall v. James*, 276 F. Supp. 2d 41, 47 (D.D.C. 2003) (special caution "does not eliminate

the use of summary judgment in discrimination cases") (citing cases). "Summary judgment is

not a 'disfavored procedural shortcut,' but is an integral procedural tool which promotes the

speedy and inexpensive resolution of every case." *Marshall*, 276 F. Supp. 2d at 47 (quoting

*Celotex Corp.*, 477 U.S. at 327). Accordingly, the Court reviews Defendant's Motion for

Summary Judgment under a "heightened standard" that reflects "special caution." *Aka v.

Washington Hosp. Ctr.*, 116 F.3d 876, 879 (D.C. Cir. 1997) (internal quotations omitted),

*overturned on other grounds*, 156 F.3d 1284 (D.C. Cir. 1998) (en banc). Nonetheless, while this

special standard is more exacting, it is not inherently preclusive. Although more circumspect, the

14

Court shall continue to grant a motion for summary judgment in which the nonmoving party has failed to submit evidence that creates a genuine factual dispute and the moving party is entitled to a judgment as a matter of law.

### III. DISCUSSION

Title VII of the Civil Rights Act makes it unlawful for an employer to "fail to refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prove a violation of Title VII, a plaintiff must demonstrate by a preponderance of the evidence that the actions taken by an employer were "more likely than not based on the consideration of impermissible factors" such as race, ethnicity, or national origin. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (internal quotation marks and citation omitted). Furthermore, "the plaintiff may prove his claim with direct evidence, and absent direct evidence, he may indirectly prove discrimination" under the burden-shifting analysis created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Brady v. Livingood*, 456 F. Supp. 2d 1, 6 (D.D.C. 2006), *aff'd* 520 F.3d 490 (2008). Where, as here, the record contains no direct evidence of discrimination,[7] it is necessary to employ the *McDonnell Douglas* tripartite burden-shifting framework. *Cones v. Shalala*, 199 F.3d 512, 516 (D.C. Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Under this paradigm, a plaintiff has the initial

---

[7] Direct evidence of discrimination "is evidence that, if believed by the fact finder, proves the particular fact in question *without any need for inference*." *Brown v. Small*, 437 F. Supp. 2d 125, 130 n. 7 (D.D.C. 2006) (emphasis in original) (citing *Randle v. LaSalle Telecomms., Inc.*, 876 F.2d 563, 569 (7th Cir. 1989)).

burden of proving by a preponderance of the evidence a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802.  If he succeeds, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason justifying its conduct.  *Id.*  If the defendant is successful, then "the *McDonnell Douglas* framework – with its presumptions and burdens – disappear[s], and the sole remaining issue [is] discrimination *vel non*."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000) (internal citations and quotation marks omitted).  In a refusal-to-hire case, such as this case, the *McDonnell Douglas* prima facie factors are "(i) the employee 'belongs to a racial minority' or other protected class; (ii) the employee 'applied and was qualified for a job for which the employer was seeking applicants'; (iii) despite the employee's qualifications, the employee 'was rejected'; and (iv) after the rejection, 'the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."  *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 493 n.1 (D.C. Cir. 2008) (quoting *McDonnell Douglas*, 411 U.S. at 802).

The D.C. Circuit has recently clarified that the *McDonnell Douglas* prima facie factors are "almost always irrelevant" and are "largely [an] unnecessary sideshow" *Id.* at 492-93. Where an employer asserts a legitimate, non-discriminatory reason for its challenged conduct, thereby doing "everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant."  *Brady*, 520 F.3d at 494 (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)).  *See also Adeyemi v. D.C.*, 525 F.3d 1222, 1226 (D.C. Cir. 2008) (holding that the prima facie inquiry "is irrelevant when an employer has asserted a legitimate, non-discriminatory reason for an adverse employment action").  "And by the time the district court considers an employer's motion for

summary judgment or judgment as a matter of law, the employer ordinarily will have asserted a legitimate, non-discriminatory reason for the challenged decision – for example, through a declaration, deposition, or other testimony from the employer's decisionmaker." *Brady*, 520 F.3d at 493. In such circumstances, a district court's inquiry collapses into a single question: "[h]as the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id.* at 494.

Based on this guidance, the D.C. Circuit has stated in no uncertain terms that a lower court should not evaluate a plaintiff's prima facie showing where a defendant sets forth a legitimate, non-discriminatory reason for its conduct: "the district court need not – *and should not* – decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Id.* at 495 (emphasis in original). *See also Adeyemi*, 525 F.3d at 1226 n.1 ("the prima facie case is ultimately *irrelevant* here") (emphasis added); *Wiley v. Glassman*, 511 F.3d 161, 156 (D.C. Cir. 2007) ("[g]iven this record [which includes articulated, non-discriminatory reasons] we 'need not address the Government's contentions that [appellant] failed to make out a prima facie case'") (quoting *George v. Leavitt*, 407 F.3d 405, 411 (D.C. Cir. 2005)). Nevertheless, the Supreme Court also advised lower courts in *Reeves v. Sanderson Plumbing Products, Inc.* that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." 530 U.S. 133, 148 (2000). That is, the Supreme Court suggested that the evidence used to establish a prima face case could be used to aid a jury's determination on

"the issue of whether the defendant's explanation is pretextual." *Id.* at 143 (quoting *Burdine*, 450

U.S. at 255 n.10). *See also Brady*, 520 F.3d at 495 (explaining *Reeves* requires lower courts to

"determin[e] whether summary judgment or judgment as a matter of law is warranted . . . [by]

consider[ing] all relevant evidence presented by the plaintiff and defendant"). Accordingly, in all

instances where a defendant has asserted a legitimate, non-discriminatory reason for its conduct,

the Court shall evaluate all of the evidence in the record, including that which would be used to

establish a prima facie case (but not for the purpose of evaluating whether a prima facie case has

been established), to address the ultimate question of discrimination *vel non*.

    In the present case, Defendant has repeatedly proffered legitimate, non-discriminatory

reasons for not selecting Plaintiff for the Contract Specialist position. For example, as part of the

EEOC's investigation into Plaintiff's formal charge of discrimination, Mr. Bond explained that

he did not select Plaintiff for the position because he "was not the most highly qualified applicant

based on [a] comparison of his application with the other eligible candidates." Def.'s Mot., Ex. 3

at 3 (11/29/04 Witness Affidavit). Mr. Bond also explained that he selected Ms. Snook for the

position because she was "the first applicant on the certificate [i.e., highest rated], [she] had

experience that was needed for the job, had the qualifications and [Mr. Bond] was familiar with

her abilities because [he] was working with her." Pl.'s Opp'n, Ex. 27 at 2 (7/15/04 EEO

Summary Report). Mr. Bond also submitted an affidavit in this litigation indicating that his

evaluation was based on the candidates' applications and not the race of the candidates. *See*

Def.'s Mot. at 11-24 & Ex. 6 ¶¶ 4-5 (Decl. of K. Bond) ("at no time during the selection process

for that position was I aware of the race of Plaintiff" and "[i]n making my selection I reviewed

each candidate's application throughly, including that of Plaintiff"). These assertions in the

record constitute legitimate, non-discriminatory reasons for Plaintiff's non-selection. *See Brady*, 520 F.3d at 493 (explaining that a legitimate, non-discriminatory reason may be contained in a declaration, deposition, or other testimony from the employer's decisionmaker).

Because Defendant has stated a legitimate, non-discriminatory reason for Plaintiff's non-selection, Plaintiff's ability to make out a prima facie case of discrimination is irrelevant, and Plaintiff may establish liability in one of two ways. *Fogg v. Gonzales*, 492 F.3d 447, 453 (D.C. Cir. 2007). First, Plaintiff may pursue a "single-motive case," in which he argues that race was the sole reason for his non-selection and that Mr. Bond's stated reasons for his non-selection are pretextual. 42 U.S.C. § 2000e-2(a)(1); *Ginger v. D.C.*, 527 F.3d 1340, 1345 (D.C. Cir. 2008). Plaintiff may meet this burden by showing that "the employer treated other employees of a different race . . . more favorably in the same factual circumstances," or by "demonstrat[ing] that the employer is making up or lying about the underlying facts that formed the predicate for the employment decision." *Brady*, 520 F.3d at 495. Second, Plaintiff may bring a "mixed-motive case," in which Plaintiff does not contest the *bona fides* of Mr. Bond's proffered reasons, but argues that race was *also* a factor giving rise to Plaintiff's non-selection. 42 U.S.C. § 2000e-2(m); *Ginger*, 527 F.3d at 1345.

In the present case, it is unclear whether Plaintiff intended to advance a "single-motive" or "mixed-motive" case of discrimination. *See* Pl.'s Opp'n at 5 ("Defendant masked his real reasons for hiring the selectee [Ms. Snook] rather than [] Plaintiff"). Nevertheless, the Court finds that Plaintiff cannot survive summary judgment under either theory because Plaintiff cannot establish that race was a factor in Mr. Bond's selection decision, and certainly not the *sole* factor. It is axiomatic that a defendant cannot be found to have discriminated against a plaintiff on the

basis of race where the defendant had no knowledge of the plaintiff's race. *See Jackson v. Dep't of Justice*, 2003 U.S. App. LEXIS 20014 at * 2 (D.C. Cir. Sept. 29, 2003) (holding that plaintiff could not "show unlawful discrimination" because "[t]he record . . . contains no evidence that the individuals who made the hiring determinations knew of [the plaintiff's] race) (citing *Robinson v. Adams*, 847 F.2d 1315, 1316 (9th Cir. 1987) ("[a]n employer cannot intentionally discriminate against a job applicant based on race unless the employer knows the applicant's race")). *Accord Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 82 (2d Cir. 2005) ("a defendant's discriminatory intent cannot be inferred . . . from circumstances unknown to the defendant"); *Sarullo v. United States Postal Svc.*, 352 F.3d 789, 799 (3d Cir. 2003) (referring to the plaintiff's discrimination claim as "meritless" where the plaintiff "provided no evidence to rebut [the defendant's] affidavit stating that when he denied [the plaintiff's] reinstatement he was unaware of [the plaintiff's] 'race, color, national origin, age, or prior EEO activity' or that [the plaintiff] had made allegations of name calling and improper language in the workplace").

There is no evidence in the record that Mr. Bond knew that Plaintiff was African American. To the contrary, Mr. Bond specifically stated in his affidavit that "at no time during the selection process for that position was I aware of the race of Plaintiff." Def.'s Mot., Ex. 6 ¶ 4. He also stated that "[t]here was neither documentation nor any information of any kind in those applications indicating the race of the applicants nor did anyone advise me of the race of the candidates prior to my selection of Ms. Snook." *Id.* ¶ 5. Plaintiff concedes that he has identified no evidence in the record to rebut Mr. Bond's affidavit. *See* Pl.'s Resp. Stmt. ¶ 11. During the EEOC investigation, Plaintiff opined that Mr. Bond may have known his race based on Plaintiff's last name (Washington) or by listening to Plaintiff's voice message on his office

telephone.  *See* Def.'s Mot., Ex. 9 at 4 (4/24/05 Complainant's Questionnaire).  Setting aside the

question of whether Plaintiff's race could be determined by reflecting on his last name or by

listening to his telephone message, there is simply no evidence in the record that Mr. Bond

considered Plaintiff's race based on his last name or that he ever called Plaintiff's office

telephone.  In the absence of such evidence, Mr. Bond's affidavit stating that he was unaware of

Plaintiff's race stands un-rebutted, and accordingly, vitiates any inference that Plaintiff's non-

selection was based on his race.

Also underscoring the lack of evidence in the record giving rise to an inference of racial

discrimination is Plaintiff's testimony indicating that he ascribes no racial motivations to Mr.

Bond's conduct.  For example, Plaintiff conceded that he would not have received the Contract

Specialist position even if he had a different (supposedly race-neutral) last name:

> Q: . . . Do you believe that if your last name had been Smith you would have
> gotten the job over Ms. Snook?
>
> A: I'm not sure that I – no.  I think Ms. Snook would have gotten the job . . .
>
> * * *
>
> A: If that person had a common name – I want to make sure I understand your
> question before I respond to it.  So that person had a common name that wasn't
> easily identifiable by race or whatever.  You got the same set of records.  Would
> that person have been selected –
>
> Q: Over a woman that he had worked with, who he knew, who he liked, had
> experience in the area.
>
> A: No, I don't think so.

*Id.* at 45:20 - 45:22; 49:2 - 49:9.  When asked why he thought Mr. Bond selected Ms. Snook for

the position, he indicated that he believed the reasons were that "he worked with her, he knew

her capabilities and potential." *Id.* at 50:13 - 50:14.  Plaintiff then conceded that the reason for

his non-selection was not based on race:

> Q: . . . my question was do you believe that he [Mr. Bond] chose [Ms.] Snook
> over you because of his suspicion based on your last name that you were black?
>
> A: I believe he chose [Ms.] Snook over me because she was his favorite who
> happened to be white.
>
> * * *
>
> Q: . . . Do you believe that his selection of Ms. Snook as his favorite, to use your
> words –
>
> A: Okay
>
> Q: – would have changed if you – if he had reason to believe you were white?
>
> A: No, sir.

*Id.* at 54:8 - 54:24.

    Under D.C. Circuit law, there can be no reasonable inference of racial discrimination

where an individual just happens to be a member of a protected class – actionable discrimination

only occurs when any employer acts "because of" the plaintiff's status as a member of a

protected class.  *Brady*, 520 F.3d at 493, 496 n.4 ("[e]ven if [the plaintiff] showed that the sexual

harassment incident was not the actual reason for his demotion, he still would have to

demonstrate that the actual reason was a racially discriminatory reason") (citing *St. Mary's*

*Honor Ctr. v. Hicks*, 509 U.S. 402, 514 (1993)); *Ginger*, 527 F.3d at 1345-46 (rejecting a claim

of racial discrimination because "[t]he [plaintiffs] . . . adduced no evidence whatsoever of a

causal link between *race* and those aspects of the reorganization [they challenged as

discriminatory]") (emphasis added).[8]

The two anonymous phone calls allegedly received by Plaintiff in April 2004 do not change this analysis. *See* Pl.'s Opp'n at 6-7 (alluding to the two phone calls). Both are classic instances of hearsay if offered to prove that Plaintiff was the most qualified candidate and was not selected because of his race. *See* Fed. R. Evid. 801(c) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). Even if these statements were admissible under some hearsay exception, which Plaintiff does not even allege to be the case,[9] neither call supports the allegation that Plaintiff was not selected for the Contract Specialist position because of his race. The first call, left in the form a message, did not even *mention* race. *See* Def.'s Mot., Ex. 4 at

_____

[8] Although far from dispositive, the fact that Mr. Bond and Plaintiff are members of the same protected class is also a fact that "weighs against any inference of discrimination." *Hammond v. Chao*, 383 F. Supp. 2d 47, 58 n.2 (D.D.C. 2005), *aff'd*, 2006 U.S. App. LEXIS 13290 (D.C. Cir. May 22, 2006). Plaintiff cites *St. Mary's Honor Center v. Hicks* for the proposition that a hiring individual's race is "irrelevant" to the determination of whether he has discriminated against another individual of the same race. Pl.'s Opp'n at 6, 8 (citing 509 U.S. 502, 513-14 (1993)). Plaintiff's reliance is in error, however, because the Supreme Court was engaging in a *counterfactual* example that suggested a hiring individual's race *is* a relevant consideration. *See St. Mary's Honor Center*, 509 U.S. at 513 ("under the dissent's interpretation of our law not only must the company come forward with some explanation for the refusal to hire . . . but the jury must be instructed that, if they find that explanation to be incorrect, they must assess damages against the company, whether or not they believe the company was guilty of racial discrimination. The disproportionate minority makeup of the company's work force and the fact that its hiring officer was of the same minority group as the plaintiff [would] be irrelevant . . . Surely nothing short of inescapable prior holdings . . . should make one assume that this is the law we have created.") (emphasis in original omitted).

[9] The Court also finds that the statements lack indicia of trustworthiness because the declarant is unidentified and Plaintiff knowingly allowed any record of these alleged statements to be erased. *See* Pl.'s Opp'n at 7-8 ("Plaintiff admits that he cannot, with specificity, identify the person who called him . . . Plaintiff admits that he did not keep a copy of the message left on his voice mail").

22:10 - 22:12; 25:5 - 25:8 (Depo. Tr. of E. Washington) (explaining that the message stated only

that Plaintiff was "the best qualified applicant for the position, but [that the selecting official

was] going to give it to another young lady who is less qualified").  While the second call

allegedly *referenced* race, Plaintiff does not allege that the unidentified caller stated that he was

not selected for the position because of his race:

> Q: But you know that somewhere in there [during the conversation] she said she
>
> [Ms. Snook] was white?
>
> A: Yes, sir.
>
> Q: You don't know why, you don't know the context, you don't know how?
>
> A: No, sir.
>
> * * *
>
> Q: Did she tell you how she knew that you were black?
>
> A: No, sir, she did not.
>
> Q: Did she say anything at all about – did the conversation in any way indicate –
> did she say in any way why she said you were black?  How did that come up?  I
> keep asking that because I don't understand how in the conversation that comes
> up.
>
> A: Yeah, and I don't – I just don't remember . . .

*Id.* at 42:1 - 42:25.  Accordingly, the Court finds that the existence of these two anonymous

phone calls do not provide a basis from which an inference of racial discrimination may

reasonably be found.

Based on Plaintiff's Opposition and the exhibits attached thereto (as well as Plaintiff's

First Amended Complaint and the exhibits attached thereto[10]), Plaintiff argues that a jury could find that Mr. Bond's stated reasons for selecting Ms. Snook were pretextual because Mr. Bond failed to credit Plaintiff's prior experiences that qualified him for the position.  *See, e.g.*, Pl.'s Opp'n at 8 (describing an EEOC decision where the complainant provided evidence that her work in the relevant categories deserved a higher ranking).  Plaintiff also alleges that "Defendant gave preferential treatment by scoring the Selectee, a contract specialist trainee with one year of on-the-job training, at 100 maximum points versus the Plaintiff's four years of actual contract specialist experience, 24 years of honorable military service, and 10 years as a business owner."[11] First Amend. Compl. ¶ 7.  Plaintiff's qualifications-based arguments are unavailing.  Where, as here, an employer states that a selection decision was made based on the relative qualifications of the applicants for a position, a plaintiff can only challenge that explanation if the plaintiff was "*significantly* better qualified for the job" than the applicant that was chosen.  *Holcomb v.*

---

[10] The D.C. Circuit has instructed that lower courts may rely on the supplemental materials provided by a *pro se* litigant to clarify what claims he or she is advancing.  *See Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007) (explaining that lower courts may "consider supplemental material filed by a pro se litigant in order to clarify the precise claims being urged") (citing *Anyanwutaku v. Moore*, 151 F.3d 1053, 1054 (D.C. Cir. 1998)).

[11] Plaintiff also asserts in the First Amended Complaint (but not in his Opposition) that Defendant failed to provide him with a 5-point veterans' preference.  *See* First Amend. Compl. ¶ 8.  The Certificate of Eligibles form, however, *does* reflect a different categorization for Plaintiff based on his status as a veteran.  *Id.*, Ex. 4 at 1 (4/26/04 Certificate of Eligibles Form) (reflecting the notation "NV" under "Veteran Preference" for both Ms. Snook and the third eligible candidate, but reflecting the notation "TP" for Plaintiff under "Veteran Preference").  Nevertheless, even if Defendant failed to credit Plaintiff with this 5-point preference, such procedural irregularities are insufficient to find discrimination where they are unrelated to any prohibited motive under Title VII.  *See Howze v. Adams*, 689 F. Supp. 20, 25 (D.D.C. 1988) ("A plaintiff cannot meet his ultimate burden by proof by simply showing that the agency's decision, although not based on a prohibited factor under the Act [Title VII], was reached in violation of federal personnel law.  Instead, discriminatory motive is critical.").

*Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006). "The qualifications gap must be 'great enough to be inherently indicative of discrimination.'" *Adeyemi*, 525 F.3d at 1227 (quoting *Jackson*, 496 F.3d at 707). Such a large gap between the relative qualifications of the applicants allows a fact-finder to "legitimately infer that the employer consciously selected a less-qualified candidate – something that employers do not usually do, unless some other strong consideration, such as discrimination, enters the picture." *Id.* However, in cases "where the comparative qualifications are close, a reasonable jury would not usually find discrimination because the jury would 'assume that the employer is more capable of assessing the significance of small differences in the qualifications of candidates, or that the employer simply made a judgment call.'" *Id.* (quoting *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.D. Cir. 1998) (en banc)).[12] For purposes of this inquiry, a plaintiff's subjective assessments of his own credentials are largely irrelevant. *See Waterhouse v. D.C.*, 124 F. Supp. 2d 1, 7 (D.D.C. 2000) ("[P]laintiff's perception of himself, and of his work performance, is not relevant. It is the perception of the decisionmaker which is relevant.") (internal citation and quotation marks omitted), *aff'd*, 298 F.3d 989 (D.C. Cir. 2002). Rather, the relevant inquiry focuses on whether the hiring individual "honestly believed in the reasons [he] offer[ed] for his selection decision." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996).

In the present case, Plaintiff cannot demonstrate that he was significantly better qualified than Ms. Snook. Mr. Bond believed that Plaintiff lacked *current* experience as a contract specialist:

---

[12] The D.C. Circuit has advised that district courts must "respect the employer's unfettered discretion to choose among qualified candidates." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996).

> In his [Plaintiff's] application he cites the last time that he did contract specialist work was April 1994, ten year [sic] ago. The Federal Acquisition Regulation in which knowledge of [sic] is critical for this job has changed significantly since 1994 . . . [Plaintiff] has served as Managing Director of a multi-faceted company that provides limousine services, contract consulting services and food safety training. There is no description of work [Plaintiff] performed as a contract specialist form 1994 to the present.

Def.'s Mot., Ex. 3 at 3 (11/29/04 Witness Questionnaire). In addition, Mr. Bond believed that there was no indication in Plaintiff's application that Plaintiff had knowledge and/or experience with particular aspects of the duties he would be expected to perform:

> There was no indication in [Plaintiff's] application of his knowledge [of] best value, past performance, competitive range or recommendation for award, which are familiar terms used in the procurement profession . . . The only indication in [Plaintiff's] application that he worked on procurements over $100,000 is the statement '[p]rocures supplies and services for small and large purchases.'

*Id.* Plaintiff failed to provide sufficient detail concerning his experiences as well, foregoing a description of his experiences in favor of a list of definitions associated with several of the evaluation factors. *See* Def.'s Mot., Ex. 12 at 3 (3/26/04 Application of E. Washington). Mr. Bond did not view this approach as particularly helpful, noting that "[u]nder the evaluation factors, the majority of [Plaintiff's] responses are more definitions of procurement terms rather than [an] explanation of how he performed the specific tasks of the job." Def.'s Mot., Ex. 3 at 3 (11/29/04 Witness Questionnaire). The vacancy announcement specifically indicated that it was "the responsibility of the applicant to provide all of the information needed." Def.'s Mot., Ex. 1 (3/15/04 Vacancy Announcement).

In contrast to his assessment of Plaintiff's application, Mr. Bond explained that Ms. Snook's application provided a description of experiences that were pertinent to the Contract Specialist position. For example,

27

> Ms. Snook had experience processing A&E and Construction and Contracting by
> Negotiated procurement . . . [and she] had participating in sealed bid openings,
> A&E competitive contract selections, A&E sole source contract selections, and
> numerous contract modifications under A&E and Construction contracting. Ms.
> Snook has prepared cost reimbursement type solicitations and contracts, purchase
> orders, firm fixed price contracts and numerous contract modifications under
> Contracting by Negotiation.

Def.'s Mot., Ex. 3 at 4 (11/29/04 Witness Questionnaire). The experiences described by Ms.

Snook reflected the same duties and responsibilities that were associated with the Contract

Specialist position. *See* Def.'s Mot., Ex. 7 at 9-13 (3/19/04 Application of Ms. Snook). Mr.

Bond also explained that "Ms. Snook[] described her responsibilities and duties in more detail

than [Plaintiff]." Def.'s Mot., Ex. 3 at 4 (11/29/04 Witness Questionnaire). Finally, Mr. Bond

explained that he "had personal knowledge of how Ms. Snook performed the duties and

responsibilities described in the job announcement" based on his "observation of her

performance in the Division of Contract Services." *Id.* at 5. He noted that he "had no personal

knowledge of how [Plaintiff] performed on the job." *Id.* Based on Mr. Bond's explanation and

the evidence in the record, the Court cannot conclude that Plaintiff was *significantly* better

qualified than Ms. Snook for the advertised position.

While not directly disputing Mr. Bond's assessment of the candidates' relative

qualifications, Plaintiff's Opposition and attached exhibits reference certain "procedural

irregularities" that allegedly occurred in the selection process. *See* Pl.'s Opp'n at 5. For

example, Plaintiff argues that the vacancy announcement did not specifically identify "A&E

Construction contracting" as an important evaluation consideration, even though Mr. Bond

specifically relied on Ms. Snook's A&E Construction contracting experience when he weighed

the candidates' relative experiences. *See* Pl.'s Opp'n at 6-7. According to Plaintiff, "[t]his factor

was not published in the vacancy announcement . . . [s]ubjective criteria that favors one applicant

over another, as in this case, results in racial discrimination."[13]  Pl.'s Opp'n at 5.  Defendant,

however, explains that A&E Construction contracting was subsumed within the broader

categories of experience that were identified in the vacancy announcement.  *See* Def.'s Mot., Ex.

1 at 2 (3/15/044 Vacancy Announcement) (identifying knowledge of applied procurement

methods and "types of contracts," as well as knowledge of "assigned services."  Def.'s Reply at

8.  The D.C. Circuit has rejected the notion that reliance on a non-enumerated factor that is

encompassed within a more general description gives rise to an inference of discrimination.  *See*

*Jackson v. Gonzales*, 496 F.3d 703, 709 (D.C. Cir. 2007) ("[W]e are aware of no previous case

from this or any other circuit suggesting that an employee gets past summary judgment simply by

showing that a factor in the hiring decision was not expressly listed in the job description when

the factor was encompassed by the job description.").  Morever, procedural irregularities do not

raise an inference of racial discrimination unless there is a connection to the discrimination that

the plaintiff is claiming.  *See, e.g.*, *Adeyemi*, 525 F.3d 1228-29 (acknowledging that the process

used to select applicants was "irregular" because the employer took unusual steps to find better-

qualified candidates for a position, but holding that the unusual steps could not lead a reasonable

jury to find unlawful discrimination).  Plaintiff also suggests that the familiarity between Ms.

Snook, Mr. Bond, and the panel members is a procedural irregularity that raises the inference of

racial discrimination.  *See, e.g.*, First Amend. Compl. at 5.  The Court is aware of no precedent

where such familiarity, by itself, was found to raise an inference of discrimination.  On the

---

[13] Plaintiff relies on an EEOC decision to support this and other of his arguments.  "It is
well established that EEOC decision and precedents do not have controlling precedent in federal
courts."  *Tewelde v. Albright*, 89 F. Supp. 2d 12, 17 n.4 (D.D.C. 2000).

contrary, employers routinely rely on their own perceptions of their employee's work performances. *See Aka*, 156 F.3d at 1298 ("employers may of course take subjective considerations into account in their employment decisions" and "[r]eliance on disputed subjective assessments will not create a jury issue in every employment discrimination case. For example, if this reliance is modest, and the employer has other, well-founded reasons for the employment decision, summary judgment for the defendant may be appropriate"); *Vasilevsky v. Reno*, 31 F. Supp. 2d 143, 151 (D.D.C. 1998) ("An employer is entitled to rely on his own perception of an employee's work performance.").

Plaintiff also argues that the interrogatory answers provided by Ms. Dela Cerna support an inference of discrimination. *See* Pl.'s Opp'n at 10. The Court cannot agree. Ms. Dela Cerna indicated in her interrogatory answers that she believed Mr. Bond's hiring practices were unfair because he favored the hiring of contractors who performed on-the-job training before applying for a Contract Specialist position:

> At the beginning (just like Ms. Snook), Sarah Folino was hired as a contractor Contract Specialist and later Ms. Folino ws hired as a full time Government Employee. Like Ms. Snook, Ms. Sarah Folino has very minimal experience for the Contract Specialist's job. This created a pattern of Mr. Bond's hiring style and technique which everyone knew in the whole Division and Ms. Magruder among other people was [sic] also very aware of these questionable if not unfair hiring practices of Mr. Bond. If you look further and investigate further, the rest of the new hires such as Jillian Matz, Chanta Ferrell, Beatrice Moseley, Lance Purvis were hired at almost similar pattern [sic] and all without thorough knowledge of procurement processes and regulations when they were hired.

Def.'s Mot., Ex. 2 at (Interrogatory Answers of Marissa Dela Cerna). Giving Plaintiff the benefit of all reasonable inferences, Ms. Dela Cerna's disapproval of Mr. Bond's hiring practices provides *no* support for the proposition that Plaintiff was not selected because of his *race*.

Significantly, Ms. Dela Cerna's answer never even mentions race, and at least one of the individuals she identifies–Mr. Purvis–was an African American. *See* Def.'s Mot., Ex. 3 at 5-6 (11/29/04 Witness Questionnaire). Title VII does not prohibit hiring practices that are unrelated to the protected status (e.g., race) of an applicant. *See Oliver-Simon v. Nicholson*, 384 F. Supp. 2d 298, 310 (D.D.C. 2005) ("[e]ven if there had been favoritism in [the defendant's] selection process, courts have held that '[p]reselection . . . does not violate Title VII when such preselection is based on the qualifications of the party and not on some basis prohibited by Title VII'") (quoting *Goostree v. Tennessee*, 796 F.2d 854, 861 (6th Cir. 1986)); *Howze v. Adams*, 689 F. Supp. 20, 25 (D.D.C. 1988) ("A plaintiff cannot meet his ultimate burden by proof by simply showing that the agency's decision, although not based on a prohibited factor under the Act [Title VII], was reached in violation of federal personnel law. Instead, discriminatory motive is critical.").

Plaintiff makes two other arguments, neither of which requires extended discussion. First, Plaintiff argues that he attempted to obtain, but was denied, sworn statements from Ms. Dela Cerna and Ms. Magruder during the EEOC's investigation which he alleges is an indication of racial discrimination. Pl.'s Opp'n at 3; First Amend. Compl. ¶ 11 ("Plaintiff requested, before issuance of the Final Agency Decision (FAD), that the Defendant obtain sworn statements from members of the evaluation panel. Note 3 in the FAD denied this request."). The Court finds that this denial does not raise an inference of racial discrimination for the same reasons advanced by the EEOC to justify its denial of this request:

> This request is denied as unnecessary because the Selecting Official adequately
> described the Agency's legitimate non-discriminatory basis for the selection,
> including the significance of A-E experience for the position. Moreover, while

31

the Selection Official referenced the panel's rankings in his affidavit, his thorough
description of the Complainant's qualifications demonstrated that he
independently considered the Complainant's application and relative
qualifications and did not just rely on the panel's rankings of the candidates.

First Amend. Compl, Ex. 5 at 2 (3/17/06 Final Agency Decision).  Second, Plaintiff argues that

certain of Ms. Magruder and Ms. Snook's interrogatory answers are dishonest.  *See* Pl.'s Opp'n

at 10.  Plaintiff fails to cite any evidence in the record that would support his assertions in this

regard, and in any event, the two statements referenced by Plaintiff are immaterial to the ultimate

question of whether a reasonable jury could find that Plaintiff was not selected for the Contract

Specialist position based on racial discrimination.

## IV. CONCLUSION

For the reasons set forth above, the Court shall GRANT Defendant's [17, 18] Motion to

Dismiss, or in the alternative, Motion for Summary Judgment.  This case shall be dismissed in its

entirety.  An appropriate Order accompanies this Memorandum Opinion.[14]


Date:    September 9, 2008


_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

_____

[14] The Court notes that Plaintiff is a highly decorated Army veteran who served our nation
for more than two decades.  The Court's dismissal of his Complaint should not in any way be
interpreted as a diminishment of his accomplishments.  Rather, the dismissal is based on the fact
that there is insufficient evidence to support his legal claims in this case.